IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:26-cr-139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. | ) | |

**THE UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT SOUTHERN POVERTY LAW CENTER'S MOTION**

In the early afternoon of June 2, 2026, a grand jury in this district handed down a superseding indictment charging the Southern Poverty Law Center, Inc. ("the defendant") with multiple felony offenses. Thereafter, at 1:58 pm on June 2, 2026, this Court's Clerk's Office officially accepted and stamped into the record the superseding indictment returned by the grand jury. *See* Exh. A (Doc. 51).

More than three and a half hours later, the Department of Justice–Public Affairs Office ("DOJ–PAO") released to media outlets not the officially stamped version of the superseding indictment, but rather, an earlier, near-identical draft version of this document that had been provided to that office so it could prepare for potential media inquiries. There is no dispute that this was an error. Clearly the wrong document was sent to the media. However, this was not a violation of grand jury secrecy protocol. The defendant was not harmed. This Court should deny the defendant's motion in full.

**RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

In April 2026, a grand jury in this district returned an indictment charging the defendant with six counts of wire fraud, four counts of making false statements to a federally insured financial institution, and one count of money laundering conspiracy. Doc. 1. Thereafter, the United States Attorney's Office ("USAO") decided to present a superseding indictment to the June grand jury.

As is standard practice for cases garnering significant media attention, the USAO provided DOJ–PAO an advance copy of the draft superseding indictment it intended to present to the grand jury. This is done for a very practical reason — so individuals who know nothing about the case

can adequately prepare for potential press inquiries. This was done in the early morning of June 2, 2026.

Later that same morning, the USAO did a last-minute, final edit of the draft superseding indictment. During that review, minor, non-substantive grammatical changes were made to the verbiage in what is now paragraphs 20 and 21 of the superseding indictment. This slightly revised version — which was the only version presented to the grand jury — was not sent to DOJ–PAO because it did not involve any substantive changes that would affect that office's ability to prepare responses for potential press inquiries.

The grand jury, only presented with the final version of the superseding indictment, along with accompanying evidence and/or testimony, returned a true bill against the defendant. *See* Exh. A (Doc. 51). The superseding indictment contains no new charges, no new defendants, and involved no new legal or factual theories of this case. *Id.*

Several hours after the grand jury returned the superseding indictment against the defendant and also after the superseding indictment was officially accepted and stamped by the Clerk's Office, media members erroneously received the draft document from DOJ–PAO. *See* Doc. 53–1, Exh. A. At least one media member alerted defendant's counsel. *Id.* Thereafter, defendant's counsel reached out to the USAO. As defendant's own motion even acknowledges, the USAO was in the dark. *Id.*, p. 4 ("Defense counsel quickly contacted the U.S. Attorney's Office and asked for an explanation of what was going on. Not even the prosecutor in charge of this case could explain it, replying to defense counsel, 'I need to gather some more information regarding this in the morning.'").

The defendant, through retained counsel, now requests this Court hold an evidentiary hearing about this mistake, which no side condones, and posits that this Court should potentially sanction the United States for this dissemination error.

## ANALYSIS

The defendant contends the dissemination to the media of a draft document of a superseding indictment disclosed several hours after a grand jury returned a true bill for a substantively identical superseding indictment violates grand jury secrecy rules. The defendant is wrong. Furthermore, despite this being the defendant's motion and the defendant bearing the burden of proof, the defendant provides this Court with virtually no serious legal analysis for why it should prevail on its motion. The defendant's motion should be summarily denied in full.

