**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

UNITED STATES OF AMERICA,

     v.

THE SOUTHERN POVERTY CENTER,
INC.,

    Defendant.

Case No.: 2:26-cr-0139-ECM-KFP

**BRIEF OF *AMICUS CURIAE* PROTECT DEMOCRACY PROJECT IN SUPPORT**
**OF DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION**

Kristy Parker
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, D.C. 20006
Tel: (202) 579-4582
Fax: (202) 769-3176
kristy.parker@protectdemocracy.org

Tobin Raju
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
Fax: (202) 769-3176
  tobin.raju@protectdemocracy.org

Jeffery C. Duffey
The Law Office of Jeffery C. Duffey
505 South Perry St.
Montgomery, AL 36104
Tel: (334) 834-4100
AL. Bar No. 7699F67J
jefferyduffey@gmail.com

Counsel for Amicus Curiae Protect Democracy Project

## TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES ...............................................................................................ii

INTEREST OF AMICUS ................................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

ARGUMENT ..................................................................................................................... 4

    I.  This Case Fits the New Pattern of Vindictive and Retaliatory Criminal Prosecutions and Investigations—A Dangerous Departure from Settled Law and Practice ............................ 4

        A.  The administration has directed multiple vindictive prosecutions and criminal investigations of those who have publicly opposed administration policies or who have otherwise been directly targeted by the president................................................... 5

            1.  Kilmar Abrego Garcia.................................................................................. 7
            2.  James Comey ................................................................................................ 9
            3.  Attorney General Letitia James................................................................... 11
            4.  Sen. Mark Kelly and Former Military and Intelligence Community Lawmakers ..................................................... 12
            5.  Rep. LaMonica McIver ............................................................................. 13
            6.  "Broadview Six" ....................................................................................... 14
            7.  Jerome Powell .......................................................................................... 15
            8.  Mayor Ras Baraka...................................................................................... 16
            9.  Sen. Adam Schiff ...................................................................................... 17

        B.  The administration's pattern of vindictive and retaliatory prosecutions supports the SPLC's motion to dismiss.................................................................................... 18

    II.  The SPLC's Evidence in Support of its Motion Is Highly Compelling Because the Administration Has Forfeited the Presumption of Regularity.............................................. 19

        A.  The administration's investigations and prosecutions of its perceived opponents have been accompanied by numerous instances of irregular conduct ................................. 20

            1.  Public comments on criminal investigations....................................................... 21
            2.  Disregard of and punishment for dissenting judgments by DOJ personnel....... 22
            3.  Unlawful appointments of United States Attorneys........................................ 24

        B.  Courts have repeatedly rebuked this administration for its conduct and found that it has lost the presumption of regularity. ....................................................................... 25

    III.  Dismissal of This Vindictive Prosecution Is Necessary to Protect Free and Open Civil Society from Executive Overreach ....................................................................... 27

CONCLUSION .................................................................................................................. 30

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) ................................................................................................. 29

*Baker v. Thomas*,
2008 WL 2225753 (M.D. Ala. May 27, 2008) ........................................................ 18

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ................................................................................................. 22

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ................................................................................................. 20

*Coffin v. United States*,
156 U.S. 432 (1895) ................................................................................................. 21

*Coleman v. Zant*,
708 F.2d 541 (11th Cir. 1983) ................................................................................. 21

*Fed. Educ. Ass'n v. Trump*,
795 F. Supp. 3d 74 (D.D.C. 2025) ........................................................................... 26

*Hartman v. Moore*,
547 U.S. 250 (2006) ................................................................................................. 29

*In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*,
No. CV 1:26-MC-0007-MSM-AEM, 2026 WL 1392565 (D.R.I. May 14, 2026) ................ 26

*Irvin v. Dowd*,
366 U.S. 717 (1961) ................................................................................................. 21

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ........................................................................................... 27, 29

*Singh v. Tsoukaris*,
No. 26-cv-01531 (D.N.J. Feb. 20, 2026) ................................................................. 26

*United States v. Abrego Garcia*,
No. 3:25-CR-00115, 2026 WL 1454303 (M.D. Tenn. May 22, 2026) ................ 7, 9, 19

*United States v. Abrego*,
350 F.R.D. 557 (M.D. Tenn. 2025) ............................................................................ 9

ii

*United States v. Abrego,*
    802 F. Supp. 3d 1055 (M.D. Tenn. 2025) ................................................................. 8

*United States v. Armstrong,*
    517 U.S. 456 (1996) ........................................................................................ 2, 19, 20

*United States v. Batchelder,*
    442 U.S. 114 (1979) ................................................................................................. 1

*United States v. Brown,*
    862 F. Supp. 2d 1276 (N.D. Ala. 2012) ................................................................... 5

*United States v. Carey,*
    816 F. Supp. 3d 129 (D.D.C. 2026) ....................................................................... 27

*United States v. Chem. Found., Inc.,*
    272 U.S. 1 (1926) ............................................................................................... 6, 20

*United States v. Comey,*
    810 F. Supp. 3d 768 (E.D. Va. 2025) ..................................................................... 25

*United States v. Garcia,*
    No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev. Sept. 30, 2025) .................... 25

*United States v. Giraud,*
    No. 1:24-CR-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) ........................................ 25

*United States v. Goodwin,*
    457 U.S. 368 (1982) ................................................................................................. 5

*United States v. James,*
    810 F. Supp. 3d 752 (E.D. Va. 2025) ..................................................................... 25

*United States v. Meyer,*
    810 F.2d 1242 (D.C. Cir. 1987) ............................................................................... 5

*United States v. Monsoor,*
    77 F.3d 1031 (7th Cir. 1996) ................................................................................... 5

*United States v. O'Callaghan,*
    500 F. App'x 843 (11th Cir. 2012) ......................................................................... 19

*United States v. Rabbitt,*
    No. 25-cr-693 (N.D. Ill. June 2, 2026) ................................................................... 15

*United States v. Rabbitt,*
    No. 25-cr-693 (N.D. Ill. Oct. 23, 2026) ................................................................. 14

*United States v. Ramirez*,
No. 5:25-cr-264-SSS, 2025 WL 3019248 (C.D Cal. Oct. 28, 2025) ..................................... 25

*United States v. Slatten*,
865 F.3d 767 (D.C. Cir. 2017) ...................................................................................... 5

*United States v. Wilson*,
262 F.3d 305 (4th Cir. 2001)....................................................................................... 19

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943)..................................................................................................... 29

*Wells v. Murray*,
831 F.2d 468 (4th Cir. 1987)........................................................................................ 21

**STATUTES**

28 U.S.C. § 516................................................................................................................... 20

28 U.S.C. § 530B ............................................................................................................... 21

28 U.S.C. § 546(d) ............................................................................................................. 24

28 U.S.C. § 547 ................................................................................................................... 20

**OTHER AUTHORITIES**

ABA Model Rule 3.8 ..................................................................................................... 21, 22

Catherine Albiston, *Democracy, Civil Society, and Public Interest Law*,
2018 Wis. L. Rev. 187 (2018)...................................................................................... 28

Daphna Renan, *Presidential Norms and Article II*,
131 Harv. L. Rev. 2187, 2207-2215 (June 2018)...................................................... 22

Ethan Leib, Jed Handelsman Shugerman & Andrew Kent,
*Faithful Execution and Article II*, 132 Harv. L. Rev. 2111 (June 2019)................. 2

Gregory P. Magarian, *Justice Stevens, Religion, and Civil Society*,
2011 Wis. L. Rev. 733 (2011)....................................................................................... 28

Jennifer Dresden, Aaron Baird & Ben Raderstorf, *The Authoritarian Playbook*, Protect
Democracy (June 15, 2022) ........................................................................................ 28

Justice Manual, 1-7000 et seq. ........................................................................................ 21

Justice Manual, 9-27.00 et seq. .................................................................................... 1, 22

National Security Presidential Memorandum 7, "Countering Domestic Terrorism and Organized
Political Violence," 90 Fed. Reg. 47225 (Sept. 25, 2025) ...................................... 28

Thomas E. Brzozowski, *The Bondi Memo's Quiet Rewriting of Domestic Terrorism Rules*, Lawfare (Dec. 12, 2025) ................................................................................................ 28

**RULES**

Federal Rule of Evidence 404(b) ....................................................................................... 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const., art. II, § 2 ................................................................................................... 24

