



May 13, 2026

**VIA ELECTRONIC MAIL**

Kevin P. Davidson
Acting United States Attorney
United States Attorney's Office for the Middle District of Alabama
131 Clayton Street
Montgomery, Alabama 36104
Kevin.Davidson@usdoj.gov

Re:     *United States v. Southern Poverty Law Center, Inc.*, Case No. 2:26-cr-0139-ECM-KFP-1

Dear Mr. Davidson:

On behalf of our client, the Southern Poverty Law Center (SPLC), we hereby request the immediate production of discovery from the government for the categories described below.[1] We make the following requests to be thorough and to effectuate the full requirements of Rule 16 of the Federal Rules of Criminal Procedure, Rule 404(b) of the Federal Rules of Evidence, the applicable rules of prosecutorial ethics, the Fifth and Sixth Amendments to the United States Constitution, and the Supreme Court's rulings in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *United States v. Agurs*, 427 U.S. 97 (1976), and *Giglio v. United States*, 405 U.S. 150 (1972). We request the prompt production of the material identified below pursuant to the government's discovery deadline set forth in the forthcoming Consent Motion for a Scheduling Order, and in accordance with all applicable rules and laws.

Please note that the SPLC is **not** requesting discovery under Federal Rule of Criminal Procedure 16(a)(1)(E) and 16(a)(1)(G) at this time.

The documents and information that we request include not only documents and information in the possession, custody, or control of the U.S. Attorney's Office for the Middle District of Alabama ("the Office"), or otherwise available to the Office, but also documents and information in the possession, custody, or control of any federal, state, territorial, or local agency allied with the prosecution, including, without limitation, the Department of Justice ("DOJ"); the Federal Bureau of Investigation ("FBI"); the Department of Homeland Security ("DHS"); the Bureau of Alcohol, Firearms, Tobacco and Explosives ("ATF"), and any other federal and/or state law enforcement agency involved with the events and/or investigation in this matter (collectively, the "Government Agencies"). *See, e.g.*, *United States v. Newton*, 44 F.3d 913, 918 (11th Cir. 1994); *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003); *United States v. Naranjo*, 634 F.3d

---

[1] Per the parties' agreement and the forthcoming Scheduling Order, the disclosure and reciprocity requirement of Federal Rule of Criminal Procedure 16, and not Local Rule 16.1(a)(4), will control the parties' discovery obligations in this case.

 

1198, 1212 (11th Cir. 2011); *United States v. Bryant*, 439 F.2d 642, 650 (D.C. Cir. 1971), *overruled on other grounds by Arizona v. Youngblood*, 488 U.S. 51 (1988); *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984); *United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991).  In addition, given the nature of these charges, we ask that you seek any relevant documents from all other departments and agencies that may possess them. *See United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989).  To the extent there are drafts or notes for requested documents (whether requested under Rules 16 and 26, *Brady v. Maryland*, or the Jencks Act) such draft and notes should be provided as well.

## I.    <u>Indictment Particulars</u>

Defense counsel requests more particular information about the allegations in the Indictment:

A.    Identify unnamed persons "Employee-1" and "Employee-2."  *See* Indict. ¶ 13.

B.    Identify unnamed entities "Bank-1" and "Bank-2."  *See* Indict. ¶ 13.

C.    Identify and provide the specific wire communications and/or transactions on or about April 25, 2023 referenced in Count 1. *See* Indict. ¶ 21.

D.    Identify and provide the specific wire communications and/or transactions on or about April 25, 2023 referenced in Count 2. *See* Indict. ¶ 21.

E.    Identify and provide the specific wire communications and/or transactions on or about April 25, 2023 referenced in Count 3. *See* Indict. ¶ 21.

F.    Identify and provide the specific wire communications and/or transactions on or about April 25, 2023 referenced in Count 4. *See* Indict. ¶ 21.

G.    Identify and provide the specific wire communications and/or transactions on or about April 25, 2023 referenced in Count 5. *See* Indict. ¶ 21.

