



July 13, 2026

**<u>VIA ELECTRONIC MAIL</u>**

Kevin P. Davidson
Assistant United States Attorney
United States Attorney's Office for the Middle District of Alabama
131 Clayton Street
Montgomery, Alabama 36104
Kevin.Davidson@usdoj.gov

Re:     *United States v. Southern Poverty Law Center, Inc.*, Case No. 2:26-cr-0139-ECM-KFP-1

Dear Mr. Davidson:

We write to follow up on our letter of May 13, 2026, and our continued discussions about the government's obligations under the Fifth and Sixth Amendments to the United States Constitution, and the Supreme Court's rulings in *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Agurs*, 427 U.S. 97 (1976), and *Giglio v. United States*, 405 U.S. 150 (1972), and their respective progenies.

We do not believe the government has met its obligations. In our May 13 letter, consistent with *Agurs*, we identified several categories of exculpatory information that you are required to search for and produce. During a call on June 16, 2026, you informed defense counsel that you questioned whether any of the information the SPLC is seeking is relevant to the defense of the superseding indictment—including information demonstrating that the SPLC shared information obtained from field sources with law enforcement—and stated that the only information you knew of as *Brady* was the limited information you produced to us at the arraignment. Moreover, our understanding from you is that you do not intend to conduct a search for exculpatory information outside of what you personally possess.

Respectfully, your position with regard to exculpatory information and your obligation to search for and provide it to the defense is incorrect on several levels. Given that trial starts in less than three months, we send this letter with the goal of obtaining your agreement to abide by your obligations and because we believe there is a substantial amount of exculpatory information that you are obligated to affirmatively collect and produce. If we do not reach agreement by Monday that you will search for and produce this information immediately (it was due at arraignment) so that we may "effectively" use it at trial, then we will seek to compel compliance through the Court. *United States v. Laines,* 69 F. 4th 1221, 1231 (11th Cir. 2023) (applying "effective use" standard in evaluating timeliness of *Brady* disclosures*) (quoting United States Knight*, 867 F.2d 1285, 1289 (11th Cir. 1989)).





**Eleventh Circuit Precedent Requires Your Office to Search for this Information**

Under Eleventh Circuit precedent, the prosecution has an obligation to produce information that is favorable to the defense if it is material to either guilt or punishment; you must timely respond to the defense's requests for such information. The standard is not "relevance." Moreover, it is not for you to determine what is material; you are required to conduct a search of the files of all agents involved in the investigation and over whom you have authority; and if you have a question about whether something is material and/or favorable, you must either produce it to the defense or raise it with the Court.

"*Brady* requires the prosecutor to turn over to the defense evidence that is favorable to the accused." *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003). As we noted in our May 13 letter, "[w]hen a prosecutor receives a specific and relevant request, a failure to make any response is seldom, if ever, excusable." *United States v. Agurs*, 427 U.S. 97, 106 (1976). We made specific requests in our May 13 letter and make additional ones below.

The government has a duty to search for and disclose exculpatory and impeachment evidence possessed by the "prosecution team," which "includes both investigative and prosecutorial personnel." *Moon v. Head*, 285 F.3d 1301, 1309 (11th Cir. 2002); *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989). The "prosecution team" includes "the prosecutor or anyone over whom he has authority." *Moon*, 285 F.3d at 1309. In this case, your prosecution includes DOJ, the FBI, the IRS, and the U.S. Postal Inspection Service. You must search for and produce exculpatory evidence in their files even if it predates your investigation and even if you are not personally aware of it. *See Breedlove v. Moore*, 279 F.3d 952, 961 (11th Cir. 2002) ("the prosecution team generally is considered a unitary entity, and favorable information possessed by the police but unknown to the prosecutor is nonetheless subject to the *Brady* test") (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (holding that the *Brady* rule includes evidence "known only to police investigators but not the prosecutor")).

