**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.<br><br>Defendant. | Case No. 2:26-cr-0139-ECM-KFP-1 |

# THE SOUTHERN POVERTY LAW CENTER'S MOTION FOR JURY SELECTION

Pursuant to Federal Rule of Criminal Procedure 24, this Court's inherent authority to manage trial proceedings, and the Court's pre-trial scheduling order (ECF 107), the Southern Poverty Law Center (SPLC), by and through undersigned counsel, respectfully moves for the following jury selection procedures in this case, and attaches as Exhibit A to the Motion its draft juror questionnaire. Given the unique aspects of this case, the below-described procedures will facilitate an efficient jury selection process, preserve judicial resources, and help ensure the selection of a fair and impartial jury.

## INTRODUCTION

As has been previously described in the SPLC's motion concerning prejudicial extrajudicial statements (ECF 23), its motion to dismiss the indictment for vindictive prosecution (ECF 49), and its motion to show cause regarding the first

superseding indictment (ECF 53), the pre-trial publicity in this case has been significant. In a case involving such a great deal of pre-trial publicity, greater care is required in jury selection. The charging document makes extensive allegations about the work and history of the SPLC, charges about which jurors will likely have strong opinions; there will be testimony from sensitive witnesses, possibly including former confidential informants; and the trial is proceeding in the very district that the SPLC calls home, where prospective jurors are more likely to know the organization or have pre-formed opinions about the organization or its work.

Pre-trial publicity poses particular problems of potential bias that must be carefully addressed in *voir dire*. *See, e.g.*, *Rolling v. Crosby*, 438 F.3d 1296, 1298 (11th Cir. 2006) (trial court may take "judicial notice of the extensive pretrial publicity"); *United States v. Bobbitt*, 2000 WL 102925, at *4 (4th Cir., Jan. 31, 2000) (upholding use of questionnaire and the trial court's asking "the entire venire a series of questions regarding pretrial publicity"); *ABC, Inc. v. Stewart*, 360 F.3d 90, 94 (2d Cir. 2004) (recognizing "the problems presented in empaneling an unbiased jury" in case subjected to a "high level of media attention"); *United States v. Bieganowski*, 313 F.3d 264, 273 (5th Cir. 2002) (finding "adequacy of *voir dire* frequently arise[s] in situations where the trial is surrounded by significant publicity"). This case has garnered significant media attention locally and at the national level.

Likewise significant is how potential jurors view the SPLC. As one Supreme Court Justice summarized the law: "Under our relevant precedents, the more intense the public's antipathy toward a defendant, the more careful a court must be to prevent that sentiment from tainting the jury." *Skilling v. United States*, 130 S. Ct. 2896, 2942 (2010) (Sotomayor, J., concurring and dissenting in part); *id.* at 2948 ("[A]s the tide of public enmity rises, so too does the danger that the prejudices of the community will infiltrate the jury"); *see also United States v. Blitch*, 622 F.3d 658, 665 (7th Cir. 2010) ("The appropriate procedure when potential juror bias presents itself 'is a function of the probability of bias; the greater the probability, the more searching the inquiry needed to make reasonably sure that an unbiased jury is impaneled'").

The prominence of the SPLC in the surrounding Montgomery community also increases the need to screen for bias. The SPLC is a prominent employer in the area, as are the banks and law enforcement offices whose employees may be called to testify. The likelihood that potential jurors (or their close family or friends) are employed by the SPLC or one of the relevant entities weighs in favor of additional jury selection procedures.

There are a number of measures that courts in this and other districts have taken in high-profile cases to identify and address potential bias and to safeguard the Sixth Amendment right to an impartial jury. Some of these steps can also save time

by identifying jurors who should be excluded before *voir dire* and narrowing questions that need to be asked of the entire venire. Thus, to ensure an efficient jury selection process that adequately protects the SPLC's rights to an impartial jury and a fair trial, the SPLC requests or seeks clarification from the Court about additional jury selection measures. The SPLC consulted with the government regarding this Motion and its position on each request is indicated below.

