IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>THE SOUTHERN POVERTY LAW CENTER, INC.<br><br>Defendant. | Case No. 2:26-cr-0139-ECM-KFP-1 |

**THE SOUTHERN POVERTY LAW CENTER'S REPLY
IN SUPPORT OF ITS MOTION TO COMPEL THE GOVERNMENT
TO PRODUCE EXCULPATORY MATERIAL**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

ADDITIONAL RELEVANT FACTS ........ 2

ARGUMENT ........ 4

I. The Exculpatory Information Sought by the SPLC Is in the Possession of the Prosecution Team. ........ 4

A. Controlling Authority Defines Possession Broadly and Conclusively Forecloses the Government's Position. ........ 4

B. The Out-of-Circuit Decisions the Government Relies on Involve Agencies that Did Not Participate in the Case. ........ 6

C. The Government's Own Search Establishes Both Knowledge and Access. ........ 9

II. The SPLC Does Not Possess the Requested Information and Cannot Obtain It with Due Diligence. ........ 10

A. Category 1 – Cooperation With Law Enforcement. ........ 10

B. Category 2 and Category 3 – FBI's Use of the Same Informants and Tax Information. ........ 15

III. The Evidence Sought Is Material and the Government Must Fulfill Its Duty to Disclose. ........ 16

A. The Government Cannot Establish That the Requested Evidence Is Immaterial Without First Conducting the Search It Has Never Undertaken, Despite Repeated Requests. ........ 16

B. The Standard Governing Pretrial Disclosure Is Not the Retrospective Standard the Government Invokes. ........ 18

C. The Requested Evidence Is Material to the Charged Offenses. ........ 20

1. Category 1 – Cooperation with law enforcement. ........ 20

2. Category 2 – FBI used the same informants. ........ 25

3. Category 3 – Informant tax records. ........ 25

IV. The Government's Claim of Burden Does Not Excuse It from Fulfilling Its *Brady* Obligations. ........ 25

A. Burden Is Not an Exception to *Brady*. ... 26

B. The Government's Representation of Its Burden Does Not Comport with the FBI's Sworn Description of the Sentinel Case Management System. ... 27

V. The SPLC Will Agree to a Narrowing of the Timeframe. ... 28

VI. The Court Should Hold an Evidentiary Hearing Before Resolving the Government's Claim of Burden. ... 28

CONCLUSION ... 30

# TABLE OF AUTHORITIES

**Page(s)**

*Banks v. Dretke*,
540 U.S. 668 (2004) ........ 28

*Barbee v. Warden*,
331 F.2d 842 (4th Cir. 1964) ........ 8

*Boone v. Paderick*,
541 F.2d 447 (4th Cir. 1976) ........ 8

*Brady v. Maryland*,
373 U.S. 83 (1963) ........ *passim*

*Breedlove v. Moore*,
279 F.3d 952 (11th Cir. 2002) ........ 5

*Calley v. Callaway*,
519 F.2d 184 (5th Cir. 1975) ........ 6, 9

*Felker v. Thomas*,
52 F.3d 907, *opinion supplemented on denial of reh'g*,
62 F.3d 342 (11th Cir. 1995) ........ 12, 13

*Fullwood v. Lee*,
290 F.3d 663 (4th Cir. 2002) ........ 8

*Kousisis v. United States*,
605 U.S. 114 (2025) ........ 24

*Kyles v. Whitley*,
514 U.S. 419 (1995) ........ 4, 19, 26, 27

*Mastracchio v. Vose*,
274 F.3d 590 (1st Cir. 2001) ........ 9

*Pennsylvania v. Ritchie*,
480 U.S. 39 (1987) ........ 17

*Riechmann v. Fla. Dep't of Corr.*,
940 F.3d 559 (11th Cir. 2019) ........ 18

*In re Sealed Case No. 99-3096 (Brady Obligations)*,
185 F.3d 887 (D.C. Cir. 1999) ........ *passim*

*Smith v. Sec'y of N.M. Dep't of Corr.*,
50 F.3d 801 (10th Cir. 1995) ........ 9

*Strickler v. Greene*,
527 U.S. 263 (1999)....................18, 19

*United States v. Agurs*,
427 U.S. 97 (1976)....................17, 19

*United States v. Alahmedalabdaloklah*,
94 F.4th 782 (9th Cir. 2024)....................7, 8

*United States v. Almohandis*,
307 F. Supp. 2d 253 (D. Mass. 2004)....................12

*United States v. Alzate*,
47 F.3d 1103 (11th Cir. 1995)....................20

*United States v. Antone*,
603 F.2d 566 (5th Cir. 1979)....................5

*United States v. Auten*,
632 F.2d 478 (5th Cir. 1980)....................4, 5, 9, 26

*United States v. Bailleaux*,
685 F.2d 1105 (9th Cir. 1982)....................12

*United States v. Barkett*,
530 F.2d 189 (8th Cir. 1976)....................9

*United States v. Bell*,
112 F.4th 1318 (11th Cir. 2024)....................23, 24

*United States v. Blankenship*,
19 F.4th 685 (4th Cir. 2021)....................10, 12, 13

*United States v. Brooks*,
966 F.2d 1500 (D.C. Cir. 1992)....................29

*United States v. Bryan*,
868 F.2d 1032 (9th Cir. 1989)....................6

*United States v. Bryant*,
439 F.2d 642 (D.C. Cir. 1971)....................9

*United States v. Cano*,
934 F.3d 1002 (9th Cir. 2019)....................6, 7

*United States v. Cuffie*,
80 F.3d 514 (D.C. Cir. 1996)....................13

*United States v. Deutsch*,
475 F.2d 55 (5th Cir. 1973), *overruled in part on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984) (en banc) ........................................................6

*United States v. Horn*,
129 F.4th 1275 (11th Cir. 2025) ........................................................................23, 24

*United States v. Ignasiak*,
No. 3:08cr27/LAC, 2010 WL 11694932 (N.D. Fla. Mar. 1, 2010) ..........................................9

*United States v. Javat*,
No. 19-15168, 2026 WL 1224100 (11th Cir. May 5, 2026) ...................................................24

*United States v. Jordan*,
316 F.3d 1215 (11th Cir. 2003) ..............................................................5, 18, 20, 23

*United States v. Kattar*,
840 F.2d 118 (1st Cir. 1988) ..........................................................................................9

*United States v. Laines*,
69 F.4th 1221 (11th Cir. 2023) ......................................................................12, 13

*United States v. Lloyd*,
992 F.2d 348 (D.C. Cir. 1993) ......................................................................................29

*United States v. Marion*,
404 U.S. 307 (1971) ....................................................................................................10

*United States v. Meros*,
866 F.2d 1304 (11th Cir. 1989) ....................................................................5, 14

*United States v. Nash*,
910 F.2d 749 (11th Cir. 1990) .....................................................................................20

*United States v. O'Conner*,
64 F.3d 355 (8th Cir. 1995) .........................................................................................14

*United States v. Russell*,
No. 22-20348-CR, 2022 WL 17736195 (S.D. Fla. Dec. 17, 2022) .........................................5

*United States v. Safavian*,
233 F.R.D. 12 (D.D.C. 2005) ......................................................................................18

*United States v. Severdija*,
790 F.2d 1556 (11th Cir. 1986) ..........................................................11, 12, 22, 23

*United States v. Smith*,
77 F.3d 511 (D.C. Cir. 1996) .......................................................................................13

*United States v. Spagnoulo*,
960 F.2d 990 (11th Cir. 1992) ....................24

