IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:26-CR-139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, | ) | |
| INC. and HEIDI BEIRICH | ) | |

# ORDER

Before the Court is Defendant the Southern Poverty Law Center's Motion to Show Cause Regarding the Superseding Indictment (Doc. 53) and its reply (Doc. 75).[1] The Government opposes the motion (Docs. 69).[2]

## I. PROCEDURAL BACKGROUND

The SPLC's former informant program is at the center of the charges against Defendants. The initial investigation of the SPLC informant program began in 2019; it was closed, and then reopened in 2025. Doc. 112 at 4–5.

### A. Charging Documents

On April 21, 2026, the grand jury returned an indictment (Doc. 1) charging SPLC with 11 counts:

- Counts 1–6 charged violations of 18 U.S.C. § 1343 for Wire Fraud beginning in or about 2014 and continuing through at least August 2023 and related to specific wire communications on or about April 25, 2023;

- Counts 7–10 charged violations of 18 U.S.C. § 1014 for False Statements to a Federally Insured Bank related to statements on or about December 20,

[1]The SPLC's supplement to its motion (Doc. 98) is addressed separately.
[2]Defendant Heidi Beirich has taken no position on this motion. The issue addressed in this order relates to an iteration of the charges preceding Beirich being charged.

2016; and

- Count 11 charged violation of 18 U.S.C. § 1956(a)(1)(B)(i) for Conspiracy to Commit Concealment Money Laundering related to events beginning in or about 2014 and continuing through at least August 2023.

On June 2, 2026, the grand jury returned a superseding indictment (Doc. 51) charging the SPLC in the same 11 counts with a revised timeline and some rephrasing:

- Counts 1–6 charged violations of 18 U.S.C. § 1343 for Wire Fraud beginning in or about 2010 and continuing through at least August 2023 and related to specific wire communications on or about April 25, 2023;

- Counts 7–10 charged violations of 18 U.S.C. § 1014 for False Statements to a Federally Insured Bank related to statements on or about December 20, 2016; and

- Count 11 charged violation of 18 U.S.C. § 1956(a)(1)(B)(i) for Conspiracy to Commit Concealment Money Laundering related to events beginning in or about 2010 and continuing through at least August 2023.

Then, on August 11, 2026, the grand jury returned a second superseding indictment (Doc. 115) charging the SPLC and Heidi Beirich:

- Count 1 charges the SPLC and Beirich with Wire Fraud Conspiracy related to events January 2007 through August 2023 in violation of 18 U.S.C. §§ 1343, 1349;

- Counts 2–7 charge the SPLC with Wire Fraud in violation of 18 U.S.C. § 1343 related to events on or about January 2007 through August 2023 and related to specific transactions on April 25, 2023;

- Count 8 charges the SPLC and Beirich with Conspiracy to Submit False Statements to a Federally Insured Bank in violation of 18 U.S.C. §§ 1014, 371 related to events on or about January 2007 through August 2023;

- Counts 9–12 charge the SPLC with violations of 18 U.S.C. § 1014 for False Statements to a Federally Insured Bank related to statements on or about December 20, 2016;

- Count 13 charges the SPLC and Beirich with Conspiracy to Commit Concealment Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h) related to events beginning in or about 2007 and continuing through at least August 2023; and

- Count 14 charges the SPLC with Concealment Money Laundering related to events on or about January 24, 2023, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

For purposes of the issues addressed here, the June 2 superseding indictment is the relevant charging document.

B. <u>Draft Superseding Indictment</u>

On the morning of June 2, 2026, before the grand jury was presented the superseding indictment, the United States Attorneys Office sent the Department of Justice—Public Affairs Office (DOJ–PAO) "an advance copy of the draft superseding indictment it intended to present to the grand jury." Doc. 69 at 1. As it turned out, this version was not presented to the grand jury. Doc. 69 at 2.

