IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:26-cr-00139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. and | ) | |
| HEIDI BEIRICH | ) | |

**UNITED STATES' MOTION IN LIMINE TO EXCLUDE NULLIFICATION ARGUMENTS OR EVIDENCE**

The United States intends to present evidence at trial that the Southern Poverty Law Center, Inc. (the "SPLC") used a secret program—called the "F Program"—to pay leaders and organizers of extremist groups. These individuals used the SPLC's funds to further the extremist groups' operations. Many of these financial relationships spanned years, and former executive Heidi Beirich ("Beirich") had a personal relationship with one of the recipients. Meanwhile, the SPLC and Beirich concealed the fact that they paid and supported members of extremist organizations through fictitious entities from donors and banks. An indictment charges the SPLC and Beirich with fraud arising from that deception. As a potential defense, the United States anticipates that the SPLC and Beirich may attempt to offer evidence about the SPLC's other work or claim that the SPLC ran the F Program for good reasons, such as to provide information to law enforcement. Such excuses are irrelevant, invite nullification, prompt confusion, and constitute inadmissible character evidence. A pretrial ruling is appropriate to address these concerns. Thus, the United States submits this motion in limine for an order to exclude such improper and inadmissible evidence or arguments.

## I. Background

A grand jury in this district has charged the SPLC and Beirich with financial crimes related to the F Program. Doc. 115. The indictment[1] alleges that the SPLC is a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code and that it relied on donor giving for the source of its funding. *Id.* at 2. It asserts that the SPLC's public materials describe it as "a catalyst for racial justice" that works "in partnership with communities to dismantle white supremacy, strengthen intersectional movements, and advance the human rights of all people." *Id.* The indictment indicates that the SPLC also publishes information about groups or individuals that it deems to promote extremism. *Id.* at 2-3.

The indictment asserts that the SPLC created the F Program in the 1980s and funneled at least $4.1 million through the program between 2007 and 2023. *Id.* at 3-4. As the indictment sets out, individuals who received F Program funds used that money to recruit new members, pay themselves, and otherwise build and grow the extremist groups they led or with which they were affiliated. *Id.* at 4. The indictment alleges that Beirich oversaw some of these payments. *Id.* at 7.

Ultimately, the indictment charges the SPLC and Beirich with conspiracy to commit wire fraud, conspiracy to submit false statements to banks, and conspiracy to commit concealment money laundering. *Id.* at 14, 17, 22. It charges the SPLC with substantive acts of wire fraud, false statements, and money laundering, too. *Id.* at 15, 20, 23.

During pretrial litigation, the SPLC moved to compel the United States to produce evidence about its purported efforts to share information with law enforcement. Doc. 114. It argues that

---

[1] The operative charging document referenced in this motion in limine is the second superseding indictment, *see* Doc. 115, which herein will just be referred to as "the indictment."

evidence of cooperation between the SPLC and law enforcement on extremism is exculpatory. *Id.* at 13–17. The United States opposed the SPLC's motion, asserting that the prosecution team did not hold any of the purported evidence that the SPLC demanded and that it is immaterial regardless. Doc. 128 at 4–17. The parties conferred on the dispute without a resolution and submitted additional briefs on the matter. Docs. 157, 169, 174.

## II. Legal Standards

As an evidentiary gatekeeper, this Court should exclude irrelevant evidence. *See United States v. Ware*, 758 F.2d 557, 558 (11th Cir. 1985) (affirming district court's grant of government's motion in limine to exclude irrelevant evidence). In that same vein, it may exclude evidence that is pertinent only to jury nullification. *United States v. Funches*, 135 F.3d 1405, 1408–09 (11th Cir. 1998). Even if evidence is relevant for some proper purpose, the Court still may exclude it if it bears a strong risk of confusing or misleading the jury. *United States v. Starr*, 159 F.4th 901, 907–08 (11th Cir. 2025). A motion in limine is an appropriate vehicle to exclude improper evidence. *In re Grand Jury Proceedings*, 142 F.3d 1416, 1428 (11th Cir. 1998) (acknowledging that a motion in limine would be appropriate to exclude improper evidence); *see also Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1178 (11th Cir. 2013) (concluding that a definitive ruling on a motion in limine preserves an issue for appellate review).