**I.      The Inadvertent Dissemination of a Draft Version of a Superseding Indictment** *After* **a Grand Jury Had Already Returned the Final Version of a Superseding Indictment Does Not Violate Any of the Grand Jury Secrecy Rules.**

The concept of grand jury secrecy can be traced all the way back to the United States' jurisprudential moorings in Old English common law. Thereunder, "grand jury proceedings were closed to the public and grand jury records were kept confidential." *Blalock v. United States*, 844 F.2d 1546, 1555 (11th Cir. 1988) (Tjoflat, J., concurring). This concept of grand jury secrecy "has been incorporated into our federal common law and remains 'an integral part of our criminal justice system.'" *Id.* at 1555–56 (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 221 218, n.9 (1979)). As the Supreme Court explained, there are multiple reasons why grand jury secrecy is so important:

(1) To prevent the escape of those whose indictment may be contemplated;

(2) To [e]nsure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors;

(3) To prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it;

(4) To encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and]

(5) To protect innocent accused who is exonerated from disclosure of the fact that he had been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Procter*, 365 U.S. 677, 681, n.6 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954)). To put it succinctly, "[T]he secrecy of the grand jury helps to protect the innocent accused from facing unfounded charges, encourages full and frank testimony on the part of witnesses, and prevents interference with the grand jury's deliberations." *Pitch v. United States*, 953 F.3d 1226, 1229 (11th Cir. 2020) (*en banc*). All of this is blackletter law. Neither party appears to dispute the importance of grand jury secrecy. However, evaluating this framework illuminates why the defendant has not met its burden to establish a grand jury secrecy violation here.

First, the erroneous dissemination did not give the defendant an advantage in escaping this Court's jurisdiction. The defendant was already well aware that it faced federal charges based on the April indictment.

Second, the erroneous dissemination in no way impinged on the grand jury's freedom of deliberation or gave any person advanced notice to try to influence the grand jury's decision. This errant disclosure occurred several hours *after* the grand jury had (1) finished hearing evidence, (2) deliberated, (3) issued a true bill superseding indictment, and (4) presented the true bill to the Clerk's Office.

Third, the erroneous dissemination did not increase the chances that a witness before the grand jury would be intimidated or enticed into committing perjury prior to the trial. Nothing in the draft superseding indictment mentions who testified before the grand jury. Other than very minor grammatical changes to two paragraphs, the document erroneously disseminated was identical to the already-returned superseding indictment.

Fourth, the erroneous dissemination did not discourage free and candid testimony before the grand jury. All testimony the grand jury might have received to secure this superseding indictment culminated several hours *before* the inadvertent disclosure occurred.

Finally, the defendant was not stripped of privacy rights afforded to the uncharged by having the wrong document distributed *after* the grand jury already issued a superseding

4

indictment — *and* after the defendant was already publicly indicted in April. The version sent to the media was identical in every way to the already-true billed indictment other than for the two previously-mentioned minor, grammatical adjustments for juror clarification.

The defendant filed this motion, yet the defendant failed to address any of these factors in its motion. Rather, the defendant chose to support its motion with a factually and legally distinguishable out-of-circuit district court case. *See* Doc. 53, pp. 7–8. The defendant suggests the key take-aways of *Judicial Watch* are as follows:

> The court emphasized that draft indictments are not merely statements of prosecutorial deliberation but rather documents "inextricably intertwined with the grand jury process," representing "a compilation and distillation of all of the evidence gathered and presented before the grand jury up until the time the draft indictments were prepared." As such, Rule 6(e) protects from disclosure the existence, content, and timing of draft or proposed indictments[1] because such materials and related information lay bare the grand jury's charging considerations, the precise theories under review, and the status of its deliberative process.

Doc. 53, p. 6. While this may be a sufficient statement of boilerplate law, the defendants' analysis of *Judicial Watch* and its comparison to this case is flimsy at best.