U.S. Const., art. II, § 3 ................................................................................................. 1, 20

## INTEREST OF *AMICUS*[1]

Protect Democracy Project ("Protect Democracy") files this brief in support of Defendant the Southern Poverty Law Center ("SPLC") out of concern about the weaponization of federal law enforcement authority. Protect Democracy is a nonpartisan, nonprofit organization dedicated to preventing American democracy from declining into a more authoritarian form of government. Politicization of institutions like the Department of Justice ("DOJ") is a hallmark of authoritarianism, particularly when it is deployed to quash political opposition and dissent. For that reason, since its founding in 2017, Protect Democracy has published research and analysis, engaged in legislative advocacy, and filed amicus briefs aimed at promoting and protecting DOJ independence.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The traditional mission of the United States Department of Justice is to pursue evenhanded law enforcement in a manner divorced from partisan political considerations.[2] Law enforcement independence from partisan politics is, in turn, a central component of democratic government.[3] Under Article II of our Constitution, the executive branch's authority to enforce the law is exercised subject to the president's duty, and that of his subordinates, to "take care that the laws be faithfully executed." U.S. Const., art. II, § 3, cl. 2. While executive power is undoubtedly robust, it remains cabined by constitutional limits. *See United States v. Batchelder*, 442 U.S. 114, 125 (1979) (a prosecutor's discretion is "subject to constitutional constraints"). The Take Care Clause

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than *amicus* contributed money to fund this brief's preparation or submission.

[2] *See* Justice Manual, 9-27.00 et seq., Principles of Federal Prosecution.

[3] Steven Levitsky & Daniel Ziblatt, How Democracies Die 78–79 (Crown, 2018).

1

thus creates a fiduciary duty to act in the public interest and not in the president's personal or partisan interests.[4]

Courts have given prosecutors broad deference—a so-called "presumption of regularity"—in exercising their "core executive constitutional function." *See United States v. Armstrong*, 517 U.S. 456, 464–65 (1996). However, that deference is rooted in the assumption that prosecutors are acting in furtherance of their fiduciary duty and following procedures and laws consistent with it. When prosecutors abuse the law enforcement power to punish the president's perceived political enemies and quash dissent, the presumption does not apply.

The prosecution of the SPLC is an improper weaponization of law enforcement, as demonstrated by its brief supporting its motion to dismiss the indictment on the grounds of vindictive prosecution. *Amicus* writes to make the following additional points.

*First*, the indictment of the SPLC sits within a larger pattern of prosecutions in which the DOJ has recently used its law enforcement powers to retaliate against its perceived political opponents. The administration has repeatedly targeted for criminal investigation and prosecution those who align with the opposition political party, who publicly oppose the administration's policies or have done so in the past, who have taken official action against President Trump, or are otherwise perceived as opponents of the president or his administration. These investigations and prosecutions have likewise each been characterized by a series of departures from regular order—the laws and procedures that govern and guide federal criminal prosecutions.

The president and his political appointees have made numerous inappropriate public comments in connection with the investigations and prosecutions that are inconsistent with the constitutionally guaranteed presumption of innocence and that overtly reveal their vindictive and

---

[4] Ethan Leib, Jed Handelsman Shugerman & Andrew Kent, *Faithful Execution and Article II*, 132 Harv. L. Rev. 2111 (June 2019).

retaliatory motivation. These include direct public calls by the president for the prosecution of people he perceives as opponents and public statements by the president and his political appointees impugning the character of potential subjects and proclaiming their guilt before trial. *See infra* Part I.A; Part II.A. The numerous instances in which the administration has targeted opponents for prosecution in direct response to the president's calls to do so, all while tarring the defendants with prejudicial public statements and overriding the judgment of professional prosecutors, support the position that improper motives underpin the SPLC indictment.

*Second*, the administration's many instances of disregard for procedural regularity likewise give courts no reason to presume prosecutorial decisions are being undertaken in accordance with its "take care" duties or that the administration is entitled to a presumption of regularity. This includes prejudicial statements by the president and others in the administration about targets of investigations. In addition, the president and his political appointees have disregarded the legal advice of professional Department of Justice prosecutors and punished them for dissenting against pursuing investigations and seeking charges in cases not supported by sufficient evidence. *See infra* Part II.B. And finally, the president has sought to evade advice and consent of the Senate and court oversight to appoint United States Attorneys who are perceived as willing to do the president's personal bidding at the expense of their "take care" duties. *See infra* Part II.C. This irregular conduct has collectively resulted in a series of extraordinary rebukes from federal courts. *See infra* Part II.B.

*Third*, the indictment threatens to cast a chill on the First Amendment-protected activities of any civil society organization that may draw the ire of the current administration. The implications of this wrongful prosecution reverberate far beyond this case and pose a grave danger to the fundamental rights forming the bedrock of our democratic system of government.

3

It is out of deep concern for our democracy that *amicus* offers this brief for the Court's assistance. For these reasons and those the SPLC offers in its own motion, the indictment should be dismissed.

## **ARGUMENT**

**I.  This Case Fits the New Pattern of Vindictive and Retaliatory Criminal Prosecutions and Investigations—A Dangerous Departure from Settled Law and Practice**

President Trump ran for office in 2024 on a promise to use federal law enforcement as a tool for seeking retribution against his perceived political opponents.[5] Since commencing his second term in January 2025, the president's Department of Justice appointees have moved to fulfill that promise. In addition to the indictment of the SPLC, the administration has launched multiple criminal investigations and prosecutions of individuals and groups that exercise their First Amendment rights to criticize or oppose the president or his policies and others he has publicly singled out as his perceived opponents. Several of these matters followed specific directives from the president. This administration's DOJ has systematically departed from the longstanding laws, rules, and norms designed to ensure that prosecutors are acting in accordance with evenhanded and nonpartisan enforcement principles and that persons accused of crimes receive the full measure of protections set forth in the Bill of Rights.

---

[5] Tom Dreisbach, *Trump has made more than 100 threats to prosecute or punish perceived enemies*, NPR (Oct. 22, 2024), https://www.npr.org/2024/10/21/nx-s1-5134924/trump-election-2024-kamala-harris-elizabeth-cheney-threat-civil-liberties.

**A. The administration has directed multiple vindictive prosecutions and criminal investigations of those who have publicly opposed administration policies or who have otherwise been directly targeted by the president.**[6]

There are two ways to demonstrate prosecutorial vindictiveness: "(1) by showing that a presumption of vindictiveness arises from the government's conduct; or (2) by showing actual vindictiveness." *United States v. Brown*, 862 F. Supp. 2d 1276, 1289 (N.D. Ala. 2012), *aff'd*, 516 F. App'x 872 (11th Cir. 2013) (unpublished); *accord United States v. Goodwin*, 457 U.S. 368, 381 (1982); *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017). Statements from prosecutors or other executive branch officials can establish either actual or circumstantial evidence to meet this standard.

Historically, prosecutors have rarely provided direct evidence of actual vindictiveness given prohibitions on making public statements that could prejudice defendants' rights. However, the current administration has openly disregarded those restrictions, and the president has repeatedly inserted himself—and his words—into DOJ's law enforcement activities. A defendant need not demonstrate that a prosecutor harbored personal animus towards the defendant. Instead, courts look to "the conduct of the government as a whole," because "the desire to punish defendants for exercising their legal rights arises more often from institutional than from personal wellsprings." *United States v. Meyer*, 810 F.2d 1242, 1248 (D.C. Cir. 1987); *see also United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996) (explaining that animus may be "imputed to federal prosecutors" by showing that an external force "in some way prevailed upon the prosecutor in making the decision to seek an indictment").

---

[6] *Amicus* takes no position on whether the evidence in any of the listed cases amounts to the probable cause necessary to secure an indictment or is sufficient to sustain a conviction by a jury beyond a reasonable doubt. Our focus is on the executive branch's compliance, or lack thereof, with the constitutional provisions, laws, and internal guidelines that govern criminal investigations and prosecutions and whether the president and his appointees have exhibited animus toward the subjects of the investigations.