H.    Identify and provide the specific wire communications and/or transactions on or about April 25, 2023 referenced in Count 6. *See* Indict. ¶ 21. .

I.    Identify the specific conduct that the SPLC "conspire[d]" and "agree[d]" to engage in to commit concealment money laundering, as alleged.     *See* Indict. ¶ 33.

J.    Identify the specific conduct that SPLC engaged in to "conceal the true nature, source, ownership, and control of fraudulently obtained donated money [it] paid to Fs." *See* Indict. ¶ 34.

 

K. Identify the specific conduct that SPLC engaged in to "conceal the true nature, source, ownership, and control of fraudulently obtained donated money [it] paid to Fs." *See* Indict. ¶ 34.

## II. Specific Rule 16 Discovery

A. All statements of the SPLC (including its leadership, employees and those working for the organization) that fall within Rule 16(a)(1)(C) "if the government contends that the person making the statement: (i) was legally able to bind [the SPLC] regarding the subject of the statement because of that person's position as the [SPLC's] director, officer, employee, or agent; or (ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind [the SPLC] regarding that conduct because of that person's position as the [SPLC's] director, officer, employee, or agent."

B. A copy of any Rule 16(a)(1)(F) "results or reports of any physical or mental examination and of any scientific test or experiment if: (i) the item is within the government's possession, custody, or control; (ii) the attorney for the government knows—or through due diligence could know—that the item exists; and (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial."

## III. Specific Requests Under *Brady*, *Agurs*, *Giglio*, and the Fourth and Fifth Amendments

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, Rule 5(f); Local Rule 16.1(a)(1)(B); and consistent with due process requirements provide "all exculpatory or impeaching material" including, but not limited to, any information indicating or tending to indicate that any of the allegations contained in the Indictment are not true, that government witnesses are not credible, or that the SPLC did not have the intent alleged in the charges. For purposes of this letter and your obligations, "exculpatory information" is any information—regardless of form, source, or whether the prosecution team knows of it—that is favorable to the defense in any respect, including impeachment, and that could reasonably be considered to have any tendency to affect the outcome of any phase of the proceedings in the above-captioned case. *See United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003) (prosecution must "turn over to the defense evidence that is favorable to the accused, even though it is not subject to discovery under Rule 16(a)"); *id*. at 1226 n.15 ("*Brady* requires the prosecution to turn over to the defense any exculpatory evidence in its possession or control").

Supreme Court precedent requires that "[w]hen a prosecutor receives a specific and relevant request, a failure to make any response is seldom, if ever, excusable." *United States v. Agurs*, 427 U.S. 97, 106 (1976). *Agurs* further holds that "if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." *Id*.

3





Pursuant to *Agurs*, and to assist the government in its review for *Brady* material, the SPLC provides the following specific demands. These categories are not exhaustive. Nothing in this letter is intended to, or does, relieve the government of its affirmative obligation to review all documents in its possession, custody, or control for exculpatory information. This includes the obligation to review all documents held by any federal law enforcement agency, including but not limited to the FBI, the IRS, and the ATF. We request that the government identify any other federal or state law enforcement agency involved in this investigation "over whom [the prosecutor] has authority" so that the defense can ensure that exculpatory information is gathered from all appropriate sources, and thereafter, seek any relevant documents from all other departments and agencies that may possess them. *See United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989).

As noted above, these requests are not limited to documents and information in the possession, custody, or control of the Office, or otherwise available to the Office, but also documents and information in the possession, custody, or control of any member of the Government Agencies and relevant federal and state departments and agencies.

A. All documents showing that the SPLC provided information to any federal law enforcement agency between 1980 and December 31, 2023, about any hate or extremist groups or any individuals associated with them. It encompasses, but is not limited to, email correspondence between anyone at any federal law enforcement agencies and anyone at the SPLC about any hate or extremist groups or individual associated with them, not only the hate or extremist groups or associated individuals that are named in the Indictment.