To be clear, we reject your position that you do not need to produce this information because you do not believe it is "relevant." Disclosures under *Brady* are evaluated based on a materiality standard rather than relevance, and it is not for the prosecution to determine what is material to the defense. The requests in our May 13 letter and those in this letter are good faith requests for information that is favorable, and material, to the defense. Under *Agurs*, "if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." *Id*. As the Eleventh Circuit has made clear, when it is "debatable" as to what constitutes *Brady* material, "the prosecutor should mark the material as a court exhibit and submit it to the court for in camera inspection." *Jordan*, 316 F.3d at 1252 (citing *Agurs,* 427 U.S. at 106); *United States v. Nickens*, 809 F. App'x 584, 591–92 (11th Cir. 2020) (noting that "[t]he Supreme Court has endorsed this sort of proceeding to resolve Brady-related discovery issues").

 

**Time Frame of Requests**

The indictment alleges that the informant program operated from "the 1980s" to 2023, ECF 51, ¶ 10, and therefore the government must produce discovery related to that period. Indeed, the defense may offer testimony and evidence about the origins of the informant program and its purpose and use over time.

**Requests about Cooperation Between the SPLC and Law Enforcement Agencies**

While we have prioritized some of our May 13 requests here, we maintain all those requests and demand that you produce all materials in response to those requests as well.

As we discussed extensively during our pre-indictment meetings earlier this year, the SPLC intended and used the informant program to learn information about these extremist groups in part to report their activities to law enforcement when appropriate. This directly contradicts the government's theory that the purpose and use of the informant program was to defraud donors.

The following requests relate directly to this defense.

A.      All documents showing that the SPLC provided information to any federal law enforcement agency between 1980 and December 31, 2023, about any hate or extremist groups or any individuals associated with them. This request includes all emails between the FBI and the SPLC that contain such information. It encompasses, but is not limited to, email correspondence between anyone at any federal law enforcement agencies and anyone at the SPLC about any hate or extremist groups or individual associated with them, not only the hate or extremist groups or associated individuals that are named in the Indictment.

B.      All documents showing that federal law enforcement agencies used information provided by the SPLC for investigative purposes, whether or not those investigations resulted in criminal charges. This request encompasses documents showing whether an investigation was opened, investigative steps taken, and the outcome of the investigation. It includes any information in the possession, custody, or control of any federal law enforcement agency, even if that information was created, generated, or provided by any state or local law enforcement or government agency.



C.       All documents showing that the DOJ, the FBI, the IRS, the U.S. Postal Inspection Service, or any other federal law enforcement agency was directly utilizing any of the SPLC's informants or confidential sources to receive information about hate or extremist groups or associated individuals, even if the law enforcement agency was not aware at the time that the informant was also working with the SPLC. For example, the April 2, 2020 interview of ███ ███ by IRS SA Dave McDaniel and an AUSA in your office references the fact that ███ and ███ were informants for the SPLC at the same time they were acting as informants for the federal government.

D.       All documents showing any training or meeting conducted or organized, in whole or in part, by the SPLC that was attended by any law enforcement employee, including but not limited to, any attendee lists and materials shown or provided to attendees.

E.       All documents showing any meetings between law enforcement and the SPLC, including but not limited to meetings between the SPLC and the following representatives of the FBI: (i) Nick Del Toro, (ii) Miles Faggert, (iii) Joe Ennis, (iv) Tom Hetrick, and (vi) Greg Holston.

**Specific Requests for Information**

To demonstrate the relevance and materiality of this information, we provide numerous examples of how the SPLC used the informant program to cooperate with, or provide information to, law enforcement. *This list is not exhaustive, and we maintain our demand for all information showing cooperation or information-sharing between the SPLC and law enforcement.*



During our pre-indictment meeting, we informed you about the use of informant information in the ███████ case. As you may recall, ████ was charged in the matter *United States v.* ████████████ (D. Nev). We maintain our demand for any documents, communications and/or information describing or reflecting information received from any SPLC source in connection with the investigation and prosecution of ████ This includes the FBI's investigative file relating to ████ including all information received and/or shared sufficient to show any connection between ████, ██, and/or any SPLC employee relating to the investigation and prosecution of ████

During our pre-indictment meeting at your office on April 6, 2026, we informed you about the use of F-generated information in the ████████ case. ██████ was charged in the matter of *United States v.* ████████████████ (D.N.J). We renew our demand for any documents, communications and/or information describing or reflecting information received from any source in connection with the investigation and prosecution of ████ This includes the FBI's investigative file relating to ████, including all information received and /or shared sufficient to show any connection between ████████, and any SPLC employee relating to the investigation and prosecution of ████ as well as any information received by the FBI or DOJ





from Lauren Laielli (NJOHSP/FBI JTTF) and Brian Christensen (NJDCJ) relating to the investigation of ███████