**PROPOSED SELECTION PROCEDURES**

I. Special/Expanded Venire

Given the anticipated rate of cause excusals and challenges due to pre-trial publicity, strong opinions—positive or negative—about the SPLC or this case, and the SPLC's general prominence within this District, the SPLC requests that the Court summon a special or expanded jury venire in this case. The SPLC proposes summoning a larger panel than usual and, if needed, calling jurors in staggered groups to facilitate the orderly administration of follow-up questions from any written questionnaire and individual *voir dire*. An expanded venire will help ensure a sufficient number of impartial jurors remain after cause excusals and hardship removals. This expanded venire was used in earlier high profile and highly publicized cases tried in this district. *See, e.g., United States v. McGregor*, No. 2:10-cr-186-MHT-WC, ECF 640 at 2 (M.D. Ala. 2011) (noting intention to utilize expanded venire and summon 300 prospective jurors); *United States v. Siegelman*,

No. 2:05-CR-119-MEF, ECF 255 at 3 (M.D. Ala. 2006) (detailing plan to select jurors from at least three separate panels of "25-30" individuals, with the understanding that "additional panels will then be brought in as necessary").

The government's position is that an expanded venire is appropriate in this case, but it would defer to the Court as to the number of additional persons summoned and the manner in which they are presented for questioning.

II. Pre-*Voir Dire* Written Questionnaire

The use of an expanded pre-*voir dire* written questionnaire followed by individual *voir dire* is an ideal method to address sensitive (e.g., publicity, political views, bias or opinions about the SPLC or the prosecution) and other issues in this case. *See, e.g.*, *Skilling*, 130 S. Ct. at 2900 (affirming adequacy of *voir dire* process that included a "77-question, 14-page" written questionnaire that was only a slight modification of what the defendant proposed); *In re South Carolina Press Ass'n*, 946 F.2d l037, 1041 (4th Cir. 1991) (noting use of an "18-page questionnaire containing 66 sections"); *Stewart*, 360 F.3d at 94 (endorsing detailed *voir dire* process in case surrounded by extensive pre-trial publicity). This process was previously used in this district to elicit candid disclosures, reduce panel taint, and promote efficiency in high-profile cases. *See McGregor*, No. 2:10-cr-186-MHT, ECF 318 (providing parties the ability to submit proposed supplemental written questionnaires to go along with the district's standard juror questionnaire and then making completed

questionnaires available to the parties three weeks prior to jury selection); *see also United States v. Siegelman*, No. 2:05-CR-119-MEF, 2006 WL 8441438, at *1 (M.D. Ala. Mar. 6, 2006) (confirming court's intention to use expanded jury questionnaires and inviting the parties to submit proposed *voir dire* questions, including open-ended questions, for the court to pose to the venire).

As a starting point, the SPLC recognizes that this District maintains a standard juror questionnaire (containing approximately 36 questions) that it utilizes in certain cases to provide basic juror information, promote candor on sensitive topics, efficiently identify bias stemming from publicity and political or ideological views, and minimize panel taint.[1] Having reviewed the standard questionnaire, the SPLC respectfully requests that additional pre-*voir dire* questions be sent to summoned jurors. In light of the pre-trial publicity surrounding this case and the SPLC's prominence within this district specifically, these additional pre-*voir dire* written questions are warranted and will expedite jury selection in the courtroom.

The SPLC requests that the Court utilize the proposed written questionnaire, attached as Exhibit A, which incorporates the Middle District of Alabama's standard juror questionnaire as a baseline and includes additional questions that bear specifically on *voir dire* pertinent to this case.

---

[1] *ALMD Juror Questionnaire*, available at https://www.almd.uscourts.gov/sites/default/files/documents/forms/2026-08/almd-juror-questionnaire.pdf (rev. 2026).

As was done in *McGregor*,[2] the SPLC proposes that the written questionnaire be distributed and then returned to the Court's jury administrator for distribution to the parties no later than three weeks before the first day of jury selection. The Clerk's Office would collect completed questionnaires, provide digital copies to the Court and both parties, and maintain the hard copy originals under seal. *See United States v. Siegelman*, No. 2:05-cr-119-CDL-CSC, ECF 255 at 2 (Order on Pretrial and Trial Procedures) (ordering juror questionnaires be made available to parties prior to jury selection and provided to counsel in an electronic format). The SPLC's proposed questionnaire includes an introduction with instructions directing jurors not to share the document, collaborate with others, or do any research about the case. It also includes a brief case summary so that potential jurors may answer the questions thoroughly.