*United States v. Stein*,
846 F.3d 1135 (11th Cir. 2017) ....................14

*United States v. Sudikoff*,
36 F. Supp. 2d 1196 (C.D. Cal. 1999) ....................18

*United States v. Sutton*,
542 F.2d 1239 (4th Cir. 1976) ....................8

*United States v. Takhalov*,
827 F.3d 1307 (11th Cir. 2016) ....................24

*United States v. Taylor*,
942 F.3d 205 (4th Cir. 2019) ....................8

*United States v. Wood*,
57 F.3d 733 (9th Cir. 1995) ....................9

*Xydas v. United States*,
445 F.2d 660 (D.C. Cir. 1971) ....................14

**Statutes**

18 U.S.C. app. 3 § 4 ....................8

26 U.S.C. § 6103(a) ....................15

**Other Authorities**

Fed. R. Crim. P. 12(c)(1) ....................28

Fed. R. Crim. P. 12(d) ....................28

Fed. R. Crim. P. 16 .................... *passim*

Justice Manual § 9-5.001(C) ....................19

M.D. Ala. LCrR 16.1 ....................19

M.D. Ala. LCrR 16.1(a)(1)(B) ....................19

## INTRODUCTION

The SPLC asks the Court to order the government to fulfill its constitutional obligation: learn what favorable information investigative agencies involved in this case possess and disclose that information to the defense. Supreme Court and Eleventh Circuit precedent require that the government undertake this search and make this disclosure without a request from the defense or intervention by the Court. Even though the SPLC alerted the government to the existence of this exculpatory information before the initial indictment and has repeatedly sought it after the indictment, the government took the position that this information was immaterial and declined to search for it for the last six months.

Then, the day before its opposition brief was due, the government finally undertook a minimal search for *Brady* information: applying a ***single*** search term for ***one*** category of requested material across a ***portion*** of the FBI's available electronic case management system for ***part*** of the time frame alleged in the indictment. Even that effort returned a staggering 65,000 hits across more than 170 case files. ECF 128 at 17. Because the government has not reviewed those documents, neither the government nor the defense nor the Court knows what is in them.

The record to date, however, suggests that this information is very likely crucial to the SPLC's defense and could undoubtedly alter the outcome at trial (although the standard by which the government's *Brady* obligations are measured is much lower at this pretrial stage). The government claims that the SPLC conspired from 2007 to 2023 to defraud its donors by operating the informant program. In the government's view, the program was not to "help 'dismantle' violent extremist groups" but to "engage in the active promotion of racist groups" to "obtain money via donations." ECF 115 ¶¶ 21-22. It will come as no surprise that the SPLC will defend against these charges in part by showing that by sharing information with law enforcement, the informant program was part of its stated effort to help "dismantle" extremist

groups. In fact, the SPLC has already offered evidence of how its cooperation with law enforcement by sharing intelligence learned through its informant program saved lives, helped put violent extremist group members in prison, and warned against violence ahead of the 2017 "Unite the Right Rally" by providing a 45-page "Event Alert" to warn the FBI about planned violence ahead of the deadly rally in Charlottesville, Virginia. ECF 23, at 4-6, 9-11; ECF 22 at 3-4. Information showing that the SPLC's informant program helped law enforcement investigate and prosecute extremist group members shows that the SPLC was "help[ing] 'dismantle' violent extremist groups," ECF 115 ¶ 21, and was not deceiving its donors. At a more basic level, evidence that the SPLC was in constant contact with federal law enforcement *about the exact program the government contends is a "scheme and artifice to defraud donors,"* ECF 115 ¶ 28, is material to whether the SPLC had criminal intent to defraud anyone.

The information in dispute here is within the possession of the FBI, IRS, and USPIS—part of the "prosecution team"—as defined by this Circuit's binding precedent. The SPLC does not have access to this information and is entitled to this information from the government's own records to offer as affirmative evidence and to corroborate and refresh witnesses' recollections. The SPLC respectfully requests that the Court order the government to immediately produce this material on a rolling basis over the next few weeks. The SPLC further requests an evidentiary hearing on its motion so that the Court can receive testimony from a witness with personal knowledge of the FBI's records systems. Only with such a hearing can a complete record be made regarding the factual issues in dispute, including the government's unsupported claim of burden, from which the Court can make the requisite factual findings.

## ADDITIONAL RELEVANT FACTS

The government has known since February 25, 2026, almost two months before the grand jury returned the initial indictment, that the SPLC's defense to these charges would include

presenting to the jury that it shared information from the informant program with law enforcement. Since then, the SPLC has engaged in every possible good-faith effort to meet and confer with the government about the requested information, sending letters, and virtually and telephonically meeting with the government. The government for its part simply refused to engage in a meaningful meet and confer. It did not suggest any narrowing of the requested categories, it did not conduct any search of the Sentinel database, it did not tell the defense it had any responsive information, and it did not even review a sample of documents to permit an exchange of information between the parties.

The timeline of events is critical to understanding just how long the government has refused to comply with its constitutional obligations under *Brady*.

| DATE | EVENT |
|---|---|
| **February 25, 2026** | Counsel for the SPLC informs the government during a reverse proffer session that the information learned from the informant program was shared with law enforcement. |
| **April 6, 2026** | Counsel for the SPLC meets with government to provide specific information about how the informant program helped dismantle extremist groups by providing information to law enforcement. |
| **April 17, 2026** | The SPLC sends letter to government demanding that they present exculpatory information to the grand jury, including the SPLC's sharing of information with law enforcement. |
| **April 21, 2026** | Indictment unsealed |
| **April 21, 2026** | Attorney General Todd Blanche appears on Fox News to declare that the SPLC had not shared information with law enforcement. |
| **April 22, 2026** | The SPLC sends a letter to the government detailing how AG Blanche's statement was inaccurate because, as defense counsel had demonstrated to the prosecutors previously, the SPLC had provided information to law enforcement. |
| **April 28, 2026** | The SPLC files motion to correct the government's false statements about not sharing information with law enforcement. |
| **May 7, 2026** | At the SPLC's arraignment, the lead prosecutor informs the Court that the government has complied with all *Brady* obligations. |
| **May 13, 2026** | The SPLC sends a detailed letter to the lead prosecutor detailing several categories of requested *Brady* information, including documents showing that the SPLC provided information to law enforcement. (Ex. 1) |

| DATE | EVENT |
|---|---|
| **June 16, 2026** | The lead prosecutor tells the defense that the government does not see the requested information as relevant to the defense. |
| **July 7, 2026** | The lead prosecutor informs the Court that the government "has completed all discovery that's required." ECF 104 at 12–13. |
| **July 13, 2026** | The SPLC sends a second letter to the government demanding *Brady* disclosures. (Ex. 2) |
| **July 21, 2026** | The lead prosecutor informs the SPLC by email that he has "provided all *Brady* material within its possession." (Ex. 3) |
| **August 7, 2026** | The SPLC files this motion to compel. |
| **August 20, 2026** | The government conducts its first search for *Brady* information in the Sentinel database. |
| **August 21, 2026** | The government files its opposition brief. |

## ARGUMENT

### I. The Exculpatory Information Sought by the SPLC Is in the Possession of the Prosecution Team.

The government concedes that the Federal Bureau of Investigation (FBI), Internal Revenue Service (IRS), and United States Postal Inspection Service (USPIS) investigated this case and that their agents constitute the "prosecution team." ECF 128 at 6. It nonetheless asks this Court to rule contrary to binding precedent by limiting the prosecution team to the individual agents assigned to the matter, and holding that the records systems those agencies maintain lie beyond the government's reach. Neither proposition comports with controlling authority, or the government's own account of what it found when it finally searched. This evidence is in the government's possession, and the government must provide it.