Instead, before presenting the superseding indictment to the grand jury, the USAO revised the draft.[3] According to the Government, before presenting it to the grand jury, "minor, non-substantive grammatical changes were made to the verbiage in what [became] paragraphs 20 and 21 of the superseding indictment." Doc. 69 at 2. This final version was not sent to DOJ–PAO. The Government says it provided the draft to the DOJ-PAO for the purpose of enabling the "individuals who know nothing about the case [to] adequately prepare for potential press inquiries." Doc. 69 at 1–2.

On June 2, 2026, at 1:58 p.m., after the grand jury deliberated and returned a true

[3] The draft sent to DOJ–PAO has not been provided to the Court.

bill, the superseding indictment was time-stamped received by the Clerk's Office. Doc. 51. Thereafter, the Clerk's Office docketing process began.

On June 2, 2026, at 6:34 p.m., Emily Covington of the DOJ–PAO emailed unknown recipients[4] with the subject line: "Flagging: Superseding Indictment returned by Grand Jury today re SPLC[.]" The email identified, "[s]ome notable new sections" and attached the earlier-provided draft superseding indictment. Doc. 53-1.

On June 2, 2026, by 8:33 p.m., defense counsel "started to get calls from the media asking for a comment on a superseding indictment." Doc. 53-3. Defense counsel reported to the Government's counsel that media had a Word version of a superseding indictment document that was not signed or stamped. *Id.* Other media contacted the SPLC's counsel thereafter about the superseding indictment. Doc. 53-2. Media also reported that the copy received by email did not have a stamp on it and did not appear on the docket, yet. *Id.* The SPLC asserts that two online articles were written about the emailed superseding indictment, noting it was not yet on the docket. Doc. 53 at 4.

As shown below, on June 3, 2026, at 11:39 a.m., the superseding indictment, which had been time-stamped received June 2, 2026, at 1:58 p.m., was docketed and made electronically available on the docket.

---

[4] The list of recipients is not in the record before the Court.

**Notice of Electronic Filing**

The following transaction was entered on 6/3/2026 at 11:39 AM CDT and filed on 6/2/2026
**Case Name:** USA v. Southern Poverty Law Center, Inc.
**Case Number:** 2:26-cr-00139-ECM-KFP
**Filer:**
**Document Number:** 51

**Docket Text:**
**SUPERSEDING INDICTMENT as to Southern Poverty Law Center, Inc. (1) count(s) 1s-6s, 7s-10s, 11s. (Forfeiture Allegations) (KCF)**

Because the superseding indictment named no new defendants, it was not sealed and was immediately available on the electronic docket.

## II. INTRODUCTION

As relevant here, the pending motion argues the Government violated the grand jury secrecy protected by Rule 6(e), Fed. R. Crim. P., through the Government's admitted revelation of a draft superseding indictment.

## III. APPLICABLE LEGAL STANDARD

As this Court has noted, the grand jury is protected by secrecy, and this coverage is vital to its work. Doc. 71 at 3–4; *see also In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 213 (5th Cir. 1980)[5] ("The Supreme Court has consistently acknowledged the importance of the secrecy requirements imposed upon grand jury proceedings to the proper functioning of the grand jury system.") (citations omitted); *United States v. Papaioanu*, 10 F.R.D. 517, 518 (D. Del. 1950)[6] (reviewing Judge Learned Hand's refusal to allow a criminal defendant to inspect materials presented to the grand jury and

---

[5] Opinions issued by the former Fifth Circuit prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).
[6] Here, and elsewhere in this order, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

referencing "the orthodox view that all proceedings before the Grand Jury should remain secret unless extraordinary circumstances are present"). The Federal Rules of Criminal Procedure set forth this protection and prohibit from disclosure "matter occurring before [a] grand jury." Fed. R. Crim. P. 6(e).