## III. Discussion

The United States intends to prove at trial that the SPLC and Beirich violated the law when they hid the fact that they paid leaders and members of extremist groups through fictitious entities from donors and banks. America's charitable and financial systems depend on transparency to prevent wrongdoing. At trial, the United States will present evidence that the SPLC and Beirich

thwarted those frameworks through the F program by concealing direct payments to members of extremist organizations, who then used the SPLC's donated funds to support those extremist groups.

Despite the focused allegations about this scheme in the indictment that the United States intends to prove at trial, it appears the SPLC and Beirich intend to offer argument and evidence about the F program generally, beyond basic background information about the program. For example, upon information and belief, the SPLC has said that "the defense may offer testimony and evidence about the origins of the informant program and its purpose and use over time." Doc. 114-2 at 3. The SPLC also has taken the position that "documents showing that the SPLC provided information to any federal law enforcement agency between 1980 and December 31, 2023[2], about any hate or extremist groups or any individuals associated with them" could be considered exculpatory material—signaling that presumably the SPLC will attempt to offer such evidence at trial. Doc. 114-1 at 4.

But it does not matter if the SPLC and Beirich believed that they had good reasons to run such a clandestine program or whether the SPLC did other valid charitable work. Nor does it matter if the SPLC provided information to federal law enforcement about extremist activity during the charged timeframe in the indictment, or at all for that matter. Any evidence along those lines would be irrelevant, invite nullification, encourage confusion, and consist of inadmissible character evidence. Hence, this Court should exclude such argument and evidence. *See* Fed. R. Evid. 402, 403, 404(a).

---

[2] The SPLC has since changed its requested time frame to 2007-2023. Doc. 157 at 28.

**A. It is irrelevant whether the SPLC has done good work or pursued the F Program for good reasons.**

The United States maintains that the SPLC and Beirich used fraudulent means to conceal the fact that they paid leaders and members of racist groups through the F Program. It expects the trial evidence to show that the SPLC and Beirich misled donors to obtain more donations and made false statements to banks that opened accounts for fictitious entities that were used to funnel the SPLC's money to those affiliated with extremist groups. Based on those fraudulent means, the SPLC and Beirich committed federal crimes. It does not matter whether the SPLC and Beirich used or intended to use the F Program to serve good or beneficial ends. Instead, what matters is that the SPLC and Beirich sought to dupe donors and financial institutions.

Typically, relevant evidence is admissible, while "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Evidence is relevant to a matter if "it has any tendency to make a fact more or less probable" than otherwise and if "the fact is of consequence in determining the action." *Id.* at 401. A court has substantial leeway to probe relevance. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1105 (11th Cir. 2005). The inquiry usually requires careful consideration of the elements of a cause of action along with the parties' theories. *Id.* at 1105–06 (upholding exclusion of evidence about other inmates' suicides because the evidence was irrelevant to a particular inmate's suicide risk).

Here, evidence about the general purpose and use of the F program over time does not have a tendency to make a fact more or less probable concerning whether the SPLC and Beirich misled donors by hiding the fact that they were paying the members of extremist groups that they claimed they were trying to dismantle. For example, the United States intends to prove at trial that, as part of this scheme, the SPLC hid the fact that it paid two individuals, who used that money to attend

extremist rallies, to purchase materials to make Ku Klux Klan garments for others, and to reimburse for cross-burning events. Doc. 115 at 10. The United States also intends to prove that the SPLC and Beirich conspired to submit false statements to banks by hiding the fact that the SPLC controlled the fictitious entities that would be used to pay members of extremist groups through those fictitious entities. Doc. 115 at 17-20. But evidence about whether the SPLC provided information over the years to federal law enforcement about extremist groups simply is not relevant to these alleged criminal acts. That is so because such evidence would not be a fact of consequence to determining whether the defendants committed those alleged crimes. Precedent supports this commonsense conclusion in several respects.