*Judicial Watch* involved civil litigation surrounding a Freedom of Information Act ("FOIA") request concerning documents related to the Independent Counsel's investigation of Hillary Clinton. *Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 214 F. Supp. 3d 43, 48 (D.D.C. 2016). Following the plaintiff's FOIA request, the National Archives located "two boxes of records of [Independent Counsel Kenneth] Starr and his successors, both [of] which contain[ed] drafts of proposed indictments of Mrs. Clinton[.]" *Id.* at 49. After this discovery, the National Archives told the plaintiff that it "was withholding the folders entitled 'Draft Indictment[.]'" *Id.* Litigation ensued. As the D.C. District Court explained, the issue before them was whether the National Archives "properly withheld the draft indictments pursuant to" FOIA exemptions and

---

[1] It is ironic that the defendant is now highlighting the need for secrecy surrounding *when* a charging document will be presented to the grand jury. On the morning of April 21, knowing that the grand jury set to convene in Montgomery later that afternoon was likely to be presented with an indictment against the defendant, the Board Chairman for the defendant chose to publish a video publicly outing the investigation several hours *before* the case was presented the grand jury. *See* https://www.splcenter.org/beacon-hope-55-years/ (last visited Jun. 13, 2026).

Rule 6(e). *Id.* at 50–51. In addressing this issue, the D.C. District Court engaged in pertinent analysis the defendant chose not to address in its motion:

> Although Rule 6(e) prohibits disclosure of matters occurring before a grand jury, it should not be read in a manner that creates a veil of secrecy over all matters occurring in the world that happen to be investigated by a grand jury. There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers. Rather, the touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation such as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors and the like. And, there must be a nexus between disclosure and revelation of a protected aspect of the grand jury's investigation.

*Id.* at 53 (cleaned up). Ultimately, the D.C. District Court granted the National Archives' motion for summary judgment because, in that particular case, the National Archives had met its burden to show that disclosure of the draft indictments "contain[ed] precisely the information that Rule 6(e) is intended to protect — information that would tend to reveal some secret aspect of the grand jury's investigation." *Id.*, at 54. (internal quotations and citations omitted).

The portions of *Judicial Watch* the defendant highlighted for this Court are of no value. When analyzed in full, it is clear that *Judicial Watch* concerns an entirely unrelated issue—whether draft indictments never presented to a grand jury can be withheld following a FOIA request. Even the D.C. District Court's rationale for why it granted summary judgment for the National Archives does not help the defendant. In *Judicial Watch*, the draft indictments never presented to the grand jury allegedly contained contemplated, but ultimately unpursued, criminal charges. That is not the case here. Not only were all of the same charges in the superseding indictment already presented to the grand jury in April, but the *only* difference between the mistakenly distributed draft superseding indictment and the returned superseding indictment was a slight change in verbiage for clarity. Nothing in the erroneously disseminated draft touches on any of the concerns raised by the D.C. District Court in *Judicial Watch*.

Was the mistaken release of the wrong version of the superseding indictment after the superseding indictment had been returned by the grand jury and docketed by the Clerk's Office

regrettable? Absolutely. It should not have happened. Did that error in any way violate grand jury secrecy? Absolutely not.

This is the defendant's motion, and they have failed to establish any violation of law surrounding the mistaken dissemination of the wrong version of the superseding indictment. That was the defendant's threshold burden, and it failed to meet it. Accordingly, this Court should deny the defendant's motion.

## II. Even If the Defendant Established a Violation of Law, the Defendant Was Not Prejudiced by Harmless Error.

The United States strongly contends that the defendant has not met its burden to demonstrate any violation of law in its motion. However, even if it had done so, the defendant has not demonstrated that it was prejudiced in any way.

In its motion, the defendant relies on conclusory statements — which, without elaborating, it boldly declares are "not speculative" — to allege that it has been prejudiced by this mistake:

> The prejudice here to the SPLC is not speculative: premature dissemination to the media of the draft charging details before unsealing occurs by the Clerk creates a one-sided narrative that the SPLC could not address without compounding the harm, distorts pretrial publicity, and burdens the Court's management of a fair trial.

Doc. 53, p. 8. The defendant further states that "prejudice is of course heightened if the draft indictment is disseminated and the grand jury does not return the indictment — a risk the DOJ may have created here by disseminating a draft that had not been presented to the grand jury." *Id.* at 8–9.