The president and DOJ's political leadership have made extrajudicial statements that run afoul of the constitutional presumption of innocence. Spanning official government "orders" and correspondence, press conferences, informal comments, and social media posts, the president has demanded or specifically directed criminal investigations, as he and other DOJ officials have often presumed the guilt or impugned the character of individuals who have not yet been charged with or convicted of a crime. *Amicus* is aware of no precedent for the president and other high-ranking DOJ and law enforcement officials speaking in this manner about criminal investigations and their subjects not just once, but as a matter of course. The statements are revealing of the administration's animus toward the subjects and its motive to use prosecutions as a form of retaliation and control. At the same time, they are a sign that the president and his subordinates lack concern for ensuring that even possibly legitimate investigations are free from procedural defects, which could thwart the administration's ability to obtain convictions. These patterns certainly should not give the Court any comfort that prosecutors acting at the president's direction are "properly discharg[ing] their official duties." *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926).

Indeed, the ever-expanding list of irregular conduct by DOJ officials has not gone unnoticed by the courts. Judges overseeing several of the criminal prosecutions catalogued in this brief have found evidence of vindictiveness or otherwise expressed skepticism about the sufficiency of the evidence for the government's charges, and there have been numerous other instances of judges declining to give deference to the government's actions and representations.

6

The following is a non-exhaustive list of cases involving those targeted by the Trump administration for their perceived opposition to the president or his policies or after they took action against him in their official capacities:[7]

1. Kilmar Abrego Garcia

Kilmar Abrego Garcia, an undocumented immigrant from El Salvador, was deported in March 2025 in violation of a court order. In response to a lawsuit Abrego Garcia filed against the Trump administration, Department of Justice attorneys admitted that Abrego Garcia was deported in error. Following the lawsuit and his case being championed by elected Democrats, Abrego Garcia was arrested on June 6, 2025, on charges the DOJ had previously declined to pursue.[8] Deputy Attorney General Todd Blanche thereafter acknowledged that the criminal investigation had commenced after Abrego Garcia prevailed in his challenge to removal.[9] On October 3, 2025, the District Court in the criminal case held that Abrego Garcia had established a reasonable likelihood that the prosecution was vindictive and granted discovery.[10]

Despite evidence to the contrary, the Department of Homeland Security put out official press releases stating that "THE REAL STORY [is] Kilmar Abrego Garcia is an MS-13 Gang member with a History of Violence"[11] and calling out "Sanctuary Politicians for Standing with Kilmar

---

[7] Protect Democracy, *Tracking retaliatory use of arrests, prosecutions, and investigations by the Trump administration*, https://protectdemocracy.org/work/retaliatory-action-tracker/.
[8] *United States v. Abrego Garcia*, 3:25-cr-00115 (M.D. Tenn. Jun. 6, 2025) ECF 6, https://www.courtlistener.com/docket/70476164/6/united-states-v-abrego-garcia/.
[9] *United States v. Abrego Garcia*, No. 3:25-CR-00115, 2026 WL 1454303, at *3 (M.D. Tenn. May 22, 2026).
[10] *United States v. Abrego Garcia*, 3:25-cr-00115 (M.D. Tenn. Oct. 3, 2025) ECF 138, https://www.courtlistener.com/docket/70476164/138/united-states-v-abrego-garcia/.
[11] Press Release, Homeland Security, THE REAL STORY: Kilmar Abrego Garcia is an MS-13 Gang member with a History of Violence, (Apr. 16, 2025) https://www.dhs.gov/news/2025/04/16/kilmar-abrego-garcia-ms-13-gang-member-history-violence.

Abrego Garcia, an MS-13 Gang Member, Human Trafficker, Wife Beater, and Child Predator."[12] The president also publicly accused the "Radical Lunatic Democrats" of "falsely making Kilmar Armando Abrego Garcia out to be a very sweet and innocent person, which is a total, blatant, and dangerous LIE."[13]

On October 3, 2025, District Judge Waverly D. Crenshaw entered an order granting Abrego Garcia discovery on the ground that he had shown a "realistic likelihood of vindictiveness" motivating his indictment. *United States v. Abrego*, 802 F. Supp. 3d 1055, 1058 (M.D. Tenn. 2025). In doing so, the court noted multiple extra-judicial statements by DOJ and other government officials pronouncing him a "gang member," a "violent criminal," a "serial domestic abuser," "human trafficker," and a "terrorist," and otherwise presuming his guilt. *Id*. at 1059-60. The court took particular note of a Fox News interview in which Deputy Attorney General Todd Blanche acknowledged that DOJ had commenced a criminal investigation of Abrego Garcia after "'a judge in Maryland . . . questioned' the government's decision [to send Abrego Garcia to El Salvador], found that it 'had no right to deport him,' and 'accus[ed] [the government] of doing something wrong.'" *Id*. at 1060. The court then concluded that "the timing of Abrego's indictment suggests a realistic likelihood that senior DOJ and DHS officials may have induced Acting U.S. Attorney McGuire (albeit unknowingly) to criminally charge Abrego in retaliation for his Maryland lawsuit." *Id*. at 1064.

---

[12] Press Release, Homeland Security, DHS Calls Out Sanctuary Politicians for Standing with Kilmar Abrego Garcia, an MS-13 Gang Member, Human Trafficker, Wife Beater, and Child Predator Over the Safety of the American People (Aug. 25, 2025), https://www.dhs.gov/news/2025/08/25/dhs-calls-out-sanctuary-politicians-standing-kilmar-abrego-garcia-ms-13-gang-member.

[13] Donald Trump (@realDonaldTrump), Truth Social (Apr. 20, 2025, at 05:12 p.m. ET), https://truthsocial.com/@realDonaldTrump/posts/114372349322321344.

On October 27, 2025, the district court found Trump administration officials in violation of a local rule prohibiting parties from making extrajudicial statements that "have a substantial likelihood of materially prejudicing" a defendant's right to a fair trial.[14] The court called the administration's statements "troubling, especially where many of them are exaggerated if not simply inaccurate" and warned that "any future statements that pose a clear and present danger to Abrego's fair trial right may subject the speaker to sanctions."[15] While the court found that Abrego's right to a fair trial had not *yet* been prejudiced, it noted that time could not necessarily cure the damage from "damaging and highly inflammatory statements" and thus held future compliance with the rule on extrajudicial statements to be "critically important."[16]

On May 22, 2026, the district court dismissed the indictment against Mr. Abrego Garcia, finding that the DOJ had failed to rebut the presumption of vindictiveness. *United States v. Abrego Garcia*, No. 3:25-CR-00115, 2026 WL 1454303, at *3 (M.D. Tenn. May 22, 2026). The court relied on evidence that DOJ reopened an investigation into Abrego after he challenged his deportation and the judicial branch ordered his return from El Salvador, and statements from senior DOJ officials that tied the indictment to acting Attorney General Todd Blanche's vindictive motive. *Id.* at *5.

    2.  <u>James Comey</u>

On September 26, 2025, former FBI Director Comey was indicted on charges of making a false statement to Congress and obstruction of an investigative proceeding before Congress. A few days prior to his indictment, the president directed the Attorney General to take immediate action

---

[14] *United States v. Abrego*, 350 F.R.D. 557, 560 (M.D. Tenn. 2025).
[15] *Id.*
[16] *Id.*

against Comey.[17] During Comey's tenure as FBI Director, he oversaw the investigation into Russia's interference with the 2016 election. The president fired Comey from that position in 2017 due in part to that investigation, which Trump found to be adversarial and to hinder his ability to govern.[18] The indictment was ultimately dismissed based on unlawful appointment of prosecution.[19]

The president issued prejudicial public statements on Comey's now-dismissed case, calling Comey (and former CIA Director John Brennan) "dishonest people." [20] The president posted on Truth Social seemingly demanding that Pam Bondi "can't wait any longer" to prosecute Comey and saying Comey was "guilty as hell."[21] Just after Comey's indictment was announced, the president took to Truth Social to state that Comey is "one of the worst human beings the Country has ever been exposed to"[22] calling him "James 'Dirty Cop' Comey" while alleging that "HE LIED!"[23] During an interview with 60 Minutes, the president once again called Comey a "dirty cop," and when asked about his Truth Social post seemingly calling for Bondi to prosecute, he

---

[17] April Rubin, *These are the people Trump told the Justice Department to prosecute*, Axios (Sept. 26, 2025), https://www.axios.com/2025/09/26/trump-justice-department-prosecute-james-comey-adam-schiff-letitia-james.