B. All documents showing that federal law enforcement agencies used information provided by the SPLC for investigative purposes, whether or not those investigations resulted in criminal charges. This request encompasses documents showing whether an investigation was opened, investigative steps taken, and the outcome of the investigation. It includes any information in the possession, custody, or control of any federal law enforcement agency, even if that information was created, generated, or provided by any state or local law enforcement or government agency.

C. All documents showing that the DOJ, the FBI, the ATF, or any other federal law enforcement agency was directly utilizing any of the SPLC's informants or confidential sources [2] to receive information about hate or extremist groups or associated individuals, even if the law enforcement agency was not aware at the time that the informant was also working with the SPLC.

D. Any documents, communications and/or information describing or reflecting information received from any confidential human source in connection with the investigation and prosecution of ███████████████████████ in matters docketed as *United States*

---

[2] The phrase "SPLC's informants" means the names of the informants on the list provided by the defense to the government on May 17, 2026, and any names of informants that are otherwise known to the government.




███████████████████████████████████████████████████████.
Information produced should include, but is not be limited to, all FBI 302s, 1023s, interview memos, recordings, or notes demonstrating communications with any individual who provided information to state or federal law enforcement regarding ████ activities, whether created before or after the prosecution of ████

E.  Any documents, communications and/or information describing or reflecting information received from any confidential human source in connection with the investigation and prosecution of ███████████████████████████ in a matter docketed as *United States* ████████████████ Information produced should include, but not be limited to, all FBI 302s, 1023s, interview memos, recordings, or notes demonstrating communications with any individual who provided information to state or federal law enforcement regarding ████ activities, whether created before or after the prosecution of ████

F.  Any documents, communications and/or information describing or reflecting information received from any confidential human source in connection with United the Right rally in Charlottesville, Virginia in August 2017. Information produced should include, but not be limited to, all FBI 302s, 1023s, interview memos, recordings, or notes demonstrating communications with any individual who provided information to state or federal law enforcement regarding activities at the Unite the Right rally, whether created before or after that event.

G.  All documents showing any training or meeting conducted or organized, in whole or in part, by the SPLC that was attended by any law enforcement employee, including but not limited to, any attendee lists and materials shown or provided to attendees.

H.  All communications between anyone who works in the Executive Branch,[3] with anyone in the Department of Justice about the SPLC from November 8, 2016, to January 20, 2021, and from November 5, 2024, to the present.

I.  All communications between anyone who works in the Executive Branch with anyone in the FBI or ATF about the SPLC from November 8, 2016 to January 20, 2021, and from November 5, 2024, to the present.

---

[3] The phrase "anyone who works in the Executive Branch" shall include: any person who works now or worked in the past (a) in the White House or Old Executive Office Building, (b) on the President or Vice President's direct staff; (c) for the President or Vice President in any capacity by which they are paid by the federal government, including as a consultant, advisor, or Special Government Employee under 18 U.S.C. § 202, or (d) in any formal or informal capacity to advise anyone in the Administration.





J.  All communications between anyone in the Department of Justice and anyone in the FBI or ATF or any federal law enforcement agency about the SPLC from January 20, 2017, to January 20, 2021, and from November 5, 2024, to the present.

K.  All communications about the SPLC that included any member of the formal or informal presidential transition team for President Donald Trump's second term, including but not limited to: Elon Musk, Stephen Miller, Susie Wiles, Howard Lutnick, Mark Paoletta, Todd Blanche, Emil Bove, and/or Aakash Singh. This request is limited to communications before January 20, 2025.

L.  Documents from the investigation into the SPLC informants and/or its informant program conducted at any time during the approximate period of 2019 to 2022, including any FBI-302s, FD-1023s, or notes from interviews, and non-prosecution or case closure memoranda, or any other interview report, memoranda or recordings describing such meetings.