*Charlottesville Unite the Right Rally*

As you have now seen, the SPLC sent a lengthy report to law enforcement warning about violence at the August 2017 Unite the Right rally in Charlottesville. We maintain our demand for any documents, communications, and/or information describing or reflecting information received from the SPLC. To be clear, you must search for documents not only from the federal agencies identified above but also information provided to and received from the Virginia Fusion Center.

Given the indictment's specific allegation that F-37 was part of the "online leadership chat group" and helped in "arranging transportation for others," it is clear your office has coordinated with the investigative agencies involved in that deadly rally and you must produce the exculpatory information in those agencies' files to the defense.

We request all records relating to information provided to the FBI, ATF, or any other federal agency concerning the events in Charlottesville, including (1) all communications between the SPLC and any law enforcement agency regarding the Unite the Right rally in Charlottesville, Virginia in August 2017, and (2) documents showing what action, if any, was taken by any law enforcement agency after receiving the Unite the Right event report from the SPLC, including all communications showing that this report was shared with other members of federal, state, and local law enforcement.

███████████

We request that you produce all records relating to the "rifle" that ███████ reported "was handed to [him] by one of the members and told [him] to watch it and [he] immediately turned it over to the feds." This is referenced in the February 23, 2026 interview of ███████ by the IRS and the FBI.

███████████

We request that you produce all records relating to ███████ meeting with agents from the ATF and FBI prior to his attendance at a Volksfront meeting, as well as any information he provided to law enforcement after this meeting or any other meeting while he was working as an informant for the SPLC. This is referenced in the May 5, 2026 interview of ███████ by the IRS and FBI.

███████████

We request that you produce all records relating to ███████████, who received information from the FBI and worked undercover with Aryan Nations. This is referenced in the March 23, 2026 interview of ███████ by the IRS And FBI.





We request that you produce all records relating to ▓▓▓▓▓▓▓ interactions with William Gang of the FBI's Asheville office concerning documents held by an individual who was stockpiling weapons. This is referenced in the December 8, 2025 interview of ▓▓▓ by the FBI.

We request that you produce all records relating to FBI Knoxville's contact with ▓▓▓▓ This is referenced in the December 8, 2025 interview of ▓▓▓ by the FBI.

We request that you produce all records relating to ▓▓▓▓▓▓▓ service as an FBI informant, including his informant activity in 2011–2012 as confirmed by FBI Agent Deanne Lindsey in the interview memorandum provided by the government from December 2020.

We request that you produce all records provided by ▓▓▓▓▓ in 2018 regarding a murder-for-hire scenario, including any contact with the FBI as arranged by SPLC employee ▓▓▓▓▓. This is referenced in ▓▓▓ February 23, 2026 interview with the FBI.

We request that you produce all records relating to the work that ▓▓▓▓▓ engaged in with FBI Agents Ed Hunneyman and Bob Lee while ▓▓▓ was at the SPLC. This is referenced in ▓▓▓ March 31, 2026 interview with the FBI.

We request that you produce all records regarding information ▓▓▓▓▓ shared with an FBI agent in Montana, including as it relates to the 2016 occupation of the Malheur Wildlife Refuge. This is referenced in ▓▓▓ March 31, 2026 interview with the FBI.

We request that you produce all records relating to the cases that FBI Agent Scott Payne worked on with ▓▓▓▓▓▓, and all other FBI records relating to ▓▓▓ serving as an FBI informant, including those reflecting information he provided or was asked to provide. This is referenced in the April 17, 2026 interview of Payne by the FBI.

 

We request that you produce any exculpatory information provided by ▮ and ▮ ▮ following their meeting with law enforcement on February 5, 2026, as referenced in the interview memorandum, including any follow-up materials they promised to provide.

**Bank Related Documents**

A.  All documents from Bank-1's "internal investigation," referred to in Paragraph 32 of the Superseding Indictment, including interview memos, documents collected, and notes of conversations or interviews of employees of Bank-1.