Making juror questionnaires available in advance of trial also speeds jury selection by allowing for the early identification of jurors both parties agree should be excluded without the need for additional questioning. In *McGregor*, No. 2:10-cr-186-MHT-WC, ECF 1208, 2126, the Court directed the parties to review the

[2] In *McGregor*, the trial court granted defendants' request to have completed written questionnaires made available to both parties two weeks before the first day of jury selection. *See* ECF 640 (Def. request), ECF 793 (Gov't Opp.), ECF 809 (Order). After a trial delay, the returned questionnaires were made available to the parties for review three weeks prior to the first day of jury selection. *Id.*, ECF 1800. In *Siegelman*, the returned questionnaires were made available to the parties one week before jury selection. ECF 255 at 2. Because of the complexity and sensitivity of the issues in this case, the SPLC seeks the longer period.

questionnaires and file *ex parte* separate lists of those potential jurors who appeared unqualified or otherwise unable to serve. *Id.*, ECF 1208. The Court was able to compare these lists, identify individuals on both, and determine whether they should be excused from further participation in the jury selection process. By identifying such jurors, this approach reduces the number of individuals who appear before the Court and participate in the *voir dire* process. This avoids the need for additional follow-up on apparently disqualifying responses and reduces the number of venire members, speeding the process of jury selection.

The government opposes this request and the SPLC's proposed questionnaire as submitted. The government's position is that the standard questionnaire used in this District is sufficient for this case. However, the parties agree that it will likely streamline the jury selection process if the parties have access to the submitted questionnaires earlier than provided for by the standard practice (i.e., the Thursday afternoon prior to the beginning of jury selection).

III. <u>Individual Follow-Up *Voir Dire*</u>

After the members of the venire have returned the written questionnaire and the parties inform the Court of those agreed-upon jurors who should be struck for cause or hardship before reporting for jury selection, the SPLC requests that the Court conduct individual follow-up *voir dire* (in-person) for any issues raised by answers to the written questions. Potential jurors should answer questions in this

manner to avoid embarrassment or revealing responses that could taint the rest of the jury pool seated. *See In re Application of New York Times Co.*, 708 F. Supp. 603, 606 (S.D.N.Y. 1989) ("The law compels an individual *voir dire* of the jury to avoid exposing untainted jurors to publicity of which they were not previously aware").

A streamlined approach to do this is one in which every potential juror first fills out a written questionnaire, followed by additional limited in-court questioning regarding areas identified as concerns in the questionnaire. *See Skilling*, 130 S. Ct. at 2910 (affirming use of questionnaire followed by general questions to the venire then individualized examination); *United States v. Rolle*, 204 F.3d 133, 135–36 (4th Cir. 2000) (following use of questionnaire with individualized *voir dire*); *Stewart*, 360 F.3d at 94 (endorsing process in which "[p]rospective jurors would *first be screened* based on their responses to a lengthy questionnaire," followed by individual questioning of remaining venire members) (emphasis added). If needed, general *voir dire* would then be able to address some general questions applicable to the entire venire (e.g., events that occur between the questionnaire and the start of trial, agreement with basic legal principles governing a criminal trial, further introduction of the parties and counsel).

In addition, this proposed procedure would allow counsel the opportunity to have some participation in the *voir dire* process and ask additional tailored questions of individual jurors as necessary in this case. *See* Fed. R. Crim. P. 24(a) ("The court

may examine prospective jurors or may permit the attorneys for the parties to do so"). Courts in this district have permitted counsel to inquire of prospective jurors in limited follow-up *voir dire*. *See, e.g.*, *Siegelman*, No. 2:05-cr-119-CDL-CSC, ECF 255 at 3 (allowing each defendant to ask follow-up questions of *voir dire* panel, limited to 15 minutes of questioning per panel). Moreover,

> [t]he "federal" practice of almost exclusive *voir dire* examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strength and weaknesses of the case. "Peremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes." . . . Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill this need than exclusive examination in general terms by the trial court.