#### A. Controlling Authority Defines Possession Broadly and Conclusively Forecloses the Government's Position.

It is well-established that a prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). There is no "distinction between different agencies under the same government" for *Brady* purposes. *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980). The

relevant entity is "the 'prosecution team' which includes both investigative and prosecutorial personnel." *Id*.[1] Based on the government's discovery to date, agents from the FBI, IRS, and USPIS conducted the interviews in this investigation.

Whether or not an individual prosecutor is in possession of the information is not the relevant question, for "the prosecution team generally is considered a unitary entity, and favorable information possessed by the police but unknown to the prosecutor is nonetheless subject to the *Brady* test." *Breedlove v. Moore*, 279 F.3d 952, 961 (11th Cir. 2002). The government's own lead authority agrees: *United States v. Meros*, 866 F.2d 1304 (11th Cir. 1989), cited at page 5 of the Opposition, defines the prosecution team as one "which includes both investigative and prosecutorial personnel," *id.* at 1309, deriving that definition from *United States v. Antone*, 603 F.2d 566 (5th Cir. 1979), which imputed knowledge between investigative teams based on their "extensive cooperation," *id.* at 570. The Court in *Antone* imputed that knowledge even though the information at issue had never been disclosed to the prosecutors to whom it was attributed. *Id*. at 568.

Moreover, the government may not narrow its obligation by declining to look for exculpatory material. In *Auten*, the prosecution argued that it could not have suppressed evidence unknown to it. The former Fifth Circuit disagreed: "That the prosecutor, because of the shortness of time, chose not to run an FBI or NCIC check on the witness, does not change 'known' information into 'unknown' information within the context of the disclosure requirements." *Id*. at 481. Because "the prosecutor has ready access to a veritable storehouse of relevant facts," that

[1] *See also United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003) (stating, in the Rule 16 context, that knowledge or possession by the prosecutor "includes materials in the hands of a governmental investigatory agency closely connected to the prosecutor"). District courts in our Circuit have subsequently applied this formulation in the *Brady* context. *See, e.g.*, *United States v. Russell*, No. 22-20348-CR, 2022 WL 17736195, at *1 (S.D. Fla. Dec. 17, 2022).

access "must be shared 'in the interests of inherent fairness . . . to promote the fair administration of justice.'" *Id.* (quoting *Calley v. Callaway*, 519 F.2d 184, 223-24 (5th Cir. 1975)). *Calley* states the rule directly: the obligation extends to evidence "actually *or constructively* in [the prosecution's] possession *or accessible to it*," and to "important information known *or available to the prosecutor*." 519 F.2d at 223-24 (emphases added).[2] Even the partial search by the government for one of the three categories at issue reveals that a considerable amount of material is in the possession of the FBI. The SPLC understands that the documents are available in the Sentinel system itself, can be downloaded from Sentinel for review by the SPLC or the government, and do not require a search of any FBI field offices for the review process.

### B. The Out-of-Circuit Decisions the Government Relies on Involve Agencies that Did Not Participate in the Case.

The government principally relies on three decisions from the Fourth and Ninth Circuits to support its definition of "prosecution team." ECF 128 at 5-9. Those cases actually support the SPLC's position. For example, the government quotes *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019), but ignores its clear statement that "[k]nowledge and access are presumed if the agency participates in the investigation of the defendant," and that a "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *Id.* at 1023 (9th Cir. 2019) (quoting *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)).

In *Cano*, the defendant sought discovery from the FBI and Drug Enforcement Administration (DEA) in support of a third-party culpability defense and alleged a *Brady* violation

[2] *See also United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973) (government obligated to obtain exculpatory information in the possession of the United States Postal Service), *overruled in part on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984) (en banc).

on appeal after it received no information from these agencies. The court of appeals, after surveying the authorities, observed that "all of the cases . . . imposing a 'duty to learn' on the prosecutor involve independent federal agencies that had participated in the investigation of the defendant," and framed its holding to match: a prosecutor lacks "access" to "information that an agency *not involved in the investigation or prosecution of the case* refuses to turn over." *Id.* at 1026 (emphasis added).[3] Thus, in a case where Homeland Security Investigations alone investigated the case; the FBI and DEA rebuffed the requests of both an HSI case agent and the United States Attorney's Office when they sought information; the government obtained no evidence from either agency—"inculpatory or exculpatory"; and searches of two clearinghouses in which both the FBI and DEA participated returned no hits, the court found there was no *Brady* violation. *Id.* at 1024-25. Here, by contrast, the government does not dispute that the FBI, IRS, and USPIS participated in the investigation of the SPLC. ECF 128 at 6.[4] The FBI, IRS, and USPIS also did not rebuff the prosecution—their agents are the prosecution team. Indeed, FBI, IRS, and/or USPIS agents have attended all witness interviews, and one FBI agent consistently *led* the interviews, even when one or more prosecutors were present. And finally, the government's search returned not zero results, but more than 65,000. ECF 128 at 17.

*United States v. Alahmedalabdaloklah*, 94 F.4th 782 (9th Cir. 2024), is likewise distinguishable. There, the defendant's "arguments conflate[d] the DoD components that

---

[3] The passage the government quotes concerning agencies' "valid concerns over revealing sensitive information in cases wholly unrelated to the agencies' own workload" (ECF 128 at 10, citing *Cano*, 934 F.3d at 1025) is subject to the same limitation: the Ninth Circuit has subsequently described it as addressing "non-participating agencies." *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 845 (9th Cir. 2024).

[4] *See also* https://www.justice.gov/opa/pr/federal-grand-jury-charges-southern-poverty-law-center-wire-fraud-false-statements-and (stating, in announcing the first indictment: "The Federal Bureau of Investigation (FBI) investigated this case with assistance from the Internal Revenue Service Criminal Investigation (IRS-CI).").

participated in the investigation with the entirety of DoD"—a department "overseeing 3.4 million service members and civilians" and comprising "33 agencies and subcomponents." *Alahmedalabdaloklah*, 94 F.4th at 844-45. CENTCOM advised the prosecution that the request "would require a search of nothing less than all DoD components"; but the prosecution team "had access only to those databases directly related to [the] prosecution" and "was relegated to requesting CENTCOM's assistance to obtain any responsive materials." *Id.* at 845 (emphasis in original). The SPLC asks only that the agencies that investigated this case search their own records. And unlike the prosecution in *Alahmedalabdaloklah*, the government here needed no other agency's assistance to search Sentinel.[5]

The Fourth Circuit precedent cited by the government is further afield. The knowledge at issue there belonged to ATF officers who "were not part of the [Gun Trace Task Force] 'investigative team,' which was made up of FBI officers," and who "were looking into an entirely separate case related to the Straight Kash Cartel." *United States v. Taylor*, 942 F.3d 205, 225 (4th Cir. 2019). The Fourth Circuit's own citations in that passage collect four decisions imputing to prosecutors the knowledge of officers or agents "working the same case." *Id.* at 225-26.[6]

---

[5] The government speculates that some of the information may be "classified." ECF 128 at 17-18. It offers no affidavit or other information to support this speculation. And even if some responsive material may be classified, that does not place it outside the government's possession or negate the government's *Brady* obligations. The Classified Information Procedures Act ("CIPA") supplies the mechanism for handling classified discovery, 18 U.S.C. app. 3 § 4, and the prosecution in *Alahmedalabdaloklah* proceeded under CIPA rather than treating classification as an exemption from *Brady*. 94 F.4th at 845. The same could be done here should the government identify relevant classified material in its possession.