The Rule is not, however, a carte blanche protection. "[D]ocuments that reveal some *secret aspect* of the grand jury investigation" fall within the confines of Rule 6(e) "matters occurring before a grand jury." *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) (citing *Lance*, 610 F.2d at 216–17; 8 J. Moore, *Moore's Federal Practice* para. 6.05[6] (2d ed. 1987)) (emphasis added). Likewise, there are limitations on to whom the prohibition applies. Only the following individuals are subject to the secrecy rule: "(i) a grand juror; (ii) an interpreter; (iii) a court reporter; (iv) an operator of a recording device; (v) a person who transcribes recorded testimony; (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)." Fed. R. Crim. P. 6(e)(2)(B). Thus, for example, "disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e)." *Lance*, 610 F.2d at 217 (citations omitted).

The former Fifth Circuit set forth the applicable test for assessing whether a prima facie case of a Rule 6(e)(2) violation has been made. *Lance*, 610 F.2d at 216–19. "The first step in a Rule 6(e)(2) proceeding is, of course, to determine whether the target's proffer of evidence demonstrates a violation of the Rule. Typically, the target proffers affidavits or news articles suggesting that grand jury matters have been disclosed improperly." *Blalock v. United States*, 844 F.2d 1546, 1551 (11th Cir. 1988) (citing *Lance*,

610 F.2d at 216–18; *United States* v. *Eisenberg*, 711 F.2d 959, 961 (11th Cir. 1983)). The challenge does not move forward if there is no prima facie case; no evidentiary hearing is necessary. *Id*. (citation omitted). The court must consider the following factors in assessing whether the prima facie showing has been made:

> (1) whether there is "a clear indication that the [disclosure involved] 'matters occurring before the grand jury,'" *Lance*, 610 F.2d at 216; (2) whether it appears that the disclosure was made by a person subject to Rule 6(e)(2)'s requirement of secrecy, *id.* at 217; (3) whether the relief requested will interfere with the grand jury proceedings, *id.* at 219; and (4) whether the government has sufficiently rebutted the target's showing. *Id.*

*Blalock*, 844 F.2d at 1551.

## IV. DISCUSSION

The analysis of whether a prima facie Rule 6 violation is shown must begin with determining whether the challenged disclosures concern a matter occurring before the grand jury as described in Rule 6(e)(2). *See Lance*, 610 F.2d at 216.

The SPLC relies on *Judicial Watch v. Nat'l Archives & Records Admin*., 214 F. Supp. 3d 43, 48 (D.D.C. 2016), to argue the draft indictment released here is subject to the grand jury secrecy rule, and the Government disclosure warrants an evidentiary hearing.

In *Judicial Watch*, the plaintiff, a government watch dog organization, sued the National Archives under the Freedom of Information Act, seeking draft proposed indictments against former First Lady Hillary Clinton. *Judicial Watch*, 214 F. Supp. 3d at 48–49. The district court accepted the reasoning presented in the Archives' declaration that, "[b]ecause a draft indictment is inextricably tied to the Grand Jury process, the

development of the indictment, illuminated as each draft carefully refines the argument for charging the accused individuals, provides a roadmap to that process." *Judicial Watch*, 214 F. Supp. 3d at 54 (alteration in original). Therefore, the district court concluded,

> [T]he drafts of the proposed indictment would disclose the identity of individuals who actually testified before the grand jury and who the independent counsel considered calling as witnesses, as well as the inner workings of the federal grand jury process that would necessarily show the potential direction of the grand jury proceedings, given that the independent counsel likely drafted the documents based on testimony and other information presented to that body.

*Id*. The court found the edits in the draft superseding indictment revealed "the development of the indictment." *Judicial Watch*, 214 F. Supp. 3d at 54 (citation omitted). Because matters occurring before the grand jury would be revealed in the draft indictments, the drafts were subject to Rule 6(e) protection. *Id*. at 53–55.

The Government seeks to distinguish the current circumstances from those in *Judicial Watch*. Doc. 69 at 6. Unlike the SPLC, Clinton was never indicted, so none of the draft indictments prepared to charge Clinton ever became public (and final). Further, the SPLC had been indicted once, and the superseding indictment did not add any additional charges or defendants. The superseding indictment revised wording from the original indictment, but the revisions did not result in any new charges. According to the Government, the distinctions in the prematurely released draft and the superseding indictment returned by the grand jury appear in only two paragraphs. *See* Doc. 69 at 2.