First, any evidence about whether the SPLC had good intentions for creating the F program or whether it attempted to provide information to law enforcement is not relevant. A valid—or even laudable—goal does not justify or excuse the use of criminal means to achieve it. *United States v. Martinez*, 156 F.4th 1185, 1201 (11th Cir. 2025). The defendant in *Martinez* sought to defend against ivory smuggling charges by arguing that the ivory he sought to import fell within federal exemptions for antiques or minimal ivory quantities. *Id.* at 1191–92, 1201. The Eleventh Circuit upheld the district court's exclusion of the exemption evidence, however, because it was irrelevant. *Id.* at 1201. The ultimate legality of the defendant's end (importation) did not excuse the illegality of the means that the defendant employed to arrive at that end (false statements and failure to provide appropriate documentation). *Id.* As the Court explained, a person cannot avoid a duty to disclose items "'by hiding them in his stockings and other personal luggage.'" *Id.* (quoting *United States v. Ritterman*, 273 U.S. 261, 269 (1927)). *Martinez* demonstrates that evidence of a lawful goal is irrelevant to a charge that the defendant resorted to unlawful means to achieve that

objective.

*Martinez*'s reasoning accords with the principle that neither a good defendant nor a bad victim excuses a crime. A defendant generally cannot point to prior examples of good conduct to defend against criminal charges. *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983). *Russell* upheld the exclusion of testimony about a defendant's cooperation with law enforcement in other matters and good behavior in other affairs. *Id.*; *see also United States v. Estrada*, 969 F.3d 1245, 1273 (11th Cir. 2020) (approving the exclusion of evidence of legitimate immigration activities to refute intent to operate unlawfully). In that same vein, the former Fifth Circuit upheld the exclusion of evidence that a defendant purchased some cars legally to defend a charge of transporting other stolen cars in interstate commerce. *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (treating as binding all decisions by the former Fifth Circuit issued before the close of business on September 30, 1981).

Turning to this case, evidence that the SPLC and Beirich intended to, or even did, good acts through the F program or otherwise is irrelevant to the charged crimes. At the roots, these criminal charges arise from wire fraud, false statements, and money laundering. A defendant commits wire fraud if the defendant uses wires to transmit information to further "any scheme or artifice to defraud" someone of money or property. 18 U.S.C. § 1343. Likewise, a defendant commits a crime if the defendant knowingly makes a false statement to a federally insured bank to influence the bank's actions. *Id.* at § 1014. Then, a defendant commits money laundering if the defendant participates in a financial transaction knowing that the transaction is designed to conceal

the proceeds of a specified unlawful activity such as wire fraud. *Id.* at §§ 1956(a)(1)(B)(i), 1956(c)(7)(A), and 1961(1). In addition to these substantive offenses, it is a crime to conspire to commit these crimes. *Id.* at §§ 371, 1349, 1956(h).

None of these alleged crimes, as charged in the indictment, would involve questions of proof of whether it was more or less probable that the SPLC and Beirich intended to do good acts with the F program. More specifically, general evidence that the SPLC and Beirich may have provided information to federal law enforcement over the years runs afoul of the general rule in *Russell* that evidence of prior cooperation with law enforcement is simply not relevant.

Second, any evidence offered to attempt to justify operating a program like the F program because of the defendant's belief that it was necessary to combat extremism is also not relevant. A defendant generally cannot excuse a crime by attacking the victim, either. *Taylor v. Sec'y, Fla. Dept. of Corrs.*, 760 F.3d 1284, 1295–96 (11th Cir. 2014) (concluding that a victim's cocaine use was irrelevant to whether she consented to sex on the night of her murder, the relevant issue in the case); *see also Brown v. State*, 512 S.E.2d 260, 263 (Ga. 1999) (eschewing "irrelevant character assassination of the victim"), *and Houston v. State*, 565 So. 2d 277, 281 (Ala. Crim. App. 1990) (stating that a victim's "character was irrelevant and immaterial"). Along these lines, courts have rebuffed efforts to mount so-called "Robin Hood" defenses to justify unlawful acts. *United States v. Solomon*, No. 24-CR-665(LAP), 2026 WL 621352, at *3–*4 (S.D.N.Y. March 5, 2026) (denying discovery); *see also United States v. Gatto*, 986 F.3d 104, 132–33 (2d Cir. 2021) (Lynch, J., concurring in part) (observing that a Robin Hood defense "is of course also not a legal defense").