The defendant was not prejudiced by this mistake. The grand jury returned the true bill superseding indictment — which was accepted and docketed by the Clerk's Office — more than three and a half hours *before* the wrong version was sent to the media. The superseding indictment was not sealed. The correct version was publicly disclosable as soon as it was docketed, which occurred at 1:58 pm (CDT). Why it was not on PACER at that same time is unknown, but also legally irrelevant. Furthermore, the defendant's argument that it was prejudiced because of charging details contained in the erroneously disseminated version falls flat. The draft document

sent and the actual document returned by the grand jury were identical save for grammatically clarifying language in two paragraphs that had no effect on the substance of any charge. Finally, the defendant's claim that the prejudice could have been heightened if the grand jury did not return a superseding indictment is utterly irrelevant since the grand jury *did* charge the defendant hours *before* the mistaken disclosure of the wrong document took place. At bottom, even if there were any legal error here, the defendant has faced absolutely no prejudice because of it.

### III.    The Defendant is Not Entitled to an Evidentiary Hearing on this Matter.

The defendant has failed to establish any violation of law. Even if it had, it has also failed to establish any prejudice caused by the errant disclosure of the wrong document. Finally, the defendant has failed to make out the *prima facie* case necessary to have an evidentiary hearing.

The Eleventh Circuit notes that "if a grand jury target proffers evidence that government agents have improperly disclosed grand jury information in violation of Rule 6(e)(2), the district court must hold an evidentiary hearing to determine the truth of the proffer and the need for relief." *Blalock v. United States*, 844 F.2d 1546, 1551 (11th Cir. 1988) (citing *In re Grand Jury Investigation "Lance"*, 610 F.2d 202 (5th Cir. 1980)). However, the Eleventh Circuit goes on to explain that the "first step in a Rule 6(e)(2) proceeding is, of course, to determine whether the target's proffer of evidence demonstrates a violation of the Rule. . . . If the target's proffer fails to establish a *prima facie* case, the court must dismiss the target's Rule 6(e)(2) case without an evidentiary hearing." *Blalock*, 844 F.2d at 1551. Thus, the defendant is not entitled to an evidentiary hearing merely because it filed this motion. Rather, it must first establish a *prima facie* case. When making this assessment:

> [T]he court must consider a number of factors, including (1) whether there is a clear indication that the disclosure involved matters occurring before the grand jury; (2) whether it appears that the disclosure was made by a person subject to Rule 6(e)(2)'s requirement of secrecy; (3) whether the relief requested will interfere with the grand jury proceedings, and (4) whether the government has sufficiently rebutted the target's showing.

*Id.* (internal quotations and citations omitted). This Court need not look passed the first hurdle. The defendant has not demonstrated that the disclosure involved "matters occurring before the grand jury." Rather, the mistaken disclosure was of a document *never* before the grand jury, not because it was contemplated and rejected as a superseding indictment, but, rather, because a very slightly edited version was presented instead.

The defendant bears the burden to make out a *prima facie* case before it is entitled to an evidentiary hearing. It has failed to do so. Therefore, this Court should deny its hearing request.

### CONCLUSION

The defendant chose to file this motion. It bears the burden at each step. Yet, the defendant has failed to demonstrate (1) that the errant disclosure was violative of any law, or (2) that it has been prejudiced, or (3) that it has made out a *prima facie* case to entitle it to an evidentiary hearing. For all the reasons stated herein, the defendant's motion should be denied in full.

Respectfully submitted, this 15th day of June 2026.

THOMAS GOVAN
United States Attorney

/s/ Kevin P. Davidson
Kevin P. Davidson
First Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Tel: (334) 223-7280
Fax: (334) 223-7135
kevin.p.davidson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:26-cr-139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2026, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to all counsel of

record.

Respectfully submitted,

/s/ Kevin P. Davidson
Kevin P. Davidson
First Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Tel: (334) 223-7280
Fax: (334) 223-7135
kevin.p.davidson@usdoj.gov

10