[18] Amanda Wilcox, *A breakdown of the complicated Trump-Comey relationship*, PBS (June 8, 2017), https://www.pbs.org/newshour/classroom/posts/2017/06/a-breakdown-of-the-complicated-trump-comey-relationship.

[19] Eric Tucker, *Judge dismisses Comey, James indictments after finding that prosecutor was illegally appointed*, AP News (Nov. 25, 2025), https://apnews.com/article/comey-james-justice-department-5ec1a59d152bc1fd000ade15e20745b5.

[20] Glenn Thrush & Julian E. Barnes, *Administration Takes Steps to Target 2 Officials Who Investigated Trump*, N.Y. Times (July 9, 2025), https://www.nytimes.com/2025/07/09/us/politics/ratcliffe-brennan-cia.html.

[21] Donald Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 6:44 p.m. ET), https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

[22] Donald Trump (@realDonaldTrump), Truth Social (Sept. 25, 2025, at 7:24 p.m. ET), https://truthsocial.com/@realDonaldTrump/posts/115267513846352215.

[23] Donald Trump (@realDonaldTrump), Truth Social (Sept. 26, 2025, at 6:57 a.m. ET), https://truthsocial.com/@realDonaldTrump/posts/115270236987768479.

said he did not "have to instruct [Pam Bondi and Kash Patel], because [Comey and Letitia James] were so dirty, they were so crooked, they were so corrupt" that prosecutors did it on their own.[24]

On April 28, 2026, the government brought separate charges against Comey for posting a picture of a seashell formation on social media that spelled out the phrase "86 47." *See* Indictment, *United States v. Comey*, 26-cr-00016 (E.D.N.C. Apr. 28, 2026), ECF No. 1. Comey was indicted by a federal grand jury on felony charges for making threats against the President. The second Comey indictment has been widely criticized as baseless and retaliatory.[25]

### 3. Attorney General Letitia James

On October 9, 2025, James, the Democratic Attorney General of New York, was indicted on charges of bank fraud and making false statements to a financial institution.[26] A few days prior to her indictment, the president had directed the Attorney General to take action against James immediately.[27] Beginning in September 2022, James's office had successfully sued Trump, his three eldest children, and the Trump Organization for defrauding banks and lenders.[28] The criminal

---

[24] Video posted by 60 Minutes, YouTube, Are recent indictments Trump's political retribution? (Nov. 3, 2025), https://www.youtube.com/shorts/Zu39k2LoZ58.

[25] *E.g.,* Andrew C. McCarthy, *Trump DOJ Brings a Second Bogus Comey Indictment*, National Review (Apr. 28, 2026), https://www.nationalreview.com/corner/trump-doj-brings-a-second-bogus-comey-indictment/; Peter Stone, *Second Indictment of ex-FBI Chief James Comey Signals Retaliation Fears*, Guardian (May 13, 2026), https://www.theguardian.com/us-news/2026/may/13/james-comey-fbi-retaliation-fears; Tara Sutter, *Charging Comey Is a Free Speech Trap: Turley*, The Hill (Apr. 29, 2026), https://thehill.com/regulation/court-battles/5854518-james-comey-indictment-free-speech/.

[26] *United States v. James,* 2:25-cr-00122, (E.D. Va. Oct. 9, 2025) ECF 1, https://www.courtlistener.com/docket/71601419/1/united-states-v-james/.

[27] April Rubin, *These are the people Trump told the Justice Department to prosecute*, Axios (Sept. 26, 2025), https://www.axios.com/2025/09/26/trump-justice-department-prosecute-james-comey-adam-schiff-letitia-james.

[28] Aaron Katersky, *New York AG Letitia James files $250M lawsuit against Trump for defrauding lenders, others*, ABC News (Sept. 21, 2022), https://abcnews.go.com/US/york-ag-letitia-james-files-250m-lawsuit-trump/story?id=90240332.

11

indictment against James was ultimately dismissed based on unlawful appointment of prosecution.[29]

The president also issued prejudicial public statements on James' case. The same social media post directing Bondi to prosecute Comey also invoked James by name.[30] Before any official investigation into James began, the president reposted an article alleging mortgage fraud on Truth Social and publicly called for her to "resign from her position as New York State Attorney General, IMMEDIATELY."[31] Trump has targeted James for years, even stating in 2023 that "LETITIA JAMES COMMITTED THE FRAUD, I DIDN'T"[32] and in 2024 that "she should be criminally liable" for her court case against him.[33]

4. Sen. Mark Kelly and Former Military and Intelligence Community Lawmakers

On November 24, 2025, the Pentagon announced a review of "serious allegations of misconduct" against Kelly, a retired U.S. Navy Captain and current U.S. Senator, for his involvement in a video correctly reminding military personnel that they are not required to follow orders they know are unlawful.[34] In January 2026, Rep. Jason Crow, Rep. Maggie Goodlander, Rep. Chrissy Houlahan, Sen. Elissa Slotkin, and Rep. Chris Deluzio, all Democratic lawmakers, also announced that they were under investigation by federal prosecutors for their participation in

---

[29] Eric Tucker, *Judge dismisses Comey, James indictments after finding that prosecutor was illegally appointed*, AP News (Nov. 25, 2025), https://apnews.com/article/comey-james-justice-department-5ec1a59d152bc1fd000ade15e20745b5.

[30] Donald Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025, at 06:44 p.m. ET) https://truthsocial.com/@realDonaldTrump/posts/115239044548033727.

[31] Donald Trump (@realDonaldTrump), Truth Social (Apr. 13, 2025, at 11:02 p.m. ET) https://truthsocial.com/@realDonaldTrump/posts/114334087867258791.

[32] Donald Trump (@realDonaldTrump), Truth Social (Nov. 9, 2023, at 07:05 p.m. ET) https://truthsocial.com/@realDonaldTrump/posts/111383329498800132.

[33] Donald Trump (@realDonaldTrump), Truth Social (Jan. 12, 2024, at 01:49 p.m. ET) https://truthsocial.com/@realDonaldTrump/posts/111744476136007497.

[34] Greg Jaffe, *Pentagon Opens Inquiry Into Senator Mark Kelly Over What Hegseth Calls 'Seditious' Video*, N.Y. Times (Nov. 24, 2025), https://www.nytimes.com/2025/11/24/us/politics/mark-kelly-pentagon-investigation.html

the same video. A grand jury returned a no true bill and U.S. Attorney Jeanine Pirro eventually dropped the investigation into the lawmakers.[35]

Both the president and Defense Secretary Pete Hegseth issued prejudicial public statements about their case. The president responded to the lawmakers' video by suggesting that the legislators had engaged in "sedition" and that they should be jailed or possibly executed. "Each one of these traitors to our Country should be ARRESTED AND PUT ON TRIAL. Their words cannot be allowed to stand,"[36] Trump wrote. Defense Secretary Hegseth called the video "despicable, reckless, and false," and referred to the lawmakers as "the Seditious Six."[37]

5.   Rep. LaMonica McIver

On June 10, 2025, McIver, a Democratic Congresswoman from New Jersey was indicted for allegedly impeding and interfering with ICE officers.[38] Rep. McIver had been vocally critical of the Trump administration's immigration enforcement policies and the conditions at the facility she was attempting to enter. Both the president and DHS issued prejudicial public statements on McIver's case, as described below. Several of these were social media posts that the court ordered be taken down.

---

[35] Alan Feur, Glenn Thrush & Michael Schmidt, *Grand Jury Rebuffs Justice Dept. Attempt to Indict 6 Democrats in Congress*, N.Y. Times (Feb. 10, 2026), https://www.nytimes.com/2026/02/10/us/politics/trump-democrats-illegal-orders-pirro.html; Brandon Drenon, *US government drops case against Democrats in 'illegal orders' video*, BBC (Feb. 24, 2026), https://www.bbc.com/news/articles/c20z7yplp7po.

[36] Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:08 a.m. ET), https://truthsocial.com/@realDonaldTrump/posts/115582417825161974.

[37] Pete Hegseth (@PeteHegseth), X (Nov. 24, 2025, at 12:27 p.m. ET), https://x.com/PeteHegseth/status/1993008532187148582?s=20.

[38] *United States. v. McIver,* 2:25-cr-00388, (D.N.J. Jun. 20, 2025) ECF 12, https://www.courtlistener.com/docket/70515005/12/united-states-v-mciver/.