M.  All material concerning the inception and progress of any investigation in connection with this matter and the decision to prosecute this matter, including, but not limited to (a) material concerning the predication and reasons for opening the investigation that led to the indictment, including, but not limited to, communications between the DOJ and FBI, such as email, text messages, and other correspondence; (b) communications among DOJ, the FBI, and/or anyone who works in the Executive Branch about the inception or progress of the investigation, such as email, text messages, and other correspondence; (c) material concerning the government's change in position and decision to prosecute this case following the investigation into the SPLC and/or members of the SPLC's informant program that began in or around 2020 or 2021.

N.  All documents related to the January 23, 2023 "Domain Perspective" authored by the FBI's Richmond Field Office (the "Richmond Memo").[4] This includes all documents showing communications between the SPLC and the Richmond Field Office about the topics covered in the Richmond Memo; documents from the "internal review" of the Richmond Memo conducted by the FBI as referenced in then-Director Wray's October 27, 2023 letter that mention or are related to the SPLC; the entire file, including interview memoranda, of the DOJ's Office of Inspector General review of the Richmond Memo that mention or are related to the SPLC; the production of documents made by the FBI to Congress, as referenced in Senator Charles Grassley's June 2, 2025 letter to then-Director Wray.

O.  All documents or other information regarding any reassignments, requested reassignments, resignations, or transfers within the Department of Justice (including but not limited to the USAO MDAL) or the FBI that reflect concern with, and/or opposition, resistance, or objection to the investigation and/or prosecution of the SPLC.

---

[4] A copy of this memo is attached as Exhibit 1.

6





P.  All documents from Bank-1's "internal investigation," referred to in Paragraph 29 of the Indictment, including interview memos, documents collected, and notes of conversations or interviews of employees of Bank-1.

Q.  All "applications" completed by the SPLC to Bank-1 or Bank-2, all communications between the SPLC and either Bank-1 or Bank-2 to the two banks related to those "applications" or any of the accounts identified in Paragraph 25 of the Indictment.

R.  All internal communications within Bank-1 or Bank-2 related to the accounts identified in Paragraph 25.

S.  All interview memoranda and/or notes of the government's interviews of employees of Bank-1 or Bank-2, as well as notes of any conversations between the government and counsel for Bank-1, Bank-2, or any employee of either bank.

T.  All compliance policies, and training provided to employees, for Bank-1 and Bank-2 at the time the accounts identified in Paragraph 25 were opened, including the policies related to "know your customer" or other anti-money laundering policies addressing the information and due diligence required to open an account.

U.  All compliance policies, and training provided to employees, for Bank-1 and Bank-2 that changed in the years after the accounts identified in Paragraph 25 were opened, including the policies related to "know your customer" or other anti-money laundering policies addressing the information and due diligence required to open an account.

V.  All FBI 302s, 1023s, interview memos, recordings, or notes reflecting interviews of witnesses that contain exculpatory information, including but not limited to:

- Interviews of bank employees who said that they were aware that the DBA accounts were associated with, owned by, or controlled by, the SPLC;

- Interviews of any informants who provided information to the SPLC about extremist groups or any members and the content of that information;

- Interviews of any donors to SPLC;

- Interviews of any informants who provided information, or indicated they knew information was being provided, to the SPLC or to law enforcement; and

- Any requests by investigating agents or members of the Department of Justice to edit, revise, include in, or otherwise change the content of any 302 or other law enforcement interview reports, memoranda, notes, or recordings.

 

W. All communications by the "online leadership group chat" referenced in the Indictment's Introduction made by the informant, as opposed to the other members of the group. The SPLC also requests all communications between the SPLC and federal law enforcement related to the Unite the Right event and all communications within federal law enforcement agencies related to federal law enforcement's efforts to stop the planned violence.

X. All documents showing that the SPLC funds that were allegedly given to informants (1) were provided directly to the informants and not directly to any extremist or hate groups, or (2) used by the informants in ways unrelated to the extremist or hate groups, such as for living expenses.

Y. Any information relating to the character for untruthfulness of any witness who provided information during the investigation suggesting that the informant program was operated in an improper manner.