B.  All opening and/or closing documents, certifications or account update documents completed by the SPLC to Bank-1 or Bank-2, all communications between the SPLC and either Bank-1 or Bank-2 to the two banks related to the opening and/or closing documents, certifications or account update documents completed by the SPLC for the accounts identified in Paragraphs 15, 28, and 31-33 of the Superseding Indictment.

C.  All internal communications within Bank-1 or Bank-2 related to the accounts identified in Paragraphs 15, 28 and 31-33 of the Superseding Indictment.

D.  All interview memoranda and/or notes of the government's interviews of employees or agents of Bank-1 or Bank-2, as well as notes of any conversations between the government and counsel for Bank-1, Bank-2, or any employee or agent of either bank.

E.  All compliance policies, and training provided to employees, for Bank-1 and Bank-2 at the time the accounts identified in Paragraphs 15, 28 and 31-33 of the Superseding Indictment were opened, including the policies related to "know your customer" or other anti-money laundering policies addressing the information and due diligence required to open and/or maintain an account.

F.  All compliance policies, and training provided to employees, for Bank-1 and Bank-2 that changed in the years after the accounts identified in Paragraphs 15, 28 and 31-33 of the Superseding Indictment were opened, including the policies related to "know your customer" or other anti-money laundering policies addressing the information and due diligence required to open and/or maintain an account.



**Impeachment or Witness-Related Material**

A.    Any documents, communications, and/or information that describe or reflect the motivation of any witness to cooperate with the United States. This includes a copy of all target or proffer letters given to any person associated with this investigation.

B.    Any requests for leniency received from or offers of leniency extended to any individual involved in this investigation, including but not limited to witnesses interviewed during the course of the government's investigations of the SPLC from 2019 to the present.

C.    All information, including but not limited to recordings, notes, and records, relating to threats made to witnesses regarding their obligation to speak with the government. This request should include, but not be limited to, threats of the type made to ▮▮▮ by SA Still during an interaction on January 21, 2026 when SA Still served him with a target letter. Similarly, any threats made to or requests for leniency made by ▮▮▮▮▮ during his unrecorded interaction with SA Lindsey and SA McDaniel on January 27, 2026.

D.    Any documents, communications and/or information describing or reflecting any consideration or promise given by any law enforcement official, prosecutor, or government agent during the course of the investigation of the above-referenced case to any witness the government intends to call at trial. Such "consideration" or "promise" includes, but is not limited to, anything that could be of value to the witness, such as favorable treatment or assistance in another criminal matter, immunity, letters of support for the witness, or anything else that would provide the witness with an incentive or motive to provide testimony against the defendant at trial.

E.    Any promises of immunity in any form, including but not limited to proffer letters, made to any individual in connection with the investigation and/or prosecution of this matter.

**Tax Material**

A.    We have seen statements by witnesses in the government's discovery that the SPLC encouraged informants not to pay taxes on the amounts they received from the SPLC. We therefore demand any information showing that any informant paid taxes on funds received from the SPLC during the informant program. This information is readily available from the IRS, which is part of the prosecution team here.

B.    We also demand all information regarding tax deficiencies of ▮▮▮ and any other individual F, including any documents regarding the forgiveness of those deficiencies or declination to pursue them in criminal, civil, or administrative proceedings.

8





***

Please provide us with the government's position as to whether you will produce information in response to each request by **July 16, 2026**. For the requests to which the government agrees to provide documents, please confirm that you will provide them by **August 5, 2026**. We can schedule a call to discuss these matters if that would be helpful.

Sincerely,


/s/ *Addy R. Schmitt*_____                /s/ *Abbe David Lowell*_____
Addy R. Schmitt                              Abbe David Lowell
KROPF MOSELEY SCHMITT PLLC                   LOWELL & ASSOCIATES PLLC
1100 H Street, NW, Suite 1220                1250 H Street, NW, Suite 250
Washington, DC 20005                         Washington, DC 20005
(202) 627-6900                               (202) 964-6110
addy@kmlawfirm.com                           alowellpublicoutreach@
                                             lowellandassociates.com


Copied to: All counsel of record