*United States v. Ible*, 630 F.2d 389, 395 (5th Cir. 1980) (internal citations omitted).

The government's position is that the Court should conduct general *voir dire*, followed by the parties' questioning of the entire venire on relevant questions, which would have been previously submitted to the Court as proposed *voir dire* questions, along with appropriate follow-up questions, and then, individual *voir dire* as needed. The parties agree that any individual *voir dire* will need to be more extensive than the typical case in this District due to the public nature of the SPLC as well as the nature of much of the evidence that the government intends to present.

IV. Additional and Alternating Peremptory Strikes

In a case with extensive pre-trial publicity and the potential for strong opinions, including the added factor of political views playing a role, additional

peremptory challenges are another measure courts employ to ensure a fair and impartial jury. *See Siegelman*, No. 2:05-cr-119-CDL-CSC, ECF 191 at 3 (granting each side two additional peremptory challenges, resulting in a total of 12 peremptory challenges for defendants and eight for the government); *see also United States v. Barnett*, 644 F.3d 192, 198 (4th Cir. 2011) (to counter concerns of prejudice, potential jurors were given a 129-question written questionnaire and each side was given 20 peremptory strikes). Given that such factors are present in this case, the SPLC respectfully requests a reasonable number—16 for the defense and 10 for the government—of total peremptory challenges for both sides, to be applied proportionally. Given the addition of Heidi Beirich as a defendant, the SPLC proposes that defendants will coordinate between themselves how to use defense challenges. *See Siegelman*, No. 2:05-cr-119-CDL-CSC, ECF 191 at 3 (ordering the same).

The SPLC also seeks clarification about the Court's standard practice for utilizing peremptory strikes. Courts adopt various procedures for peremptory strikes, from requiring simultaneous strikes (which has the tendency to create duplication and waste the strikes provided) to some form of alternating strikes (depending on the numbers, the defense can strike two to the government striking one, until the strikes fall to one to one). *See United States v. Blouin*, 666 F.2d 796, 796–97 & n.1 (2d Cir. 1981) (discussing two different approaches to alternative

striking); *see also United States v. Bryant*, 671 F.2d 450, 455 (11th Cir. 1982). The SPLC requests that the alternating strike method be used in this case to reduce double striking, promote efficiency, and ensure a clear record.

The government opposes any additional peremptory strikes for either side. The government defers to the Court as to how the striking of the jury will occur.

V. Alternate Jurors

The SPLC also seeks clarification from the Court regarding its standard practice for selecting alternate jurors and understands that the Court typically would select four alternate jurors in a case of this length. Before Ms. Beirich was indicted, the parties anticipated a trial length of about three weeks. With an additional defendant and three additional charges, it may be longer. At least four alternates are necessary to allow the case to proceed in the unfortunate, but not unlikely, event that jurors must stop serving for one reason or another.

In addition, the SPLC requests that the Court consider not informing alternates seated that they are alternates (until deliberations begin) as a way to maximize full attention by each potential juror. Finally, assuming the Court will seat four alternate jurors, the SPLC requests two peremptory challenges per side specifically for selecting alternates, *see* Fed. R. Crim. P. 24(c), proceeding in an alternating strike format as described above.

The government's position is that it is too soon to know how many alternate jurors will be needed, and that the number of alternate jurors needed may change depending on any motions *in limine* and the government's estimated length for trial. The government defers to the Court regarding the process by which alternate jurors are selected.

**CONCLUSION**

The proposed jury selection procedures sought by the SPLC attempt to balance the desire to empanel a fair and impartial jury in a high-profile case with the need to maximize and conserve judicial resources. The SPLC respectfully requests that each of these procedures be granted and adopted by the Court. Attached as Exhibit A is the SPLC's proposed written jury questionnaire.

Dated: August 19, 2026

Respectfully Submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (DC Bar No. 358651)

David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*