[6] Citing *Fullwood v. Lee*, 290 F.3d 663, 685 n.12 (4th Cir. 2002); *United States v. Sutton*, 542 F.2d 1239, 1241 n.2 (4th Cir. 1976); *Boone v. Paderick*, 541 F.2d 447, 451 (4th Cir. 1976); and *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir. 1964).

### C. The Government's Own Search Establishes Both Knowledge and Access.

The government's remaining position is that the FBI's other components are not part of this prosecution. That cannot be squared with the authorities—"The government cannot with its right hand say it has nothing while its left hand holds what is of value." *United States v. Wood*, 57 F.3d 733, 737 (9th Cir. 1995).[7] The government need not search every FBI field office. The SPLC's understanding is that responsive documents are contained in the electronic database that the government already searched: Sentinel.

The government does not dispute that such a search may be required. Citing *Auten*, it concedes that it "may be required to conduct a 'routine search of databases' depending on the particular facts of a case." ECF 128 at 10 (quoting *United States v. Ignasiak*, No. 3:08cr27/LAC, 2010 WL 11694932, at *3 (N.D. Fla. Mar. 1, 2010)). *Ignasiak* holds that "the prosecution's duty to reasonably gain access to relevant information would ordinarily include the routine search of databases such as the NCIC." *Id.* Sentinel is the FBI's database and a search of it is routine.

On August 20, 2026, the government finally searched Sentinel for records referencing the SPLC. ECF 128 at 17. That search returned "in excess of 65,000 positive hits in over 170 cases." *Id.* The government therefore has both the knowledge and the access that *Calley*, *Auten*, and its own authorities require. It knows the material exists, it knows where it resides, and it demonstrated its ability to retrieve it by retrieving it. To the extent that some of those 65,000 hits contains the

[7] *See also Mastracchio v. Vose*, 274 F.3d 590, 600 (1st Cir. 2001); *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 824 (10th Cir. 1995). *Cf. United States v. Kattar*, 840 F.2d 118, 127 (1st Cir. 1988) ("The Justice Department's various offices ordinarily should be treated as an entity, the left hand of which is presumed to know what the right hand is doing."); *United States v. Bryant*, 439 F.2d 642, 650 (D.C. Cir. 1971) (duty "affects not only the prosecutor, but the Government as a whole, including its investigative agencies"); *United States v. Barkett*, 530 F.2d 189, 195 (8th Cir. 1976) (imputing Main Justice's declination decision to the local United States Attorney for due process purposes, reasoning that "one office within a single federal agency must know what another office of the same agency is doing or has done regarding the accused").

type of exculpatory information that the defense has been repeatedly seeking, there can be no question that the requested evidence is in the government's possession. As a result, the government must review this material for *Brady* information or turn it over to the defense.

## II. The SPLC Does Not Possess the Requested Information and Cannot Obtain It with Due Diligence.

### A. Category 1 – Cooperation With Law Enforcement.

The government next contends that the SPLC "already has (or should have) access to information regarding any of its past cooperation with law enforcement," resting this assumption on a single premise: "As the provider of any such information, this should be readily available to the SPLC." ECF 128 at 10-11.[8] As an initial matter, "the government's need to comply with its *Brady* obligations is not obviated by the defendant's lack of due diligence. The constitutional right cannot be so burdened." *United States v. Blankenship*, 19 F.4th 685, 694 (4th Cir. 2021). Even if the Court puts this point aside, the SPLC does not have access to all the requested information for a few primary reasons.

**First**, this information was communicated at least in part by telephone. The government alleges that the conspiracy began in 2007 and ended in 2023, so some of the relevant conversations happened nearly twenty years ago. It is a practical impossibility that witnesses will recall details of those conversations now. *See United States v. Marion*, 404 U.S. 307, 321 (1971) ("Passage of time . . . may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with [a defendant's] ability to defend himself."). **Second**, the individuals who oversaw the informant program departed the SPLC years ago and the government does not suggest

[8] The government does not dispute that the SPLC does not have access to the information sought in the second category (informants working for the SPLC and the FBI) and the third category (tax information).

(nor could it) that the SPLC may compel their recollections to prepare for trial. Indeed, some of these key witnesses who communicated with law enforcement have refused to meet with defense counsel. **Third**, the SPLC, like most organizations, does not consistently retain all of the email accounts of former employees. Thus, for some of the witnesses who would have had these communications, the SPLC no longer has the records of them.

Beyond these practical limitations, *Brady* requires the government to disclose its own records of the defendant's statements, even though the defendant is arguably aware of what he said. In *United States v. Severdija*, 790 F.2d 1556 (11th Cir. 1986), the defendant made an exculpatory statement to a Coast Guard ensign who drafted a written report of the interview. The government did not disclose the report to the defense and, on appeal, argued that the defense had "equal access" to the statement. *Id*. at 1559. The Eleventh Circuit rejected that argument, explaining that even though the defendant "was in all likelihood aware of [his] statement" to the ensign, he did not have access to "the recordation of those statements" by the ensign. *Id*. at 1559-60. And the written report was helpful to the defense because it would have "corroborat[ed]" the defendant's testimony on this point for the jury. *Id*. at 1559 n.1. Plus, even if defense counsel had known the identity of the Coast Guard ensign to locate and interview him about his recollection, the ensign "might well have refused to discuss the case" with defense counsel or been "at the mercy" of his "memory" rather than a contemporaneous document. *Id*. at 1560. Here, the SPLC's contacts with law enforcement constitute statements of the defendant to law enforcement.[9]

---

[9] The government's obligation to produce this evidence does not rest on *Brady* alone. Because the SPLC is an organizational defendant, Rule 16(a)(1)(C) requires the government, upon request, to disclose any statement described in Rule 16(a)(1)(A) and (B) made by a person the government contends "was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent," or who "was personally involved in the alleged conduct constituting the offense" and was able to bind the SPLC by virtue of that position. Fed. R. Crim. P. 16(a)(1)(C)(i)-(ii). The government's own theory of the

Similarly, while the SPLC can call witnesses to testify that it transmitted information to law enforcement, those witnesses are current and former employees whose credibility and strength of memory the government will no doubt contest. Contemporaneous federal records confirming transmission of that information to law enforcement, as in *Severdija*, would corroborate this testimony. Information from a witness whose credibility the government challenges, the D.C. Circuit has explained, "cannot substitute for information obtained from the government itself—particularly not when the defense was seeking information from a more trustworthy source in order to corroborate" it. *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 897 (D.C. Cir. 1999).

The government's arguments to the contrary are to no avail. It first cites three cases—*Felker v. Thomas*, 52 F.3d 907 (11th Cir.), *opinion supplemented on denial of reh'g*, 62 F.3d 342 (11th Cir. 1995); *United States v. Laines*, 69 F.4th 1221 (11th Cir. 2023); and *United States v. Blankenship*, 19 F.4th 685 (4th Cir. 2021)—for the proposition that the SPLC already possesses the requested evidence with respect to category one. ECF 128 at 11. But all three share an important distinction: each involved an individual defendant with personal knowledge of, or ready access to, the information said to have been suppressed. *Felker* was present for the event at issue; thus, the

---

case satisfies that predicate. Rule 16(a)(1)(B)(i), in turn, reaches "any relevant written or recorded statement by the defendant" that is within the government's "possession, custody, or control" and whose existence "the attorney for the government knows—or through due diligence could know." That condition is also satisfied here. *See supra* Sec. I.