The SPLC disagrees and argues *Judicial Watch* advises in favor of a Rule 6(e) violation here. The SPLC cites the changes in paragraph 21. The draft paragraph 21 read as follows, "The objective of the scheme and artifice was to obtain money via donations

through materially false representations and omissions about what the donated funds would be used for." Doc. 53 at 5 (quoting the draft document). The superseding indictment, paragraph 21 reflected the following changes, "The objective of the scheme and artifice was to obtain money via donations through materially false representations as well as by omissions of material facts about what the donated funds would be used for." Doc. 51 (emphasis added).[7] Because the draft superseding indictment was released and is different from the charging document returned by the grand jury, the SPLC argues its release establishes a basis for an evidentiary hearing on a Rule 6(e) violation.

While *Judicial Watch* may be generally informative because it deals with release of a draft indictment, it is not binding in this case. The undersigned must consider the context of the disclosure here in ascertaining whether there is "a clear indication that the [disclosure involved] 'matters occurring before the grand jury,'" *Blalock*, 844 F.2d at 1551 (alteration in original). Here, both the substance and the timing of that context play a critical role in the analysis. The undersigned finds the circumstances presented sufficiently distinguishable from those in *Judicial Watch*, and it is not persuasive for that reason here.

Substance of the changes

The moderate changes reflected between the draft and final document do not reveal the kind of secret roadmap to the grand jury's investigation and deliberation that warrants protection. For example, the changes do not reveal the substance of testimony, the identity

[7] The Government also states that a non-substantive change appears to verbiage in paragraph 20. Doc. 69 at 2. The draft is not in the record, but the Court notes that the SPLC does not take issue with the Government's characterization of this change between the documents, and the SPLC only cites to the change in paragraph 21.

of witnesses, or the questions of the grand jurors. *See Judicial Watch*, 214 F. Supp. 3d at 53 ("[T]he touchstone is whether disclosure would 'tend to reveal some secret aspect of the grand jury's investigation,' such as 'the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors and the like.'") (quoting *Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)). Instead, the changes at issue reflect only rephrasing or syntax edits. Based on what is in the record, the undersigned finds fitting the Government's characterization of the changes as "minor, non-substantive grammatical changes . . . to the verbiage." Doc. 69 at 2. Thus, the changes do not illuminate any "secret aspect of the grand jury's investigation." *Judicial Watch*, 214 F. Supp. 3d at 53 (citation and quotation marks omitted).

<u>Timing of release</u>

Also critical to the assessment of the context and whether the disclosure revealed some secret working of the grand jury is the timing of the disclosure—it came after the grand jury returned the superseding indictment. And because the superseding indictment did not charge any new parties, it was not due to be held under seal, as would be necessary, for example, if a new party were named. If a new party were named, the charging document would remain under seal until an arrest could be made.

The following timeline is illustrative:

| | | |
|---|---|---|
| July 2, 2026 | unknown time in the morning | USAO sent draft indictment to PAO for purpose of preparing for inquiries |
| July 2, 2026 | unknown time later in the morning | USAO edited paragraphs 20 and 21 |
| July 2, 2026 | afternoon | Grand jury returned true bill |
| July 2, 2026 | 1:58 p.m. | Clerk's office stamped the superseding indictment |
| July 2, 2026 | 6:34 p.m. | POA emailed media with earlier draft superseding indictment Doc. 53-1 |
| July 2, 2026 | 8:33 p.m. | SPLC counsel asked USAO about media calls re superseding indictment received "earlier this evening" |
| July 3, 2026 | 11:39 a.m. | Superseding indictment docketing transaction was entered for the July 2, 2026, filed superseding indictment |