Of course, the prosecution may introduce evidence of motive to help a jury make sense of the case, and a defendant may refute such a claim of motive. *See United States v. Hill*, 643 F.3d

807, 843 (11th Cir. 2011) (recognizing the general premise that motive evidence always is relevant). A defendant's right to refute a motive, however, does not convert into a right to present irrelevant excuses for criminal activity. Instead, a court should probe relevance carefully in every case to ensure that evidence actually relates to the specific claims or charges at issue. *See Cook*, 402 F.3d at 1104–06 (considering the relevance of suicide evidence to the specific claims that the plaintiff asserted).

As noted above, evidence that the SPLC and Beirich did bad acts for good reasons through the F program or otherwise is irrelevant to the charged crimes. It is no defense whether the SPLC and Beirich believed in their work. The First Circuit soundly rejected a defendant's efforts to defend against a wire fraud conviction because he believed in the efficacy of the drugs he peddled fraudulently. *United States v. Arif*, 897 F.3d 1, 9–11 (1st Cir. 2018). Rejecting that defense, the First Circuit focused on the specific misrepresentations that the defendant made. *Id.* at 9. The defendant promoted the drugs with false information that was "designed to give false comfort to buyers, in order to induce their purchases." *Id.* Since the misrepresentations did not turn on the defendant's beliefs, the defendant had no right to offer a defense built around irrelevant evidence. *Id.* at 11.

*Arif* is persuasive because it parses the same difference between fraudulent means and lawful ends that the Eleventh Circuit has recognized. *See Martinez*, 156 F.4th at 1201 (finding import exemptions irrelevant to a failure to make proper declarations). It also accords with the law of criminal intent, which "does not, nor should it care, whether [a defendant] participates with a happy heart or a sense of foreboding." *Rosemond v. United States*, 572 U.S. 65, 79–80 (2014) (addressing aiding and abetting liability). At bottom, a lie is a lie, even if the liar believes that she

has a good purpose for telling it. *See also Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 385 (S.D.N.Y. Mar. 4, 2014) (explaining that "[t]here is no 'Robin Hood' defense to illegal and wrongful conduct," and that even if the defendant "had a just cause . . . they were not entitled to corrupt the process to achieve their goal").

Finally, any evidence about whether the SPLC and Beirich had good intentions for the F program or cooperated with law enforcement is not relevant when compared to the allegations in the indictment concerning what the SPLC publicly represented. As alleged in the indictment, the SPLC held itself out to be a non-profit, tax-exempt organization. Doc. 115 at 2. The SPLC also represented that its mission was to dismantle white supremacy and confront hate and extremist groups. *Id.* Despite these representations, the indictment alleges that the SPLC and Beirich materially misled donors by touting the SPLC as a tax-exempt organization dedicated to dismantling racism. Those representations were incompatible with using a clandestine program to pump the SPLC's donor funds into extremist groups through long-term financial relationships with extremist leaders or affiliates. Similarly, the SPLC and Beirich conspired to make, and made, false statements to banks relating to shell accounts.

These misrepresentations turn in part on the nature of charitable exemptions. Federal law confers a tax exemption on donations to organizations that promote certain charitable purposes. 26 U.S.C. § 501(c)(3). By its nature, exempt status signals to donors that an organization follows certain core standards of transparency and public benefit. The exemption—read against the backdrop of the Internal Revenue Code—"reveals unmistakable evidence that, underlying all relevant parts of the Code, is the intent that entitlement to tax exemption depends on meeting certain common law standards of charity—namely, that an institution seeking tax-exempt status

must serve a public purpose and not be contrary to established public policy." *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983). For example, "[t]he government is not required to grant a tax subsidy to organizations providing funds to support violent activities." *United States v. Mubayyid*, 476 F. Supp. 2d 46, 54 (D. Mass. 2007). Exempt groups accordingly alleviate public burdens by promoting universal civic goals.

By touting its exempt status, the SPLC represented to donors that it did not secretly support individuals involved in the very extremist groups that it touted that donations were being used to dismantle—free from appropriate charitable oversight. Secret expenses inherently are incompatible with the purposes behind Section 501(c)(3), which seeks to confer a privileged status for a special category of organizations that "demonstrably serve" and are "in harmony with the public interest." *Bob Jones Univ.*, 461 U.S. at 592. A charity's "purpose must not be so at odds with the common community conscience as to undermine any public benefit that might otherwise be conferred." *Id.*

Contrary to those beliefs, the indictment alleges that the SPLC used the F Program to siphon the SPLC's donor funds to extremist leaders and affiliates in secret. It is further alleged that the SPLC and Beirich used a secret program to prop up extremist groups untethered to meaningful oversight that ran contrary to the SPLC's stated mission and purpose, and that they knowingly hid this scheme from donors. With the SPLC's knowledge, these extremist leaders then used the SPLC's donations to bolster the racist activities of the organizations. They also conspired to make false statements to financial institutions to open shell accounts for these covert payments.

Against that backdrop of what acts are alleged in the indictment, and thus, what facts of consequence will be necessary to determine whether the SPLC and Beirich are guilty of

committing the charged offenses, evidence that the SPLC or Beirich engaged in other good acts is no defense to their use of illegal means to carry out these schemes. *See Russell*, 703 F.2d at 1249. Likewise, it does not matter whether the SPLC or Beirich hoped that the F Program ultimately would aid law enforcement or undermine the extremist organizations that it promoted. *See Arif*, 897 F.3d at 11 (finding it irrelevant that a defendant believed in the product he promoted with false claims). Indeed, a defendant may deprive donors of money by false representations even if a program provided some ultimate benefit. *United States v. Porat*, 76 F.4th 213, 219–21 (3d Cir. 2023) (concluding that the dean of a business school defrauded students by inflating the business school's ranking). The SPLC and Beirich defrauded donors, made false statements to banks, and laundered money regardless of whether they thought they had good reasons for doing so.

In sum, evidence about the SPLC's reasons for creating or operating the F Program, any benefits it supposedly provided, or the SPLC's other work, is irrelevant to these charges. This Court should exercise its role as the evidentiary gatekeeper to exclude such evidence.

### B. Evidence about the SPLC's reasons for running the F program invites nullification.

Extraneous evidence about the SPLC's work and its purported reasons for the F Program invites nullification. Nullification inherently is improper, and this Court should guard against that possibility by excluding evidence that relates only to a potential nullification defense. Potential evidence on the SPLC's alleged good work or its supposed valid reasons fits that bill, so this Court should exclude it.

A jury holds a "de facto *power* to refuse to apply the law as instructed by the court, [but] exercise of such power is in dereliction of the jury's sworn *duty*." *United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998) (emphases in the original). To guard against nullification,

"neither the court nor counsel should encourage jurors to violate their oath." *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983). *Trujillo* affirmed a district court's refusal to allow a defense counsel to argue jury nullification in his closing argument. *Id.* at 105–06. Pointing to *Trujillo*, *Funches* charted the same course for evidentiary rulings. *Funches*, 135 F.3d at 1409. The Court concluded that "the potential for nullification is no basis for admitting otherwise irrelevant evidence." *Id.* Accordingly, *Funches* upheld exclusion "of evidence [that] might have encouraged the jury to disregard the law and to acquit the defendant." *Id.* This Court should prevent the potential for nullification. *Trujillo*, 714 F.2d at 106 (recognizing a court's role).

The only plausible point for evidence on the F Program's supposed good ends would be to encourage the jury to nullify. As set out above, this fraud prosecution turns on the SPLC and Beirich's use of fraudulent means to hide from donors the fact that they used donor money to pay members and affiliates of extremist groups for their benefit ultimately for the SPLC to continue to obtain more donated funds. Those alleged illicit means are illegitimate, even if the SPLC and Beirich hoped that the F program would serve a salutary purpose. *Funches* is instructive, as the Eleventh Circuit "[p]ierc[ed] through the form of [the defendant's] arguments" to focus on their substance instead. 135 F.3d at 1408. The defendant in *Funches* sought to defend a gun charge by providing evidence that he thought he possessed the guns legally. *Id.* The Court had little problem concluding that such a defense was invalid. *Id.* at 1408–09.

While these charges implicate different questions of intent, a defendant still may act intentionally with either "a happy heart or a sense of foreboding." *Rosemond*, 572 U.S. at 80. A defendant's ultimate belief in a program's objectives is no excuse for a defendant's fraudulent misrepresentations to win converts who would have turned away otherwise. *Arif*, 897 F.3d at 9–

11. This Court should exclude any evidence on the SPLC's good acts or any arguable good reasons that the F Program might have served. That evidence is irrelevant to whether the SPLC paid members of racist organizations, and thus, by extension supported the aims of those organizations with donor funds, by way of materially false and fraudulent statements and omissions. It would be pertinent only to promote nullification.

### C. The SPLC's excuses for the F Program would confuse the jury.

Exclusion is appropriate even if the SPLC or Beirich could identify a marginal purpose for such lines of evidence. Evidence about the SPLC's other work or its purported goals for the F Program would distract and confuse the jury on the central issue in the case, *i.e.*, whether the SPLC deployed deceptive means to use donated funds, via the F Program, for the benefit of extremist groups and membership. Such evidence would also confuse the jury on the issue of whether the SPLC and Beirich conspired to provide false information to banks about the fictitious entities used to pay the extremists. Hence, this Court should exclude evidence about the SPLC's reasons for the F Program or its other work to alleviate the potential for juror confusion.

A district court "may exclude relevant evidence if its probative value is substantially outweighed" by potential dangers, including "confusing the issues" or "misleading the jury[.]" Fed. R. Evid. 403. By its terms, Rule 403 extends to relevant evidence, but the relevance inquiry often intersects with the balancing analysis for exclusion. *See Martinez*, 156 F.4th at 1201 (citing both rules). Exclusion of evidence is appropriate if its "slender evidential value" is "substantially outweighed by the risk of creating jury confusion" on the pertinent legal standards. *Thelen v. Somatics, LLC*, 156 F.4th 1115, 1131 (11th Cir. 2025). Along these lines, courts have excluded evidence that a defendant had good reasons for fraud. *United States v. Miller*, 641 F. Supp. 2d 161,

167 (E.D.N.Y. 2009). *Miller* excluded evidence that a defendant obtained a passport fraudulently so that he could visit family. *Id.*

At best, the evidence here would have "limited probative value" in this case. *Id.* As noted above, evidence concerning whether the SPLC provided information to law enforcement or how many times it did is irrelevant to whether it misled banks and donors about paying members of extremist groups with donor funds. This Court should exclude it regardless due to the high risk of juror confusion. Conflation of the means and the ends would obscure the core legal standards at trial. *See Thelen*, 156 F.4th at 1131 (allowing for exclusion if the evidence would confuse the jury). A jury might believe—erroneously—that whether a statement or representation is fraudulent turns on how the SPLC hoped to use any information it received from the F Program. Criminal liability based on what is alleged in the indictment does not work in that way. Whether the SPLC and Beirich are guilty of conspiring to commit wire fraud, false statements to banks, and money laundering does not turn on whether the SPLC originally intended to accomplish good things through the F program or whether it provided information to law enforcement via the F program. Such evidence would only confuse the jury and conflate the issues the jury will be charged with determining. For example, such evidence would confuse the jury by encouraging it to weigh how many times the SPLC provided information to law enforcement or how impactful the information was. But none of that relates to the charges alleged in the indictment or the elements of those charges.

Instead, the charges against the SPLC and Beirich turn on their use of false and fraudulent means to conceal their support of extremist groups and members from donors and banks, and thus, such confusing, extraneous evidence should be excluded. *See Martinez*, 156 F.4th at 1201

(recognizing that a failure to declare items properly is illegal even if an exemption would allow for importation). The evidence also would encourage jury nullification, even if the SPLC or Beirich could articulate some tangential relevance. *See Trujillo*, 714 F.2d at 106 (recognizing a court's role to guard against nullification). This Court should exercise its power to exclude the evidence under Rule 403.

**D. Evidence concerning whether the SPLC has done good work or pursued the F Program for good reasons would be inadmissible character evidence.**

Finally, any argument or evidence concerning the SPLC's good intentions for the F program or good acts that the SPLC did, such as whether they reported information to law enforcement, should be excluded because it would constitute inadmissible good character evidence pursuant to Fed. R. Evid. 404(a). That rule provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404. That rule does not permit the defense to introduce evidence of the defendant's specific acts of good conduct. *United States v. Ellisor*, 522 F.3d 1255, 1270-71 (11th Cir. 2008). That is so because "evidence of good conduct is not admissible to negate criminal intent." *Id*. at 1270, citing *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991).

In *Ellisor*, the Eleventh Circuit affirmed the district court's grant of the government's motion in limine to exclude evidence of the defendant's legitimate business activities to negate evidence of his fraudulent intent concerning ticket sales to a fictitious Christmas show. *Id*. at 1270. The defendant there was convicted of mail fraud for selling tickets to thousands of schoolchildren and their parents who expected to attend a "Christmas From Around the World" extravaganza. *Id*. at 1259. But when the students, teachers, and chaperones who had purchased approximately 2,700

tickets for the show arrived to the convention center, they found it locked and empty. *Id*. at 1262.

To attempt to refute evidence of his fraudulent intent, the defendant sought to introduce evidence that he had produced other shows over a ten-year period. *Id*. at 1270. The Eleventh Circuit rejected this argument holding both that evidence of such "good conduct" was inadmissible and constituted inadmissible "specific acts" under Rule 404(b) as well. *Id*. The Court further determined that the "fact that Ellisor purportedly produced other shows does not bear on his intent to defraud with respect to the Christmas show and is therefore irrelevant." *Id*.

Similarly, in *United States v. Ifediba*, 46 F.4th 1225, 1230, 1237-38 (11th Cir. 2022), where the defendant was charged with health care fraud for prescribing large quantities of opioids to patients who had no medical need for them and then billed for unneeded testing and treatments, the Eleventh Circuit affirmed the district court's exclusion of the defendant's "good-care evidence" showing that he had provided legitimate medical treatment to some patients. The Court affirmed that such evidence "was merely an attempt to portray Ifediba as a person of good character by pointing to his prior good acts." *Id*. at 1238. The Court noted that Rule 404(a) prohibits the use of good character evidence and affirmed. *Id*.

*Ellisor* and *Ifediba* are on all fours with this case. Similar here, evidence that the SPLC had good intentions for the F program, did good work in other areas, or at times provided information to law enforcement would constitute classic inadmissible good character evidence just as in *Ellisor*. And just as it was irrelevant that the defendant in *Ellisor* did produce other shows to whether he defraud others with respect to the charged Christmas show, the fact that the SPLC may have had good intentions with the F program has no relevance to whether it defrauded banks and donors about paying members of the extremist groups it claimed it was seeking to dismantle.

Moreover, like in *Ifediba*, evidence that the SPLC did good work or provided information to law enforcement would be simply an attempt to show that the SPLC and Beirich had good intentions to try to do good things. But the Rules of Evidence prohibit such evidence and thus, this Court should exclude any such argument and evidence.

## IV. Conclusion

This Court should exclude any evidence or arguments about the SPLC's work unrelated to the F Program, any evidence or arguments that the SPLC pursued the F Program for good reasons, or any evidence of arguments of any good acts accomplished because of the F program. Such evidence is irrelevant, invites nullification, causes juror confusion, and constitutes inadmissible good character evidence. Thus, exclusion is appropriate.

Respectfully submitted this 16th day of November, 2026.

THOMAS GOVAN
UNITED STATES ATTORNEY

/s/ Kevin P. Davidson
Kevin P. Davidson
First Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: kevin.p.davidson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:26-cr-00139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. and | ) | |
| HEIDI BEIRICH | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

Respectfully submitted,

/s/ Kevin P. Davidson
Kevin P. Davidson
First Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: kevin.p.davidson@usdoj.gov