The president publicly commented on the evidence, describing the Congresswoman's conduct as "shoving," "out of control," and the "kind of crap" that is "over in this country."[39] DHS put out several statements about Rep. McIver's arrest, including, but not limited to, one accusing her of being a "gutter politician"; one posting an edited video of the incident stating that she "stormed the gate" and was "ASSAULTING an ICE agent"; and another that she was "encouraging and leading [] supporters in assaulting law enforcement."[40] Rep. McIver's legal team argued that these statements were inappropriate extrajudicial statements. DHS removed many of the posts in question in response to statements and orders from the Judge.

On October 21, the District Court for New Jersey held a hearing on her motion to dismiss on grounds of selective and vindictive prosecution and legislative immunity. While the court ultimately denied the motion, Judge Jamel Semper ordered the government to take down social media posts he said were "fact free" and "prejudicial" to the Congresswoman.[41] An appeal of the denial of Rep. McIver's motion to dismiss is pending in the Third Circuit.

6. "Broadview Six"

On October 23, 2025, after two failed attempts, the DOJ obtained an indictment against the so-called "Broadview Six." Indictment, *United States v. Rabbitt*, No. 25-cr-693 (N.D. Ill. Oct. 23, 2026), ECF No. 1. The defendants, which included several Democratic politicians and activists, were charged with impeding a federal officer in connection with their participation in a protest

---

[39] Luke Barr, *Charges against Rep. LaMonica McIver spark backlash after incident with ICE agents*, ABC News (May 20, 2025), https://abcnews.go.com/Politics/rep-lamonica-mciver-charged-doj-incident-ice-agents/story?id=121971746.

[40] *United States v. McIver*, 2:25-cr-00388, (D.N.J. Aug. 15, 2025) ECF 21-1, https://www.courtlistener.com/docket/70515005/21/united-states-v-mciver/.

[41] Mike Catalini, *Judge says DHS social media posts in Rep. McIver prosecution are 'prejudicial' and should be removed*, Associated Press (Oct. 21, 2025), https://abcnews.go.com/Politics/wireStory/judge-dhs-social-media-posts-rep-mciver-prosecution-126735551.

outside of an U.S. Immigration and Customs Enforcement Facility in Illinois. Charges against two of the defendants were dropped in March 2026, and the remaining charges were dropped in May 2026 after the court reviewed transcripts of the grand jury proceedings and discovered significant misconduct by the government. *See* Mot. Pursuant to Hyde Am., *United States v. Rabbitt*, No. 25-cr-693 (N.D. Ill. June 2, 2026), ECF No. 201.

During a hearing on the motion to disclose the grand jury transcripts, Judge April M. Perry admonished the DOJ attorneys, saying: "I have never seen the types of prosecutorial behavior before a grand jury that I saw in those transcripts." *Id.* at 10. Judge Perry identified three instances of misconduct: 1) improper prosecutorial vouching to the grand jurors; 2) improper communication with grand jurors outside the grand jury room; and 3) a prosecutor excusing grand jurors who disagreed with the government from grand jury deliberations. *Id.* at 11. And with respect to the loss of the presumption of regularity, Judge Perry stressed that she believed "deeply in the presumption of regularity," but explained "[t]hat trust has been broken" and the government's conduct suggested the prosecution might be vindictive. *Id.*

7.  Jerome Powell

On January 11, 2026, DOJ publicly announced that Powell, Chair of the Federal Reserve, was under investigation related to his involvement with and official statements about the independent central bank's renovation of its headquarters. The president has made many public statements about Jerome Powell, saying that he has "mental problems" and that he would love to "fire his ass" for refusing to heed the president's demand to lower interest rates.[42]

---

[42] Louis Casiano, *Trump slams Fed Chair Jerome Powell, says he has 'mental problems' and should be fired*, Fox Business (Nov. 20, 2025), https://www.foxbusiness.com/politics/trump-slams-fed-chair-jerome-powell-says-mental-problems-fired.

In November 2025, U.S. Attorney for the District of Columbia Jeanine Pirro approved a criminal investigation into Mr. Powell and his involvement with and official statements about the central bank's renovation of its headquarters. In March 2026, Judge Boasberg quashed DOJ's subpoenas issued to the Federal Reserve, which were related to this investigation. In his opinion, Judge Boasberg explained that "there is abundant evidence that the subpoenas' dominant (if not sole) purpose is to harass and pressure Powell either to yield to the President or to resign and make way for a Fed Chair who will."[43]

8.  Mayor Ras Baraka

On May 9, 2025, Baraka, the Democratic Mayor of Newark, New Jersey, was arrested and detained by federal officials for attempting to conduct oversight of an ICE facility after having publicly criticized the conditions there. Newly released body camera evidence submitted in Rep. McIver's federal court case reveals a special agent saying "We are arresting the mayor right now, per the deputy attorney general of the United States. Anyone that gets in our way, I need you guys to give me a perimeter so I can cuff him."[44] The charges against Baraka have been dropped.

The United States Attorney's Office for the District of New Jersey moved to drop federal trespassing charges against Baraka ten days after his arrest. U.S. Magistrate Judge Andre Espinosa called the charges "a worrying misstep" that was suggestive of "a failure to adequately investigate, to carefully gather facts, and to thoughtfully consider the implications" of charging the Mayor. The judge then admonished the U.S. Attorney's Office to let the incident "serve as an inflection

---

[43] *In re: Grand Jury Subpoenas*, 1:26-mc-00012 (D.D.C. Mar. 11, 2026) ECF 23, https://storage.courtlistener.com/recap/gov.uscourts.dcd.288962/gov.uscourts.dcd.288962.23.0_2 .pdf.

[44] Video posted by NJ.com, YouTube, Newly released bodycam footage reveals who really ordered the arrest of Newark's mayor (Sept. 30, 2025), youtube.com/watch?time_continue=2&v=iyVjV5WmLjk&embeds_referring_euri=https%3A%2 F%2Fwww.nj.com%2Fessex%2F2025%2F09%2Fnew-bodycam-footage-reveals-who-really-ordered-the-arrest-of-newarks-mayor.html.

point and a reminder to uphold your solemn oath to the people of this district and to your client, justice itself" and to "sure that every charge brought is a product of rigorous investigation."[45]

9. Sen. Adam Schiff

On August 5, 2025, the DOJ launched a criminal mortgage fraud investigation of Schiff, a current Democratic Senator from California, former chairman of the House Intelligence Committee, leader of the 2019 impeachment inquiry against the president, and former member of the House Select Committee investigating the January 6, 2021, attack on the United States Capitol.[46] Schiff was named in the same presidential statement to the Attorney General directing immediate action that included James Comey and Letitia James.[47]

The president issued prejudicial public statements on Schiff's case. On May 5, 2025, the president posted on Truth Social suggesting his administration "should start playing this game" and "expel Democrats for the many crimes that they have committed" before launching into allegations that Schiff was involved in illegal activity related to the January 6th committee.[48] And before the fraud investigation into Schiff even began, the president posted on Truth Social claiming he "always suspected Shifty Adam Schiff was a scam artist,"[49] and alleging fraud calling Schiff a

---

[45] Sophie Neito-Munoz, *Judge admonishes prosecutors over handling of Newark mayor's arrest*, New Jersey Monitor (May 21, 2025), https://newjerseymonitor.com/2025/05/21/judge-admonishes-prosecutors-over-handling-of-newark-mayors-arrest/.

[46] Ryan J. Reilly et al., *DOJ investigating N.Y. AG's office and Sen. Adam Schiff*, NBC News (Aug. 8, 2025),
https://www.nbcnews.com/politics/justice-department/doj-opens-investigation-new-york-ags-office-brought-fraud-case-trump-rcna223731.

[47] *Id.*

[48] Donald Trump (@realDonaldTrump), Truth Social (May 1, 2025, at 11:36 p.m. ET),
https://truthsocial.com/@realDonaldTrump/posts/114436142904738936.

[49] Donald Trump (@realDonaldTrump), Truth Social (July 15, 2025),
https://truthsocial.com/@realDonaldTrump/posts/114857687712359546.

"THIEF!"[50] and stating that he "is in BIG TROUBLE! He falsified Loan Documents."[51] Trump continued to post about "irrefutable proof"[52] that Schiff was leaking classified information to damage Trump and that "'Schiffty' Schiff was sooo dishonest and corrupt."[53] As of June 2026, no charges have been filed against Schiff.

### B. The administration's pattern of vindictive and retaliatory prosecutions supports the SPLC's motion to dismiss.

The Trump administration's pattern of retaliatory and irregular conduct supports the SPLC's claim that the pending charges are vindictive. The evidence presented by the SPLC that the prosecution against it amounts to vindictive and selective retaliation is overwhelming and stands on its own. Taken together with the administration's larger pattern of prosecuting Trump's critics and perceived political opponents, there is no reason for the Court to give deference to its prosecutive decisions. *See also infra* Part II.

To establish a vindictive prosecution, a defendant must show that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *Baker v. Thomas*, 2008 WL 2225753, at *8 (M.D. Ala. May 27, 2008) (quoting *Goodwin*, 457 U.S. at 372). That standard is easily satisfied here.

The SPLC's brief recounts the numerous instances in which the SPLC exercised its First Amendment rights to challenge the administration's policies, and identify and criticize extremist groups. ECF No. 49-1, at 8-20. The president and high-ranking administration officials publicly

---

[50] Donald Trump (@realDonaldTrump), Truth Social (July 20, 2025, at 10:20 a.m. ET), https://truthsocial.com/@realDonaldTrump/posts/114886877289379131.
[51] Donald Trump (@realDonaldTrump), Truth Social (July 20, 2025, at 08:53 p.m. ET) https://truthsocial.com/@realDonaldTrump/posts/114888488677783141.
[52] Donald Trump (@realDonaldTrump), Truth Social (Aug. 13, 2025, at 06:17 a.m. ET) https://truthsocial.com/@realDonaldTrump/posts/115020938176485683.
[53] Donald Trump (@realDonaldTrump), Truth Social (Oct. 12, 2025, at 11:04 a.m. ET) https://truthsocial.com/@realDonaldTrump/posts/115361806192142146.

denounced the SPLC and communicated that the SPLC should be prosecuted. The president and executive branch officials have overtly expressed their motive in this case. And similar to the *Abrego Garcia* vindictive prosecution, this indictment was obtained after the DOJ previously declined to prosecute the SPLC. Moreover, in connection with the superseding indictment DOJ recently obtained, ECF No. 51, it appears that DOJ may have violated grand jury secrecy rules by releasing a draft version of the indictment to members of the media before alerting the SPLC's counsel, before the superseding indictment had been unsealed, and potentially before the grand jury had reviewed the superseding indictment. ECF No. 53.[54] The larger pattern of vindictive conduct should also give the Court great confidence in taking the president's actions—and those of the subordinates he directed—at face value. *See Abrego Garcia*, 2026 WL 1454303, at *3 (finding public statements of DOJ officials supported finding of vindictive motive); *cf.* Federal Rule of Evidence 404(b) (other wrongful acts admissible to prove intent and motive).

## II.    The SPLC's Evidence in Support of its Motion Is Highly Compelling Because the Administration Has Forfeited the Presumption of Regularity

The presumption of regularity provides that "in the absence of *clear evidence to the contrary*, courts presume that [public officials] have properly discharged their official duties." *United States v. O'Callaghan*, 500 F. App'x 843, 848 (11th Cir. 2012) (unpublished). In "the ordinary case," a vindictive prosecution defense requires sufficiently strong evidence to overcome the presumption of regularity. *See Armstrong*, 517 U.S. at 464; *United States v. Wilson*, 262 F.3d 305, 315 (4th Cir. 2001). The SPLC's motion satisfies that burden. But moreover, this is not an "ordinary case" and—as several federal courts have found—this administration has repeatedly

---

[54] *See also* Sarah N. Lynch, *Justice Dept. Says It Has Obtained Superseding Indictment Against Poverty Law Center With New Details On Donor Funds*, CBS News (June 2, 2026, 11:14 p.m. ET), https://www.cbsnews.com/news/southern-poverty-law-center-superseding-indictment/.

demonstrated that it is not entitled to any presumption of regularity, which makes the SPLC's evidence in support of its vindictive prosecution defense overwhelming.

The usual latitude afforded the government in the exercise of its prosecutorial discretion rests upon the presumption that government actors are "properly discharg[ing] their official duties" in furtherance of "tak[ing] Care that the Laws be faithfully executed." *Chem. Found., Inc.,* 272 U.S. at 14–15; U.S. Const., art. II, § 3; see 28 U.S.C. §§ 516, 547. But that presumption erodes where, as in the SPLC prosecution and the others discussed in this brief, the government's actions are infected with "bad faith or improper behavior." *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Since January 2025, the Department of Justice has engaged in highly irregular conduct causing several courts to find that the administration has lost the presumption of regularity.

### A. The administration's investigations and prosecutions of its perceived opponents have been accompanied by numerous instances of irregular conduct.

The Constitution, federal statutes, internal Department of Justice guidelines, and the rules governing the legal profession work together to insulate federal criminal investigations and prosecutions from improper politicization and ensure that prosecutors are complying with their "take care" and other legal duties when enforcing the law. Courts typically defer to the government's exercise of prosecutorial discretion based on an assumption that prosecutors are making assessments, such as "'the strength of the case, the prosecution's general deterrence value, the government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan,'" that they are uniquely "competent to undertake" within the limits of their larger duty to uphold the constitution and laws. *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 607). Yet in this case and those recounted in this brief, the government has done precisely the opposite.

20

The government has disregarded its own rules against publicly impugning the subjects of its investigations and compromised their constitutional rights to the presumption of innocence and a fair trial. *See supra* Part I.A; Part II. And the Justice Department has not merely failed to adhere to its own Principles of Federal Prosecution—which are rooted in the requirement that criminal prosecutions be supported by evidence of guilt that at the very least meets the probable cause standard—but has gone much further and effectively precluded prosecutors from exercising their professional judgment to decline to seek charges in cases that do not pass legal muster.

1.  Public comments on criminal investigations

Every person accused of a crime is entitled to a presumption of innocence, *Coffin v. United States*, 156 U.S. 432, 453 (1895), and "to a fair trial, free from publicity that prejudices jurors against the defendant at its outset," *Coleman v. Zant*, 708 F.2d 541, 544 (11th Cir. 1983), or "egregious remarks by the . . . chief law enforcement office," *Coleman v. Kemp*, 778 F.2d 1487, 1538 (11th Cir. 1985); *Wells v. Murray*, 831 F.2d 468, 471–72 (4th Cir. 1987); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors").

These constitutional commands are reinforced by the media policy contained in the DOJ's Justice Manual.[55] This policy dovetails with ethical obligations that apply to the attorneys who oversee the Justice Department and carry out its law enforcement mission. 28 U.S.C. § 530B (requiring Justice Department attorneys to comply with state bar rules); ABA Model Rule 3.8, Special Responsibilities of a Prosecutor (requiring prosecutors to "refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of

---

[55] *See* Justice Manual, 1-7000 et seq., Confidentiality and Media Contacts Policy, https://www.justice.gov/jm/jm-1-7000-media-relations (prohibiting prosecutors from making public statements that could prejudice defendants' rights and otherwise jeopardize the integrity of criminal investigations and prosecutions).

the accused"). Because a president's words can easily impact the integrity of a criminal proceeding and set the tone for people he appoints to lead the Department, presidents have largely refrained from commenting on DOJ's enforcement actions against specific individuals and entities. More broadly, presidents have treated DOJ's specific-party enforcement actions as independent from the White House and declined to interfere with its prosecutorial decisions.[56] However, the current president and DOJ leadership have run afoul of these principles and demanded or specifically directed criminal investigations, and in which he or other DOJ officials have presumed the guilt or impugned the character of individuals who have not yet been charged with or convicted of a crime. *See supra* Part I.A.

2. <u>Disregard of and punishment for dissenting judgments by DOJ personnel</u>

The government is required to establish probable cause that a crime was committed by the suspect before it can secure an indictment. *See Branzburg v. Hayes*, 408 U.S. 665, 686 (1972). The Justice Department's Principles of Federal Prosecution go further and require prosecutors both to believe that the evidence supporting an indictment would probably be sufficient to sustain a guilty verdict on appeal under the "reasonable doubt" standard and to apply a set of criteria for determining the existence of a "substantial federal interest" in charging a case.[57] Those criteria also contain a set of *impermissible* considerations for prosecution, including the subject's political associations, activities, or beliefs; his exercise of his constitutional rights; and prosecutorial animus toward the subject.[58] Likewise, prosecutors are ethically bound to make truthful representations to courts and to "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." ABA Model Rule 3.8.

---

[56] *See, e.g.*, Daphna Renan, *Presidential Norms and Article II*, 131 Harv. L. Rev. 2187, 2207-2215 (June 2018).
[57] Justice Manual, Principles of Federal Prosecution, 9-27.220.
[58] *Id*. at 9-27.260.

Yet under this administration, political appointees have routinely disregarded professional advice from prosecutors or punished them for adhering to the law, the Justice Manual, and their ethical duties. Many examples abound of credible allegations that DOJ leadership has directed attorneys to mislead courts, a few of which are described below:

- **Resignations and firings related to the Abrego Garcia case.** The Abrego Garcia case has been marked throughout by the administration's disregard for the judgment and ethical obligations of DOJ career attorneys. DOJ Attorney Erez Reuveni, the Acting Deputy Director of the Office of Immigration Litigation, was suspended and then fired for truthfully informing a District Court judge that Abrego Garcia had been removed from the United States to El Salvador in error.[59] Reuveni later told the Senate Judiciary Committee that administration political appointees had instructed him and his colleagues to defy court orders and to falsely inform the court that Abrego Garcia was a terrorist.[60] In connection with the after-the-fact criminal indictment of Abrego Garcia, the career Criminal Chief for the Middle District of Tennessee resigned after apparently expressing concern that the indictment was politically motivated.[61]

- **Firing of prosecutors who advised against indicting former FBI Director James Comey**. In addition to counseling against the Letita James indictment, former EDVA United States Attorney Erik Siebert informed DOJ political officials that false statements and obstruction of justice charges against former FBI Director James Comey were not supported by sufficient evidence.[62] Siebert was forced to resign. Career prosecutors who investigated the Comey matter reported not finding evidence helpful to sustaining charges, and none of them ultimately signed the indictment.[63]

---

[59] *See* Glenn Thrush*, Justice Dept. Accuses Top Immigration Lawyer of Failing to Follow Orders*, N.Y. Times (Apr. 5, 2025), https://www.nytimes.com/2025/04/05/us/politics/justice-dept-immigration-lawyer-leave.html.

[60] *See* Devlin Barrett, *Justice Dept. Leader Suggested Violating Court Orders, Whistleblower Says*, N.Y. Times (June 24, 2025), https://whistleblower.org/in-the-news/the-new-york-times-justice-dept-leader-suggested-violating-court-orders-whistleblower-says/.

[61] *See* Katherine Faulders, James Hill & Alexander Mallin, *Kilmar Abrego Garcia brought back to U.S., appears in court on charges of smuggling migrants*, ABC News (June 6, 2025), https://abcnews.go.com/US/mistakenly-deported-kilmar-abrego-garcia-back-us-face/story?id=121333122.

[62] *See* Glenn Thrush et al., *U.S. Attorney Investigating Two Trump Foes Departs Amid Pressure from President*, N.Y. Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/erik-siebert-comey-letitia-james.html.

[63] *See* Glenn Thrush et al., *Inside the Trump Administration's Plan to Prosecute James Comey*, N.Y. Times (Sept. 27, 2025), https://www.nytimes.com/2025/09/27/us/politics/trump-comey-justice-department.html.

- **Firing of the United States Attorney for the Western District of Virginia for resisting indictments of FBI officials.** The president's animus arising from the investigation into Russian interference in the 2016 election extends to numerous other officials at the Federal Bureau of Investigation. According to recent reporting, DOJ officials pressured the United States Attorney for the Western District of Virginia to investigate and indict some of those officials. When the United States Attorney refused to remove a prosecutor who found insufficient evidence to pursue those investigations, the United States Attorney resigned after being informed that he would be fired.[64]

- **Resignation of career prosecutors in Minnesota**. Six Minnesota prosecutors were pushed by DOJ officials to investigate the widow of Renee Good, who was killed by an DHS agent during Operation Metro Surge. Instead, they decided to resign. One of those prosecutors was Joseph H. Thompson, a career federal prosecutor who was the acting U.S. attorney for Minnesota last year and led to investigations into fraud within the state. According to recent reports, Thompson "strenuously objected to the decision not to investigate the shooting as a civil rights matter, and was outraged by the demand to launch a criminal investigation into Becca Good."[65]

    3.  <u>Unlawful appointments of United States Attorneys</u>

Another safeguard maintaining law enforcement independence from improper politicization is the requirement that United States Attorneys be appointed subject to "the advice and consent of the Senate." U.S. Const., art. II, § 2, cl. 1. In the absence of a Senate-confirmed United States Attorney, federal statutes provide for the appointment of "acting" and "interim" United States Attorneys. In the case of interim United States Attorneys, once their 120-day term expires, the statute provides for the district court of the jurisdiction to appoint a replacement "to serve until the vacancy is filled." 28 U.S.C. § 546(d). So both constitutional and statutory law place limits on the president's ability to appoint United States Attorneys without sign-off from one of the other branches of government. However, the president has repeatedly sought to circumvent

---

[64] *See* Devlin Barrett & Michael S. Schmidt, *U.S. Attorney Was Forced Out After Clashes Over How to Handle Russia Inquiry*, N.Y. Times (Oct. 14, 2025), https://www.nytimes.com/2025/10/14/us/politics/doj-trump-russia-inquiry-prosecutors.html.

[65] Ernesto Londoño, *Six Prosecutors Quit Over Push to Investigate ICE Shooting Victim's Widow*, N.Y. Times (Jan. 13, 2026), https://www.nytimes.com/2026/01/13/us/prosecutors-doj-resignation-ice-shooting.html.

both the Senate and the courts to appoint individuals to United States Attorney positions who appear to privilege loyalty to the president's directives over their "take care" duties.[66] *See United States v. Comey*, 810 F. Supp. 3d 768 (E.D. Va. 2025) (Attorney General's appointment of interim United States attorney after expiration of her first interim term violated the Appointments Clause); *United States v. James*, 810 F. Supp. 3d 752 (E.D. Va. 2025) (same); *United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2416737, at *1 (D.N.J. Aug. 21, 2025) (finding acting United States Attorney "exercised the functions and duties of the office of the United States Attorney for the District of New Jersey without lawful authority") (appeal pending); *United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640, at *11 (D. Nev. Sept. 30, 2025) (same) (appeal pending); *United States v. Ramirez*, No. 5:25-cr-264-SSS, 2025 WL 3019248, at *6 (C.D Cal. Oct. 28, 2025) (same).

The appointment of United States Attorneys personally loyal to the president while circumventing Senate and court approval reflect the current administration's transformation of the federal government's law enforcement power from a tool to be used in the public interest into a weapon to punish and quell political opposition.

**B. Courts have repeatedly rebuked this administration for its conduct and found that it has lost the presumption of regularity.**

The larger pattern of irregular DOJ conduct has drawn the attention of judges nationwide. According to a study produced by *Just Security*, since the beginning of the president's current term, courts have expressed concern over compliance with judicial orders in more than 30 cases,

---

[66] *See* Erica Orden & Haley Fuchs, *Donald Trump's U.S. Attorneys, Unvetted by the Senate, Move Full Steam Ahead*, Politico (Sept. 26, 2025), https://www.politico.com/news/2025/09/26/donald-trump-us-attorneys-senate-confirmation-00583005.

expressed distrust in information presented and representations made by government attorneys and found arbitrary and capricious action by the government in more than 90 cases.[67]

In particular, courts have rendered numerous judgments in which they have found the government had retaliatory and pretextual motives, including against universities, federal workers, law firms, and media companies.[68] This pattern of conduct has led many judges to conclude that the government has forfeited the entitlement to deference in the execution of its core functions.[69] As Judge Paula Xinis concluded in Mr. Abrego Garcia's removal case, "You have taken the presumption of regularity and you have destroyed it in my view."[70] Other examples include:

- Judge Paul L. Friedman—in examining whether to grant a preliminary injunction blocking enforcement of an executive order—collected cases examining the erosion of the presumption of regularity since January 20, 2025, and found that "[i]n just six months, the President of the United States may have forfeited the right to such a presumption of regularity." *Fed. Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 92 (D.D.C. 2025).

- Judge Christine P. O'Hearn, in an action for a petition for writ of habeas corpus, found that "the presumption of regularity and integrity previously and routinely afforded to the Executive branch and the United States Attorney's Office has been undeniably eroded in this jurisdiction and across the country." *Singh v. Tsoukaris*, No. 26-cv-01531 (D.N.J. Feb. 20, 2026), ECF No. 10.

- Judge Mary S. McElroy granted emergency motions to quash administrative subpoenas by DOJ and joined other courts in finding that the presumption of regularity "no longer holds." *In re Admin. Subpoena 25 1431 032 to Rhode Island Hosp.*, No. CV 1:26-MC-0007-MSM-AEM, 2026 WL 1392565, at *10 (D.R.I. May 14, 2026). Judge McElroy admonished DOJ's conduct, writing that "the discrepancy between the honorable conduct expected of federal prosecutors and DOJ's tactics in this case is unsettling." *Id.* In a hearing, Judge McElroy warned DOJ that it "should be prepared to field thousands of motions

---

[67] Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation*, Just Security (Mar. 19, 2026), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/#post-122613-_Toc211417822.

[68] *Id.*

[69] *Id.*

[70] *See* Alan Feuer & Minho Kim, *Judge Signals She Will Protect Abrego Garcia from Hasty Second Deportation*, N.Y. Times (Jul. 11, 2025), https://www.nytimes.com/2025/07/11/us/politics/abrego-garcia-deportation-judge-protection-trump.html.

to quash, tens of thousands maybe, because I don't know how any party can rely on a conversation with the Department of Justice that they're working on compliance."[71]

Against this backdrop, there is no reason for the Court to privilege deference to the executive over the SPLC's straightforward presentation of events. The SPLC has more than met its burden to provide the evidence necessary to demonstrate that the government has abused its prosecutorial discretion and that the indictment should be dismissed.

### III.   Dismissal of This Vindictive Prosecution Is Necessary to Protect Free and Open Civil Society from Executive Overreach

A primary aim of the vindictive prosecution doctrine is to prevent "the Government from using prosecutions to deter people from exercising their rights." *United States v. Carey*, 816 F. Supp. 3d 129, 139 (D.D.C. 2026). The doctrine "is especially concerned with chilling effects when it comes to free speech." *Id.* (citing *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024) (explaining that the government cannot "convey a threat of adverse government action in order to punish or suppress . . . speech.")). As the SPLC explains in its motion, the indictment is a transparent attempt to punish the SPLC for First Amendment-protected activity that the current administration disfavors: speaking out against the administration's actions and policies and criticizing entities that the SPLC has identified as hate groups. *See* ECF 49-1, at 23, 27–29. This prosecution is an alarming escalation in the administration's targeting of civil society organizations that has significant ramifications on the health of American democracy.

Civil society organizations like the SPLC are an important component of American democracy—they facilitate civic participation and engagement and help hold political leaders accountable to citizens. *See* Gregory P. Magarian, *Justice Stevens, Religion, and Civil Society*,

---

[71] Ben Penn, *Judge Advises All to Try Quashing Subpoenas Due to DOJ Distrust*, Bloomberg Law (May 20, 2026), https://news.bloomberglaw.com/us-law-week/judge-advises-all-to-try-quashing-subpoenas-due-to-doj-distrust.

2011 Wis. L. Rev. 733, 752 (2011); Catherine Albiston, *Democracy, Civil Society, and Public Interest Law*, 2018 Wis. L. Rev. 187, 190 (2018). This checking function makes civil society vulnerable to executive regulation and pressure. *See* Jennifer Dresden, Aaron Baird & Ben Raderstorf, *The Authoritarian Playbook*, Protect Democracy (June 15, 2022), https://protectdemocracy.org/project/the-authoritarian-playbook-media/.           Indeed,           the administration has repeatedly targeted a large swath of civil society organizations on the basis of views disfavored by the current government. For example, in September 2025, the president issued National Security Presidential Memorandum-7, directing the National Joint Terrorism Task Force to investigate and prosecute groups based on vague ideology such as "anti-fascism," "anti-Christianity," and "hostility" toward "traditional American views on family, religion, and morality."[72] A December 4, 2025 memo from then-Attorney General Pamela Bondi directed the DOJ to maintain a list of "domestic terrorism organizations" based on their ideological beliefs.[73]

These threats have now materialized into criminal prosecution of civil society organizations, joining the trend of the administration prosecuting individuals it perceives to be its political opponents. *See supra* Part I.A. And while the case against the SPLC is threadbare, the indictment risks significant speech- and association-chilling consequences. Three of the largest donor-advised funds—Fidelity Charitable, Vanguard Charitable, and Charles Schwab's DAFgiving360—are no longer allowing their customers to donate to the SPLC.[74] Regardless of

---

[72] *See* National Security Presidential Memorandum 7, "Countering Domestic Terrorism and Organized Political Violence," 90 Fed. Reg. 47225 (Sept. 25, 2025), https://www.federalregister.gov/documents/2025/09/30/2025-19141/countering-domestic-terrorism-and-organized-political-violence.

[73] *See* Thomas E. Brzozowski, *The Bondi Memo's Quiet Rewriting of Domestic Terrorism Rules*, Lawfare (Dec. 12, 2025), https://www.lawfaremedia.org/article/the-bondi-memo-s-quiet-rewriting-of-domestic-terrorism-rules.

[74] Ron Lieber, *Fidelity and Vanguard Won't Allow Donations to Southern Poverty Law Center*, N.Y. Times (Apr. 29, 2026), https://www.nytimes.com/2026/04/29/business/fidelity-southern-poverty-law-center.html; Ron Lieber, *Schwab Affiliate Halts Customer Donations to Southern*

whether any civil society organization has yet curtailed its First Amendment-protected activity because of the SPLC indictment, "[t]he risk of a chilling effect" is self-evident here. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618 (2021) ("When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. The risk of a chilling effect on association is enough[.]").

The totality of the evidence compels the conclusion that the intended effect of this prosecution is to send a coercive message to any nonprofit with a mission the president disfavors: oppose the administration and you too may be prosecuted and suffer all the concomitant consequences, like loss of donor funds. As the Supreme Court has repeatedly held, government officials cannot "use the power of the State to punish or suppress disfavored expression." *Vullo*, 602 U.S. at 191; *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."). But that is precisely what the vindictive prosecution of the SPLC seeks to do. Even if the DOJ ultimately fails, each day the indictment hangs over the SPLC, the prosecution risks chilling speech and intimidating perceived opponents of the administration. Permitting the indictment to stand would permit the government to stray far from the "fixed star of our constitutional constellation," "that no official, high or petty, can prescribe what shall be orthodox in politics . . . or other matters of opinion." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Dismissal is therefore needed to immediately end the risk of a chill on First Amendment rights.

---

*Poverty Law Center*, N.Y. Times (May 1, 2026),
https://www.nytimes.com/2026/05/01/business/schwab-donations-southern-poverty-law-center.html.

## **CONCLUSION**

Since the president commenced his second term in office, his administration has engaged in a pattern of retaliatory and vindictive prosecutions marked by irregular conduct and aimed at punishing the president's perceived political enemies and quashing dissent. Accordingly, the Court should decline to defer to the government's prosecutorial decision making and grant the SPLC's motion to dismiss the indictment.

Dated: June 29, 2026

/s/Kristy Parker
Kristy Parker
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, D.C. 20006
Tel: (202) 579-4582
Fax: (202) 769-3176
kristy.parker@protectdemocracy.org

/s/ Tobin Raju
Tobin Raju
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
Fax: (202) 769-3176
tobin.raju@protectdemocracy.ord

/s/ Jeffery C. Duffey
Jeffery Duffey
The Law Office of Jeffery C. Duffey
505 South Perry St.
Montgomery, AL 36104
Tel: (334) 834-4100
AL. Bar No. 7699F67J
jefferyduffey@gmail.com

*Counsel for Amicus Curiae Protect Democracy Project*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffery C. Duffey, hereby certify that on June 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>/s/ Jeffery C. Duffey</u>
Jeffery C. Duffey

31