Z. Any information about a witness's reputation for having a character for untruthfulness which may be used to attack the credibility of such witness who may offer testimony against the SPLC.

AA. Any offers of leniency extended or threats made to any witness who was interviewed during the course of the government's investigation of the SPLC.

BB. Information relating to any conditions which may impact the ability of any witness to perceive, articulate or remember, including but not limited to medical or mental health issues, or the use of alcohol or licit or illicit drugs.

CC. Any information tending to show that a witness who provided information implicating the SPLC in wrongdoing was coached at any point.

DD. Any information that any individual interviewed during the course of the investigation made false statements to any government agent or prosecutor.

EE. Any "negative exculpatory information" relating to the SPLC; that is, any statements by a knowledgeable witness which do not implicate the SPLC in the wrongdoing charged in the indictment.

FF. Any documents, communications, and/or information not requested above that describe or reflect any bias or hostility against defendant, any members of the SPLC's informant "F-Program," or any witness, whom the government intends to call at trial.

GG. Any documents, communications and/or information not requested above that describe or reflect the competency or credibility of any witness the government intends to call at trial or the government relied on for information presented to the grand jury.





HH.  Any documents, communications, and/or information not requested above that describe or reflect the motivation of any witness to cooperate with the United States.

II.  Any documents, communications and/or information describing or reflecting any consideration or promise given by any law enforcement official, prosecutor, or government agent during the course of the investigation of the above-referenced case to any witness the government intends to call at trial.  Such "consideration" or "promise" includes, but is not limited to, anything that could be of value to the witness, such as favorable treatment or assistance in another criminal matter, immunity, letters of support for the witness, or anything else that would provide the witness with an incentive or motive to provide testimony against the defendant at trial.

JJ.  Any promises of immunity in any form, including but not limited to proffer letters, made to any individual in connection with the investigation and/or prosecution of this matter.

KK. Any warrant returns or agents' affidavit(s) concerning any effort to review and search the contents of the SPLC's electronic data.

LL.  Any documents, communications, and/or information stating or indicative of destruction of any evidence including and not limited to texts, emails or other messaging concerning the events or investigation or documentation of such investigation.

## IV.    Rule 26/Jencks Act Material

For some time, in cases where there is no legitimate concern for flight or witness tampering and in the spirit of full compliance with *Brady* and its progeny, the Department of Justice has provided the defense witness interview memoranda and grand jury testimony as part of its initial discovery (outside of such testimony that also will include *Brady* material).  We request this material in this phase of discovery as early as possible and, in any event, at least four weeks before trial.

## V.    Other Crimes Evidence

Pursuant to the Fifth and Sixth Amendments and Federal Rule of Evidence 404(b), the SPLC requests that the prosecution disclose all evidence of any similar crimes, wrongs, or acts allegedly committed by the SPLC, upon which the prosecution intends to rely to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*    *    *

9




We may have additional requests in the future. To the extent that certain of the requests apply to information or disclosures that concern trial testimony or other information that the government does not now have in its possession, custody, or control, we request that such information or disclosures be produced as soon as the government comes into possession, custody, or control of such information or disclosures, and any exculpatory material in the government's possession should be prioritized for disclosure. Each of the foregoing requests is of a continuing nature and calls for supplementation as soon as the government discovers additional responsive evidence, information, or material.

Sincerely,

/s/ *Addy R. Schmitt*_____
Addy R. Schmitt
KROPF MOSELEY SCHMITT PLLC
1100 H Street, NW, Suite 1220
Washington, DC 20005
(202) 627-6900
addy@kmlawfirm.com

/s/ *Abbe David Lowell*_____
Abbe David Lowell
LOWELL & ASSOCIATES PLLC
1250 H Street, NW, Suite 250
Washington, DC 20005
(202) 964-6110
alowellpublicoutreach@
lowellandassociates.com

cc:     Russell T. Duraski, U.S. Attorney's Office