Notably, the obligation under Rule 16(a)(1)(B) does not depend on the government's litigation plans. Fed. R. Crim. P. 16(a)(1)(B); *see also United States v. Almohandis*, 307 F. Supp. 2d 253, 255 (D. Mass. 2004) (so holding as to Rule 16(a)(1)(B)(ii)). And relevance under the Rule is construed broadly. As the Ninth Circuit explained, the provision "can fully serve its intended purpose only if the Government takes a broad view of what is relevant," and "the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." *United States v. Bailleaux*, 685 F.2d 1105, 1114 (9th Cir. 1982).

court held, because he "was there when it happened, he knew it well before anyone representing the State did," and the information "was not suppressed from Felker's own personal knowledge." 52 F.3d at 910. *Laines* concerned "the contents of [the defendant's] own cell phone" and the court concluded that the defendant "could have examined the phone during discovery." 69 F.4th at 1231. And *Blankenship* concerned interview memoranda of the defendant's own senior employees, whose statements "generally pertained to things that Blankenship himself had said or done"; the court concluded he "would not have been required to scavenge, guess, search, or seek" because "[h]e had the evidence before him and undoubtedly was aware of it." 19 F.4th at 693-94. Even there, the Fourth Circuit confined the exception to a defendant who would "turn a willfully blind eye to available evidence," distinguishing "the burden of due diligence—which the defendant need not carry in asserting a *Brady* claim—from the common-sense notion of self-help imputable to a defendant in preparing his case." *Id.* at 694-95.

Courts confronting that situation have rejected the argument the government makes here. In *In re Sealed Case,* the defense knew that a witness had cooperated with law enforcement and might have had an agreement with the government, but it did not know the terms of any such agreement or what those terms revealed. The D.C. Circuit held that the undisclosed material "would not have been the equivalent of what the defense already knew." 185 F.3d at 898. In reaching this conclusion, the court relied on decisions holding that partial knowledge does not necessarily excuse disclosure of the remainder. *See id.* at 898. Those decisions support the SPLC's position, not the government's. *See United States v. Smith*, 77 F.3d 511, 515 (D.C. Cir. 1996) ("[W]e must look not to the ways defense counsel was able to impeach [the witness], but to the ways in which the witness' testimony was allowed to stand unchallenged."); *United States v. Cuffie*, 80 F.3d 514, 517 (D.C. Cir. 1996) (stating "the fact that other impeachment evidence was available

to defense counsel does not render additional impeachment evidence immaterial") (quoting *United States v. O'Conner*, 64 F.3d 355, 359 (8th Cir. 1995)).

Next, the government asserts that the SPLC "might have to spend time and resources searching for this information within its own records." ECF 128 at 12. But diligence cannot recover records that no longer exist, and it cannot generate records that were never created. The government's cited authorities on diligence involve defendants who could have obtained the evidence through ordinary investigation. In *Stein*, the document was a public filing that the defendant himself "located . . . on the 'SEC website,'" and he "made no effort to establish" that it was "unobtainable with reasonable diligence." *United States v. Stein*, 846 F.3d 1135, 1146-47 (11th Cir. 2017). In *Meros*, the information concerned plea negotiations in other jurisdictions about which the defense was in "as good a position as the prosecutor to learn." 866 F.2d at 1309. Diligence in those cases meant visiting a public website and contacting prosecutors' offices. The documents here, of course, are not public; they are FBI records.

The fact that the government has not reviewed (and for some categories, even sought) the requested information sharpens this point further. In *In re Sealed Case*, the government argued on appeal that it had not breached its disclosure obligation because the information "was otherwise available through 'reasonable pre-trial preparation by the defense.'" 185 F.3d at 896 (quoting *Xydas v. United States*, 445 F.2d 660, 668 (D.C. Cir. 1971)). The D.C. Circuit found that argument "somewhat surprising," because the government had conceded that it "ha[d] not yet conducted a full *Brady* search of its own, and hence does not know the details of any agreements [the witness] may have had." *In re Sealed Case*, 185 F.3d at 896. The court explained: "We do not understand how the government can confidently assert that defense counsel could have learned the contents

of [the] agreements when the government concedes that it has no idea what those contents are." *Id.*

Finally, the government's argument as to Category 1 addresses only one part of the requested information. The SPLC requests not only information that it cooperated with law enforcement but also information showing how the government used the information the SPLC provided. The latter request is wholly within the FBI and DOJ's control and the SPLC has no access to it.

**B. Category 2 and Category 3 – FBI's Use of the Same Informants and Tax Information.**

The government's possession and diligence arguments are addressed exclusively to the first category of the SPLC's request. As to the second and third categories, the government argues only that the information requested is immaterial and that the agencies holding it lie outside the prosecution team. ECF 128 at 4, 10 & n.2. It does not claim that the SPLC possesses this material, or that the SPLC could obtain it through any exercise of diligence.

It could not argue otherwise. Whether a person who worked with the SPLC also served as a confidential human source for a federal agency is a fact known to that agency and recorded in its files. Source registration, payment, and other relevant records are maintained by the government, and an individual who served in that capacity is ordinarily prohibited from disclosing it. While the SPLC is now aware that at least one SPLC informant was also an informant for federal law enforcement, as confirmed by the government, ECF 114 at 12, the SPLC has no means of learning which of its other informants also reported to federal agents, much less what those agents directed them to do. As revealed in the government's discovery, former FBI agent Scott Payne was interviewed by the government and told the investigating agents one of the SPLC's informants was also an FBI informant. Ex. 2 at 6. ("We request that you produce all records relating to the cases

that FBI Agent Scott Payne worked on with [redacted], and all other FBI records relating to [redacted] serving as an FBI informant, including those reflecting information he provided or was asked to provide. This is referenced in the April 17, 2026 interview of Payne by the FBI.").

The same is true of tax records. The SPLC cannot obtain another person's tax return, and it cannot learn how the Internal Revenue Service resolved another person's asserted deficiency; only the government can.[10] That the individuals in question have not been charged in this case (ECF 128 at 9 n.2) does not bear on the analysis. *Brady* turns on whether evidence is favorable and within the government's possession. The government does not cite any case law suggesting that it depends on the charging status of third parties.

The government's representation as to this category is also narrower than it appears. It states that it "has provided all tax information it has received via court orders in this case." ECF 128 at 9 n.2. That describes what the prosecutors obtained through court process. It does not describe what records the IRS holds—an agency the government concedes is part of the prosecution team. ECF 128 at 6. Thus, given the uncontested lack of ability by the defense to obtain this information, and in light of its materiality to the charged offenses, *see infra* Sec. III, the government must be compelled to search for and provide these categories of documents as well.

## III. The Evidence Sought Is Material and the Government Must Fulfill Its Duty to Disclose.

### A. The Government Cannot Establish That the Requested Evidence Is Immaterial Without First Conducting the Search It Has Never Undertaken, Despite Repeated Requests.

As an initial matter, the government seeks a materiality determination based on speculation, rather than on a factual record. It asks this Court to hold that documents the government has never

[10] Tax returns are also subject to an express statutory bar. Federal returns and return information are confidential, and disclosure is prohibited except as authorized by statute. 26 U.S.C. § 6103(a).

located or reviewed are not material to the charges against the SPLC. As the Supreme Court has made clear, however, the government cannot argue materiality from a record it affirmatively chose not to obtain. In *Pennsylvania v. Ritchie*, the Court observed that "[a]t this stage, of course, it is impossible to say whether any information in the [ ] records may be relevant to [the defendant's] claim of innocence, because neither the prosecution nor defense counsel has seen the information." 480 U.S. 39, 57 (1987); *see also In re Sealed Case*, 185 F.3d at 896-97 (government resisted disclosure of cooperation agreements between a witness and federal law enforcement but had not "conducted a full-fledged" search for them; court held that failure to search was itself "a breach of the government's 'duty to search' for *Brady* information," and that "an evaluation of the significance of the evidence that was available to the defense cannot begin until the government determines whether there was any evidence that was unavailable.").

Here, the government has belatedly done only a partial search for responsive information in Sentinel and has not reviewed the information. Thus, under *Ritchie*, it is "impossible" for the government to claim that the documents are not material here. Nor can the government substitute a materiality objection for the search itself. *See United States v. Agurs*, 427 U.S. 97, 106 (1976) (holding that "if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge"). The SPLC has certainly furnished, at the very least, a substantial basis for claiming materiality exists. Thus, the government's options are to provide the information or to submit the question to the Court, not to decline the search while simultaneously declaring the results of such a search to be immaterial.

**B. The Standard Governing Pretrial Disclosure Is Not the Retrospective Standard the Government Invokes.**

In addition to substituting an assumption for a materiality assessment, the government also invokes the wrong standard under which the Court must assess materiality. The government cites *Riechmann v. Florida Department of Corrections*, 940 F.3d 559, 580 (11th Cir. 2019), including its requirement of "a reasonable probability that the outcome would have been different." ECF 128 at 3. But that test governs appellate and postconviction review of a completed trial, and the government concedes as much. *Id*. at n.1 (acknowledging that "cases discussing alleged *Brady* violations usually involve the discovery of exculpatory information after trial," but contending that the retrospective standard is "helpful to analyze" a pretrial request).

This jurisdiction has articulated its own pretrial standard for what must be disclosed to the defense pretrial under *Brady*, which the government itself acknowledges: "evidence which, in the eyes of a neutral and objective observer, *could* alter the outcome of the proceedings." *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) (emphasis added). Evidence that "could" alter the outcome of the proceedings is not the same as evidence carrying a "reasonable probability" of having altered one. That is because the latter—the standard the government asks the Court to apply—is impossible at this stage: materiality as articulated in *Riechmann* requires examination of the suppressed evidence against the trial record, which of course does not yet exist. *See also United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) (describing the definition of "materiality" discussed in *Strickler v. Greene*, 527 U.S. 263 (1999), as "not the appropriate one for prosecutors to apply during the pretrial discovery phase," and stating "[t]he question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed"); *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1199-1200 (C.D.

Cal. 1999) (holding that the "definitions of materiality as applied to appellate review are not appropriate in the pretrial discovery context," and that "*Brady* requires disclosure of exculpatory information that is either admissible or is reasonably likely to lead to admissible evidence").[11]

The distinction between a pre- and post-trial *Brady* analysis is important. The Supreme Court in *Strickler* explicitly described the existence of a "*broad* obligation to disclose exculpatory evidence." *Strickler*, 527 U.S. at 281 (emphasis added). While it held that noncompliance with the *Brady* obligation only rises to a constitutional violation mandating reversal if materiality is subsequently established, it clearly recognized that a duty of *disclosure* exists even when the items disclosed later prove not to be material in the retrospective sense of the word. *Id*. *See also Agurs*, 427 U.S. at 108 ("the prudent prosecutor will resolve doubtful questions in favor of disclosure").

Finally, the Department of Justice Manual requires prosecutors to employ the same pretrial standard described above, directing prosecutors to disclose information "beyond that which is 'material' to guilt as articulated in *Kyles v. Whitley* and *United States v. Bagley*," including information "inconsistent with any element of any crime charged," and to do so "regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal." Justice Manual § 9-5.001(C). The government asks this Court to hold it to a narrower standard than its own policy requires and one that is inconsistent with the law. The Court should decline to do so.

---

[11] The government was on notice of this standard from the outset. Local Criminal Rule 16.1(a)(1)(B) requires the government to tender at arraignment all information "which may be favorable to the defendant on the issues of guilt or punishment, *without regard to materiality*, within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963)." M.D. Ala. LCrR 16.1(a)(1)(B) (emphasis added). The Court suspended the rule at the parties' request, *see* ECF 40, but the rule by its terms was "intended to promote the efficient exchange of discovery without altering the rights and obligations of the parties," M.D. Ala. LCrR 16.1, and its suspension did not diminish what *Brady* requires.

### C. The Requested Evidence Is Material to the Charged Offenses.

The government contends that the information requested by the SPLC is not material to the charges here. In fact, the information requested in each of the three categories is material to the wire fraud and conspiracy to commit wire fraud charges.

As articulated by the Eleventh Circuit in *Jordan*, the standard is whether the withheld evidence, "in the eyes of a ***neutral and objective*** observer, ***could alter*** the outcome of the proceedings." *Jordan*, 316 F.3d at 1252 (emphasis added). In *United States v. Alzate*, 47 F.3d 1103 (11th Cir. 1995), the court of appeals reversed a conviction because the prosecutor had suppressed exculpatory information by not correcting his own "misstatements to the court and the jury." *Id.* at 1107. The issue on appeal was whether the suppressed evidence was material. The Eleventh Circuit pointed out that it was material to the defendant's duress defense and, echoing the later *Jordan* standard, this evidence "could have affected the jury's verdict." *Id*. at 1110. The court was unpersuaded by the government's argument that the defense was not certain to prevail, saying that "it may be that Alzate's duress defense does not amount to much, but he is entitled to put his defense forward free of the prosecutorial misconduct that occurred in this case." *Id*. at 1110 (quoting *United States v. Nash*, 910 F.2d 749, 759 (11th Cir. 1990) (Hill, J., dissenting) ("In the eyes of many, that defense rested on a slender reed indeed, but that reed was all that [the defendant] had to sustain him.")).

#### 1. Category 1 – Cooperation with law enforcement.

The government first argues that "The SPLC's overly broad request for all information regarding any contact between the SPLC and law enforcement - including that unrelated to the F's" has no "connection to" the charges. ECF 128 at 13.

As an initial matter, the government has not obtained or reviewed the information requested. It has no basis to assert that any of the information is "unrelated to the Fs." ECF 128 at

13. Significant portions of the 65,000 hits in the FBI Sentinel database could in fact contain information obtained from the SPLC's informant program—and could show this information led to the successful prosecution of extremist group members. The Court should give zero weight to the government's speculation (unaccompanied by any affidavit) that the information is "unrelated to the Fs" and thus immaterial here.

In fact, the record is to the contrary. The SPLC has offered example after example of its meaningful cooperation with law enforcement, both from its own records and from the government's discovery in this case. The SPLC's letter to the government (attached to ECF 114 as Exhibit 2) identified nine separate times where the government was alerted to the SPLC's cooperation with law enforcement. The weight of the evidence—rather than the weightlessness of the government's speculation—is that the FBI's records would reveal that the SPLC cooperated with law enforcement using its informant program. And that evidence is material and favorable to the defense.

The SPLC's ongoing and consistent cooperation with law enforcement to provide information about violent extremist groups learned through the informant program is material to the wire fraud charges. The government's theory is that the SPLC's website falsely represented that it was "dismantling" extremist groups by operating the informant program. ECF 115 at 1. Evidence showing that the SPLC was sharing information with law enforcement about those extremist groups so that the government could investigate and prosecute those groups would show that the SPLC was using the program to "dismantle" these groups by reporting their illegal activities to law enforcement. Seeking law enforcement efforts to investigate or prosecute extremist groups is an effort to "dismantle," consistent with what the SPLC told its donors it was doing and inconsistent with engaging in a "scheme to defraud."

Beyond that, sharing information with law enforcement about the existence or results of the informant program is material to whether the SPLC had the intent to defraud donors. The Eleventh Circuit has held that this precise type of intent evidence—that the defendant voluntarily provided information to law enforcement—is material within *Brady*. *Severdija*, 790 F.2d at 1561. There, the defendant was charged with conspiracy to possess marijuana with intent to distribute and possession with intent to distribute when the Coast Guard found 8,000 pounds of marijuana on his boat. However, the Eleventh Circuit found a *Brady* violation requiring a new trial because the government had not disclosed a written report of an interview of the defendant. During that interview, two days before the Coast Guard discovered the drugs on his boat, the defendant informed the ensign that "a big load" of marijuana "was coming up in a few days" on a different boat and urged the Coast Guard to "stick around the area." *Id*. at 1557. The Eleventh Circuit rejected the government's argument that the written report was not material. It explained that the written report "provides independent evidence of [Severdija's] state of mind," where intent was a key issue at trial. *Id*. at 1559. As the court of appeals explained, "the fact that Severdija encouraged the continued presence of the Coast Guard in the area of [his boat] constitutes favorable and material evidence wholly consistent with Severdija's defense" that he had no intent to engage in drug trafficking. *Id*. at 1560. The Eleventh Circuit went on to say that "it is unlikely an individual who has a specific intent to conspire to possess marijuana would suggest that the Coast Guard remain in the vicinity of the intended marijuana operation." *Id*.

*Severdija* squarely supports the SPLC's position here. It is "favorable and material" information that the SPLC reported information from its informant program to law enforcement. It is "unlikely" that the SPLC would "suggest" that federal law enforcement investigate extremist groups if the SPLC was actually trying to build up (rather than dismantle) those groups or that the

SPLC would report information from a supposedly illegal, fraudulent program to law enforcement—never mind that they would do so perhaps 65,000 times. The standard in this Circuit is whether that evidence "could alter the outcome of the proceedings," *Jordan*, 316 F.3d at 1252. *Severdija* makes clear that it could.

The government's response is that it "can be true at the same time" that the SPLC cooperated with law enforcement and that the SPLC defrauded donors. ECF 128 at 14. The question for the Court is not whether these two things can both be true but whether the SPLC's cooperation with law enforcement is material to the SPLC's defense. The Eleventh Circuit requires that the Court consider this matter from the perspective of "a ***neutral and objective*** observer," *Jordan*, 316 F.3d at 1252, not adopt the government's biased view of how a future jury may evaluate this evidence. Indeed, at this point, the Court does not know what witnesses will testify, what they will say, whether they will be credible, or even what exhibits the government plans to use to prove its case at trial. The SPLC's cooperation with, and disclosure of, the informant program to law enforcement makes it less likely that the SPLC intended to commit a crime by operating the program.

The government's next argument is that the SPLC's argument is that the donors "got what they paid for" and that defense has been rejected in investor fraud cases. ECF 128 at 14. It relies on two Eleventh Circuit cases addressing post-trial sufficiency-of-the-evidence arguments in investor fraud cases. *Id*. (citing *United States v. Horn*, 129 F.4th 1275 (11th Cir. 2025), and *United States v. Bell*, 112 F.4th 1318 (11th Cir. 2024)). Neither case is about *Brady* and neither addresses the materiality standard here. Instead, those cases address whether the fraudulent scheme caused injury or loss as a matter of law. The SPLC is not seeking this information under *Brady* for reasons related to injury or loss. Even if the government is correct that this information is not material to

challenging this element of wire fraud, the information is material to the SPLC's defenses on the *other* elements of wire fraud, namely false pretenses and intent.[12]

The government's final argument is that this information is not material to the bank fraud or money laundering charges. ECF 128 at 15-17. There is absolutely no authority for that position, and in fact it is contrary to the law. Nothing in *Brady* or any other case requires that information be relevant to every charge in the indictment to be material. This would create a bizarre circumstance where the government could have scores of exculpatory information but decide not to disclose it because it relates only to one charge and not the others.

This information is also necessary for the defense to identify and prepare witnesses for trial, as well as exhibits. It would reveal which FBI agents spoke to which SPLC employees to receive information from the informant program, permitting the SPLC to subpoena those agents to testify at trial about their knowledge of the informant program. Such information may fundamentally change the SPLC's trial strategy, which the Eleventh Circuit has held must be considered by the reviewing court. *See United States v. Spagnoulo*, 960 F.2d 990, 995 (11th Cir. 1992) ("The Neuhring report was 'material' because it could have fundamentally altered the defense's strategy and made an insanity defense a viable option.").

Lastly, and not the least of which, the government has already indicated on at least two occasions that it intends to move *in limine* to preclude (in some form) the SPLC from introducing evidence at trial concerning its extensive past cooperation with law enforcement. *See* 8/19/26 PTC Tr. at 11:9-18 (DAVIDSON: "I expect that also to be a motion *in limine* filed by the government

---

[12] Both *Horn* and *Bell* rely on *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016). The Eleventh Circuit has recognized that the Supreme Court's decision in *Kousisis v. United States*, 605 U.S. 114 (2025), abrogated *Takhalov*. *See United States v. Javat*, No. 19-15168, 2026 WL 1224100, at *4 (11th Cir. May 5, 2026).

regarding what the defendant ought to be able to assert as a defense in this case. . . . [I]f the defense intends to put into evidence like specific instances they allege that information was turned over to law enforcement, and the further step of it resulted in some favorable outcome”). Notwithstanding the improper basis for that argument and motion in light of the allegations in this case, and in addition to the numerous other reasons the SPLC seeks the material in Category 1, such discovery (to the extent it is *Brady*) will be critical to rebutting the government’s anticipated motion *in limine* to bar the evidence on this topic. Otherwise, the SPLC may be unfairly foreclosed from asserting a proper rebuttal and putting the full scope of this issue before this Court.

**2. Category 2 – FBI used the same informants.**

The government contends that information showing that the FBI used some of the same informants as the SPLC is not material, saying only that “it is difficult to imagine any relationship between such information and the specific charges here.” ECF 128 at 4. But the SPLC explained the connection in its motion. ECF 114 at 10-12. The government offers no substantive response or case law to challenge the material nature of this information.

**3. Category 3 – Informant tax records.**

The government argues that “without sufficiently explaining the connection, the SPLC seeks tax records to determine if any of the Fs received favorable treatment on any outstanding tax debts.” ECF 128 at 4. The SPLC explained its reason in its motion, ECF 114 at p. 12-13, and the government offers no response or case law to challenge the material nature of this information.

## IV. The Government’s Claim of Burden Does Not Excuse It from Fulfilling Its *Brady* Obligations.

The government devotes the final section of its opposition to describing how difficult this search would be. ECF 128 at 17-18. The description is offered without any declaration, much less one from a records custodian with first-hand knowledge. Instead, the assertions are only “as

understood by the undersigned." *Id.* at 17. While the SPLC does not suggest that the prosecutor is purposely misrepresenting the underlying facts, such an assertion lacks the detail and certainty necessary for the Court to make a fully informed assessment of those claims.

**A. Burden Is Not an Exception to *Brady*.**

The government identifies no authority holding that the volume of a prosecutor's files excuses the duty to search them, and there is none. The obligation to learn of favorable evidence known to others acting on the government's behalf, *Kyles*, 514 U.S. at 437, is not conditioned on the convenience of discharging it. The former Fifth Circuit implicitly rejected the government's complaint: "the prosecutor has ready access to a veritable storehouse of relevant facts and . . . this access must be shared." *Auten*, 632 F.2d at 481. A storehouse is, by its nature, large; the time it would take to go through it does not excuse the government from its duty to share access.

The existence of a large amount of potential *Brady* material is not a reason to deny the motion here; *Brady* contains no threshold above which the volume of favorable evidence extinguishes the duty to disclose it. And the government cannot seriously claim that the more *Brady* evidence there is, the less need there is to disclose it. That would be perverse: under that formulation, if the government had one piece of evidence suggesting the defendant is innocent, it might disclose it, but if it has ten pieces of evidence suggesting the defendant is innocent, it might not disclose it because there is just so much. In *Auten*, the court declined to excuse disclosure where the prosecution had not sought out information available to it, explaining that to do so "would be inviting and placing a premium on conduct unworthy of representatives of the United States Government." 632 F.2d at 481. A rule under which the volume of favorable evidence excuses the duty to produce it would place that same premium on delay: the longer a prosecutor waits, and the more responsive material accumulates, the stronger the argument that producing it has become too burdensome. *Brady*'s obligation runs in the opposite direction. It attaches because the

government "alone can know what is undisclosed," *Kyles*, 514 U.S. at 437, and it grows with the quantity of favorable evidence in the government's hands, rather than expiring at some threshold.

### B. The Government's Representation of Its Burden Does Not Comport with the FBI's Sworn Description of the Sentinel Case Management System.

The government's description of the process of searching the FBI's records systems includes a representation that any records that predate 2012 would have to be searched in ACS or through paper files, searches that would be "less efficient" than searching in Sentinel. *Id*. at 18.

But the FBI has described those systems under oath in another proceeding, and its description differs from the assertions contained in the Opposition in material respects. The Opposition states that "Sentinel has only been used since approximately 2012," that the FBI previously used "a different system beginning in approximately the early-1990s called ACS," and that "[a] search of that system would need to be conducted" separately and would be "even less efficient" because that system is "DOS-based." ECF 128 at 17-18. But ACS was decommissioned on August 1, 2018, and its data—"including the ACS indices data and digitized investigative records"—was migrated into Sentinel. Ex. 5,[13] Decl. of Michael G. Seidel ¶ 27 (Apr. 30, 2021). It is fully searchable now in Sentinel. *Id.* ("All CRS index data from the UNI application previously searched via ACS is now searched through the 'ACS Search' function within Sentinel."). Absent the government providing some explanation for the space between the Oppositon's claims and those of Mr. Seidel under oath, it would appear that the government need not conduct a separate search of ACS or of any field office records.

It also appears that, contrary to the Opposition's assertion, Sentinel contains records going further back than 2012. According to the FBI, ACS became operational FBI-wide on October 1,

[13] Exhibits 1 through 4 were attached to ECF 114.

1995, and its implementation converted "over 105 million CRS records" from the FBI's prior automated systems into a single consolidated system. *Id.* ¶ 24. An index search of ACS was "capable of locating FBI records in both paper and electronic format created before its 1995 FBI-wide implementation." *Id.* ¶ 25. Older records never indexed into that system "remain searchable by manual review of index cards, known as the 'manual indices.'" *Id.* ¶ 25 n.6. And the Central Records System that Sentinel queries "spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI field offices, and FBI legal attaché offices worldwide." *Id.* ¶ 20.

## V. The SPLC Will Agree to a Narrowing of the Timeframe.

The government proposes that "the SPLC should be required to identify the circumstances of any instance where it shared information to narrow the scope of the search." ECF 128 at 9. But that is not a narrowing measure; it is a condition the SPLC cannot satisfy because it cannot identify all the circumstances for the reasons explained above. The Supreme Court has rejected this allocation of responsibility. "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004).

The SPLC is willing to narrow its requests to the time frame in the second superseding indictment and only seek information between 2007 and 2023.

## VI. The Court Should Hold an Evidentiary Hearing Before Resolving the Government's Claim of Burden.

An evidentiary hearing is necessary to resolve the contested facts before the Court, particularly in light of the government's unsupported—and at times contradicted—assertions regarding the FBI's database. *See supra* Sec. IV. The Federal Rules provide that the Court "may . . . schedule a motion hearing," Fed. R. Crim. P. 12(c)(1), and "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record," Fed. R. Crim. P.

12(d). In *In re Sealed Case*, the D.C. Circuit remanded for "a further evidentiary hearing to resolve whether there exists any *Brady* information and whether such information was material," describing that disposition as "the course we have followed in other cases." 185 F.3d at 898 (citing *United States v. Brooks*, 966 F.2d 1500, 1504-05 (D.C. Cir. 1992), and *United States v. Lloyd*, 992 F.2d 348, 352 (D.C. Cir. 1993)). Here, findings regarding how the prosecution team's own records can be searched, and the burden (or lack thereof) of doing so are factual findings, and they should rest on evidence rather than on the representations of counsel, particularly since those representations differ from the FBI's sworn statements in other cases.

The SPLC accordingly requests a hearing at which a witness with personal knowledge of the FBI's records systems, and of the search conducted on August 20, 2026, can testify concerning: (1) what systems the FBI maintains and what periods each covers; (2) whether records from the predecessor system (called "ACS") are searchable through Sentinel and any barriers to searching those records for the period 2007 to 2023; (3) what terms and parameters were used in the August 20 search and what alternatives are available including Boolean searches that could limit the results to records showing the SPLC or its informants were a source of information; (4) how many records (as opposed to "hits") were returned by the search; (5) how long it would take to download the records containing those hits; (6) whether the SPLC's name was "indexed" and thus tagged as important by the FBI agent who initially entered the record into Sentinel; (7) the types of case classifications for each of the 170 cases that were part of the response[14]; (8) whether the FBI has

---

[14] Each case in the Sentinel database has a classification number. A review of the case numbers and classification numbers for the 170 cases may help narrow the relevant cases. For example, the FBI has classification numbers for matters that may be particularly relevant here, such as domestic terrorism, domestic security, and civil rights. https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/freedom-of-information-privacy-act/fbi-privacy-act-systems/63-fr-8659.

searched for each of the SPLC's informant names to learn whether they were informants for the FBI during the same or other time periods as requested for Category 2; and (9) whether any of the records returned by the search are classified. The SPLC estimates that such a hearing would require no more than two hours. In the alternative, the SPLC requests that the Court direct the government to submit a declaration from a person with knowledge addressing these subjects, and permit the SPLC to respond.

## CONCLUSION

The Court should intervene to ensure due process and the fair administration of justice in this case. For the foregoing reasons, and any others that may appear to the Court at a hearing on this motion, the Southern Poverty Law Center respectfully requests that the Court grant its Motion to Compel.

Dated: August 28, 2026

Respectfully Submitted,

/s/ *Addy R. Schmitt*
Addy R. Schmitt (DC Bar No. 489094)
Andrea L. Moseley (DC Bar No. 502504)
Sara E. Kropf (DC Bar No. 481501)
Janelle Geddes (TN Bar No. 035141)
Kropf Moseley Schmitt PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Telephone: (202) 627-6900
addy@kmlawfirm.com
andrea@kmlawfirm.com
sara@kmlawfirm.com
janelle@kmlawfirm.com

/s/ *Abbe David Lowell*
Abbe David Lowell (DC Bar No. 358651)
David A. Kolansky (NY Bar No. 5887765)
Isabella M. Oishi (DC Bar No. 90018056)
Lowell & Associates, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Telephone: (202) 964-6110
alowellpublicoutreach@lowellandassociates.com
dkolansky@lowellandassociates.com
ioishi@lowellandassociates.com

William C. Athanas (ASB-4639-A59A)
Brianna R. Stone (ASB-0400-Y40J)
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8996
Facsimile: (205) 521-8800
bathanas@bradley.com
bstone@bradley.com

*Counsel for the Southern Poverty Law Center, Inc.*