This timeline highlights that the grand jury's true bill was issued before the draft was released, albeit, the release came before the electronic docketing. Thus, the grand jury's deliberations were complete and their decision had been finalized before the draft went out. Because of that timing, the draft disclosure was not a revelation of the grand jury's secret investigation or deliberation. *See In re Grand Jury Matter (Catania)*, 682 F.2d 61, 64 n.4 (3d Cir. 1982) ("The material also includes draft indictments prepared by the U. S. Attorney. Although these were prepared after the grand jury deliberations began and might be based on knowledge of the grand jury proceeding, they do not reveal any grand jury information on which they might be based. The draft indictments therefore fall outside Rule 6(e).").

## V. FINDINGS

These circumstances are unique. No case presenting similar facts has been cited by the parties and the undersigned has not located one. Based on the particular facts here, the undersigned finds the information revealed in the draft superseding indictment was not a secret matter before the grand jury because the draft contained the same charges against the same defendant, the draft and indictment were nearly identical and reflected changes only in moderate verbiage, and the superseding indictment was already returned by the grand jury at the time the draft was erroneously distributed. As discussed below, the Government erred significantly in its conduct, but the critical question at this stage of the Court's inquiry is whether that error involved "matters occurring before the grand jury." *Blalock*, 844 F.2d at 1551 (citation omitted). The minimal changes between the draft and superseding indictment offer no such insights; at most, far from any substantive testimony or deliberations that would have been before the grand jury, they reflect the granular editorial preferences of the superseding indictment's drafters. And any substantive allegations contained in the draft carried over into the resulting superseding indictment, which the grand jury had already returned by the time of the draft's distribution.

Accordingly, the undersigned finds that the SPLC fails to establish a prima facie case of a Rule 6(e) violation with respect to the draft superseding indictment and no show cause evidentiary hearing is appropriate on this ground. The SPLC has not established the first part of the prima facie showing that disclosure involved secret "matters occurring

before the grand jury."[8]

## VI. ADMONISHMENT

While no evidentiary hearing requiring the Government to respond with evidence is necessary, there is no doubt the Government made a monumental misstep in disclosing the draft. The Government acknowledges, "There is no dispute that this was an error." Doc. 69 at 1. The Government should never have provided a *draft* charging document to its POA. The Government compounded its error by sharing the draft as a Microsoft Word document with accessible metadata. *See* Doc. 53 at 2–3.

**The Government is strongly admonished for its carelessness both in judgment and in process**. In a different set of circumstances, a disclosure of a draft indictment could be a Rule 6(e) violation. But not here. Even so, "prosecutors must expect . . . reasonable steps to correct prosecutorial conduct that is not right." *United States v. Wilson*, 149 F.3d 1298, 1304 (11th Cir. 1998). And the undersigned finds that admonishment is a reasonable step here, where—had there been more substantive changes between the draft and the superseding indictment—the Government may not have avoided a hearing and potential sanctions.

As Judge Wilson of the Eleventh Circuit once noted, "Prosecutors must hold themselves to a higher standard. As they carry out their duty to seek justice, they must strive to conduct themselves with the utmost professionalism, 'even when the ethical rules and constitutional requirements do not bar the behavior' in question." *United States v.*

[8] Based on this finding, the undersigned concludes it is unnecessary to consider the other factors. *See Blalock,* 844 F.2d at 1551.

*Wheeler*, 16 F.4th 805, 831 (11th Cir. 2021) (Wilson, J., concurring) (quoting Charles R. Wilson, *"That Justice Shall Be Done"—Constitutional Requirements, Ethical Rules, and the Professional Ideal of Federal Prosecution*, 36 N. Ill. U. L. Rev. 111, 135 (2015)); *see also* Doc. 50 at 4–5.

**VII. CONCLUSION**

For the foregoing reasons, it is ORDERED that the motion (Doc. 53) is DENIED as to the request for a show cause hearing regarding the release of the draft indictment.

DONE this 6th day of November, 2026.

KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE