IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:26-cr-00139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. and | ) | |
| HEIDI BEIRICH | ) | |

# THE UNITED STATES RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A PRESERVATION ORDER AND RULE 17(c) SUBPOENA

## ARGUMENT

### I. F-9 IS NOT A MEMBER OF THE PROSECUTION TEAM

F-9 is not a member of the prosecution team. He is instead a former paid operative of over 25 years of the SPLC's intelligence project, who is now a cooperating witness of the government. As such, documents and other items in his possession (that are not in the possession of the actual prosecution team) are not *Brady* material.

The SPLC claims that F-9 has "transformed his role as a mere witness into an active member of the government's investigative team." Doc. 184, 1. The SPLC continues: "F-9 should have been merely a *witness* in this case. But the government has treated him like part of the prosecutorial team itself, choosing to allow F-9 to decide which of the documents, recordings, and photographs in his possession he will produce, and how and when he will produce them." *Id.* at 6 (emphasis original). As a result, the SPLC claims "the government has the responsibility to ensure that [F-9] provides all the information in his possession." *Id.* at 17.

It is necessary to address this claim briefly. Contrary to the SPLC's assertions, the government does not have "authority" over F-9 and he is not a member of the prosecution team. Rather, he is nothing more than a cooperating witness.

As it pertains to *Brady* material, the Supreme Court has held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). In following *Kyles*, the Eleventh Circuit has held that "acting on the government's behalf" means the evidence must have been possessed by "a district's prosecution team, which includes both investigative and prosecutorial personnel"—i.e. by the "prosecution team." *United States v. Meros,* 866 F.2d 1304, 1309 (11th Cir.1989) (citations omitted). The "prosecution team" in turn is "the prosecutor or anyone over whom he has authority." *Id.* In *Meros*, this meant that a prosecutor in the Middle District of Florida did not "possess" favorable information known to prosecutors in the Northern District of Georgia and the Eastern District of Pennsylvania. *Id.* Further, "[a] prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a *Brady* request for information regarding a government witness." *Id.*

Virtually every court to consider the matter has come to the same conclusion: cooperating witnesses are not part of the prosecution team. "Prosecutors' conferral with and receipt of information from witnesses, victims, and other private actors—directly or through their counsel—is commonplace in the building of a criminal case and the preparation for a criminal trial. It does not transform such persons into members of the prosecution team." *Maxwell v. United States*, 2026 WL 2480618, at *19 (S.D.N.Y. Aug. 25, 2026). "Where a cooperating witness has only provided information to the Government and testified at trial, [courts] have found that the cooperating witness is not a member of the prosecution team." *United States v. Stanford*, 2025 WL 2964598, at *21 (W.D. La. Oct. 17, 2025). "Courts that have considered this issue, however, have concluded that a cooperating witness is not, in fact, a member of the prosecution team." *United States v.*

*Munchak*, 2014 WL 3557176, at *15 (M.D. Pa. July 17, 2014), aff'd, 648 F. App'x 195 (3d Cir. 2016) (collecting cases).

To take one of many cases in which courts have found that cooperating witnesses are not part of the prosecution team, the Sixth Circuit held in *United States v. Graham*, that a cooperating witness and unindicted co-conspirator was not part of the prosecution team. 484 F.3d 413, 416 (6th Cir. 2007). There, the Defendant argued that the failure of a witness to produce 15 boxes of evidence until late in the trial constituted a *Brady* violation. *Id.* at 414. The cooperating witness in this case was an unindicted co-conspirator—in fact, the defendants' attorney—who cooperated under the terms of a plea agreement. *Id.* The Sixth Circuit rejected the defendants' *Brady* argument because the unindicted co-conspirator was not ""acting on the government's behalf.'" *Id.* at 416. Therefore, the defendants did not show "any withholding of evidence within the control of the Government." *Id.* at 417. In contrast to other agents who are part of the "prosecution team," "cooperating witnesses ... stand in a very different position." *Id.* Among the factors that militated against finding that the cooperating witness was a part of the prosecution team, the Sixth Circuit specifically noted that the prosecution "had to obtain approval from Allen's attorney before interviewing him and had to serve a subpoena on him to compel the production of documents." *Id.* at 417. The Sixth Circuit rejected the defendant's argument that a note indicating that the prosecution knew of (though it did not have possession of) the existence of the additional boxes documents prior to trial indicated that the prosecution had control over the witness, noting that it was not until the witness "produced the fifteen boxes during trial that either party had any knowledge of their contents." *Id.* at 419.

Similarly, the Second Circuit has "never held that the prosecution team includes cooperating witnesses." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015). In that case,

the cooperating witness "played no role in the investigation or in determining investigation or trial strategy. Accordingly, he was no more than a witness whose knowledge cannot be imputed to the prosecutor or agents[.]" *Id.* But even expert witnesses who analyze evidence, assist in preparing cross-examination questions, participate in mock examination and testify at trial are not "member[s] of the prosecution team." *Id. citing United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). So too the First Circuit. *United States v. Josleyn*, 206 F.3d 144 (1st Cir. 2000). In *Joslyn*, the First Circuit rejected a claim that a corporation which was cooperating with the government was part of the prosecution team. The First Circuit noted that "While prosecutors may be held accountable for information known to police investigators, we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interests. Those private interests, as in this case, are often far from identical to—or even congruent with—the government's interests." *Id.* at 154.

The evidence here is clear that F-9 is not a member of the prosecution team. F-9 is represented by his own private counsel, and the actual prosecution team has had to ensure that they have the permission of his attorney before speaking to F-9.

To be sure, F-9 is a *cooperating witness* and like many a cooperating witness, is cooperating in part to ensure he is not himself charged. In his case, he is seeking immunity.[1] But a plea agreement or immunity in exchange for testimony does not transform a cooperating witness into a member of the prosecution team. On the contrary, unlike a federal law enforcement agent, who has sworn to uphold the constitution and whose professional interests at the very least line up with the prosecutors, a cooperating witness has a very different set of interests (such as saving his

[1] F-9 was granted so-called "letter immunity" on August 14, 2026.

own skin), interests that diverge from those of the prosecution. *Josleyn*, 206 F.3d at 154. Furthermore, an offer of immunity in many respects offers a prosecution team far less control over a cooperating witness than a cooperation agreement entered into pursuant to a plea agreement. In the latter case, if the witness refuses to testify, that witness will likely face a harsher sentence without any benefit of a downward variance for truthful testimony. In the case of immunity, there is no such sentence to fear.

The prosecution team has requested F-9 locate certain types of items that may be in his possession, but a few things must be understood about this. First, F-9 has a huge amount of documents and recordings and so forth, accumulated over many years.[2] He is not, contrary to the insinuations of the SPLC, being tasked with acting as an undercover agent or with actively going out and gathering intelligence not already in his possession. Nor is asking a cooperating witness for evidence in his possession the same as telling a federal agent, for instance, to turn over all *Jenks* statements, for the simple reason that the government, absent anything more, does not control the cooperating witness. And this is the case here. The government is in the position of *asking* F-9 precisely because the government does not *control* F-9.[3]

---

[2] The SPLC insinuates that the government has "overlook[ed]" the fact that F-9 has "covertly tak[en] SPLC records and privileged materials." Doc. 184 at 5. In fact, all of the materials that F-9 has provided to the government seem to have been either created by him, given to him by others (e.g. the SPLC or its employees), or were abandoned with him or otherwise lawfully in his possession, with the ironic exception of documents he stole from an extremist organization *at the behest of the SPLC itself*.

[3] The SPLC, wanting to have it both ways, complains that the government is only *asking* F-9 for documents (Doc. 184 at 6) instead of ordering him to turn them over while simultaneously claiming F-9 is a member of the prosecution team whom the government has control over. *Id.* at 22.

The defense also erroneously claims that F-9 has received the benefit of "payment." Doc. 184 at 7. In fact, outside of reimbursement for travel expenses, the government has *never* paid F-9 at all for any of his work on this case.[4] The SPLC makes much of F-9's statement on February 2, 2026. "I need to be paid. I don't wanna come down there and not be paid. I spent a lot of time and resources now on this. You don't work for free. I am absolutely broke. I am now maxed on my credit cards. I've had to sell my car to pay this guy that I reported to the FBI. It cost me $15,000. I am out. Is there a probability—not a possibility—a probability, that the FBI will pay me? They used to pay me!" Doc. 184 at 18; 2025R00327-0099231 at 6. This very statement makes crystal clear what should have been clear all along—F-9 is not being paid by the government. If he *were* a paid informant, that might mean the government had more control over him. He's not. And because he is not a paid informant, nor an employee, nor even a contractor of the government, he is not a member of the prosecution team.

Finally, contrary to SPLC's assertions, F-9 has not directed the prosecution strategy. An impartial review of the slideshows that SPLC makes so much of would show that these often represent F-9's own views and opinions, and are often in marked contrast to the actual strategy of the prosecution. An example from the SPLC's own brief will suffice to show this: "When the prosecutors did not take up another of his theories, he wrote: 'Guessing your USA is not impressed with, or interested in, pursuing this traffic or prosecution strategy, yes?' and 'Thought this would be another game changer.'" Doc. 184 at 26. Here it is clear that he does not control or direct the prosecution strategy. Rather, he is a witness who is important because of his unique, intimate, and lengthy role inside the SPLC's intelligence project: that is to say, he is important because of the

[4] This is in another ironic contrast to the SPLC itself, which paid F-9 roughly $1,200,000 for services—including actually stealing documents in some cases—over 25 years.

facts he is able to provide. Indeed, expert witnesses often contribute much more directly to prosecution strategy than F-9 ever has and are not ipso facto members of the prosecution team. *Barcelo*, 628 F. App'x at 38 *citing Stewart*, 433 F.3d 273.

In sum, F-9 is a cooperating fact witness. He is not controlled by the prosecution team, and the prosecution team has no affirmative duty to go on a fishing expedition and seek out every piece of evidence that is in his possession.

II. THE REQUESTED SUBPOENA DOES NOT MEET THE REQUIREMENTS OF RULE 17 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE AND SHOULD NOT BE ISSUED.

The Defendant's request for a subpoena is a broad, all-encompassing fishing expedition for discovery purposes. The request fails to adequately specify what items are requested, explain how the items are evidentiary and relevant, or show that the items are not reasonably procurable without a subpoena. Thus, the request should be denied.

Rule 17(c) of the Federal Rules of Criminal Procedure provides that:

> **For Production of Documentary Evidence and of Objects**. A subpoena may order the witness to produce any books, papers, documents or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Generally, Rule 17 authorizes subpoenas for the production of evidence at trial to expedite trial, providing a time and place before trial for the inspection of subpoenaed materials. *United States v. Nixon*, 418 U.S. 683, 698-99 (1974). Rule 17 cannot and should not be used to provide a means of discovery for criminal cases. *Id.*; *see also Bowman Dairy Co. v. U.S.*, 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right to discovery in the broadest terms."); *United States v. Noriega*, 764 F. Supp. 1480, 1492 (S.D.

Fla. 1991) ("Rule 17(c), which covers subpoenas for documents and other materials, is not a discovery device."). Moreover, it certainly was not intended to provide defendants the means to engage in a fishing expedition. *Bowman*, 341 U.S. at 221 (invalidating a clause in a subpoena for being a "catch-all provision, not intended to produce evidentiary materials but [to engage in] a fishing expedition to see what may turn up."). Defendant's requested subpoena reflects precisely this type of fishing expedition, failing to meet the requirements of Rule 17, and should not be issued.

> In order to obtain evidence under Rule 17(c), a party must show:
>
> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition.

*Nixon*, 418 U.S. at 699 (footnote omitted). In short, the evidence sought must be relevant, admissible, and specific. *Nixon*, 418 U.S. at 699.

The burden is on the party issuing the subpoena to show that what they seek is admissible evidence and to state the evidentiary nature of the requested materials with appropriate specificity. *See United States v. Arditti*, 955 F.2d 331, 345 (5th Cir.1992); *see also United States v. Cherry*, 876 F.Supp. 547, 552 (S.D.N.Y. 1995). "Conjecture and speculation will not provide the lift to carry a movant over the three hurdles." *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994). If the party seeking a subpoena fails to make even a threshold showing—a specific demand for admissible and relevant information—then a court may deny the request without conducting an in camera review. *Arditti*, 955 F.2d at 345-46; *United States v. King*, 164 F.R.D. 542, 546 (D. Kan. 1996); *Jackson*, 155 F.R.D. at 668. It is in the trial court's discretion to judge whether the party seeking a subpoena has met its burden. *Nixon*, 418 U.S. at 702; *United States v. Eden*, 659

F.2d 1376, 1381 (9th Cir. 1981).

Here, the request does not state with specificity the evidentiary nature of the object of the subpoena, failing to meet the requirements set forth in *Nixon*, and should not be issued. In describing the material sought, a subpoena must refer to specific material or at least refer to specific kinds of documents. "Specificity is the hurdle on which many subpoena requests stumble." *Jackson*, 155 F.R.D. at 667. "This requirement ensures that the subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." *Id.* Simply naming the title of a document does not satisfy the specificity hurdle. *Arditti*, 955 F.2d at 345-46. Rather, "[t]he moving party must specify why the materials are wanted, what information is contained in the documents, and why those documents would be relevant and admissible at trial." *King*, 164 F.R.D. at 546. This requirement ". . . also serves to prevent the subpoena from being converted into a license for what the Supreme Court . . . decried as a fishing expedition to see what may turn up." *Id.* at 545 (citation omitted). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Noriega*, 764 F. Supp. at 1493. Indeed, a defendant must show more than a "mere hope" that something useful might turn up in the subpoenaed material. *Gilmore v. U.S.*, 256 F.2d 565, 568 (2d Cir. 1958); *see also United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996) (broad request properly denied for subpoena that did not identify by name documents requested and which exemplified "mere hope" that documents would provide favorable evidence); *United States v. Cuthbertson*, 630 F.2d 139, 146 (3rd Cir. 1980).

Outside "mere hope" and speculation, the Defendant has made no specific showing as to what information is contained in the documents, why the materials are needed, or why these

documents would be relevant *and* admissible at trial. The motion notes that F-9 has in his possession: "1,800 pages of notes from his time as an informant for the SPLC" and "about 37,000 photographs, and handwritten notes, files … recordings." Doc. 184 at 13. It goes on to describe the material as "literal hard drives and rooms full of material." *Id.* at 27. The Defendant states nothing more as to the contents of those notes, photographs, files, and recordings. Presumably, that is because the Defendant has nothing more to add regarding their contents and is merely hoping that it can obtain them and find something useful in them. In other words, the Defendant is simply on a fishing expedition. Moreover, the requested subpoena in this case uses language such as "All Documents that you referenced", "All Documents and Communications concerning your work as an informant, source, or field participant," "All communications between you and any agent, … of the United Staes … concerning the Southern Poverty Law Center," and All Documents and Communications not covered by the preceding requests that are related to the allegations in the Indictment, the Superseding Indictment, or the Second Superseding Indictment in this case." Doc. 184-6 at 7-9. These types of requests are clearly overbroad and are telltale signs of a "fishing expedition." *See Jackson*, 155 F.R.D. at 668 ("The subpoenas employ such terms as 'any and all documents' or 'including, but not limited to;' these are indicia of a fishing expedition."). The requested subpoena here constitutes "a broad dragnet aimed at bringing in anything and everything contained in the recordings regardless of their identifiable or foreseeable significance to the charges at issue." *Noriega*, 764 F.Supp. at 1493. This is simply the type of "unwarranted expedition which Rule 17(c) does not permit." Id. The subpoena therefore should not be issued.

A subpoena sought pursuant to Rule 17(c) must seek information that is admissible as evidence. *Bowman*, 341 U.S. at 221; *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) ("the rule only reaches specifically identified documents that will be admissible as

evidence at trial . . .") (citing *Bowman* and *Nixon*); *United States v. Murray*, 297 F.2d 812, 821 (2d Cir.1962) (narrowly interpreting *Bowman* by saying that Rule 17(c) "is a device solely for the obtaining of evidence for the use of the moving party[]" and does not cover "any matter in the government's hands which might be used by it as evidence[.]"). "Conclusory allegations of . . . admissibility are insufficient." *King*, 164 F.R.D. at 544. That the subpoenaed material is "potentially" admissible is insufficient. *King*, 164 F.R.D. at 544-45. The materials must be relevant *and* admissible. *Id*. (emphasis added). Relevancy alone is not sufficient. *See Nixon*, 418 U.S. at 700-01 (analyzing each hurdle of relevancy, admissibility, and specificity separately).

The Defendant's request fails to state with specificity the evidentiary value of the documents sought. Without specificity, it is not possible to determine the admissibility of the subpoenaed documents. The Defendant states that the materials are evidentiary and relevant because, "in fact, the government plans to rely heavily on them in its own case-in chief and has identified F-9 as a likely trial witness." Doc. 184 at 26. This statement is curious. Any material that F-9 possesses that has not been turned over to the Government would not be relied upon by the Government in its case-in-chief at trial. And, any material possessed by the Government, now or which it obtains prior to trial, which it will rely upon in its case-in-chief is easily obtainable by the Defendant. It only needs to request it pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E).[5] The Defendant also states that the material is needed for impeachment of F-9. Doc. 184 at 27. "When a party moving for a subpoena under Rule 17(c) is unable to set forth the "generally anticipated" contents of the documents he is seeking and is unable to identify the basis

---

[5] The ability to obtain the materials the Government intends to use in its case-in-chief in this manner would seem to show that the Defendant cannot meet the element of the standard articulated in *Nixon*, 418 U.S. at 699 – "that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence."

for believing that the documents would impeach a particular witness's credibility, the party has not met its burden and is engaging in a fishing expedition." *United States v. Blake*, 2014 WL 1764679 *4 (S.D.FL. 2014).

The Defendant is not entitled to anything and everything that might be useful based on speculation and conjecture. The Defendant's request is no more than an attempt to engage in a fishing expedition, an impermissible purpose under Rule 17(c), and the subpoena should not be issued.

III. THERE IS NO BASIS FOR ISSUING A PROTECTIVE ORDER

The Defendant claims that "a preservation order is necessary in this case to ensure that F-9 does not destroy or delete any material relevant to this case." Doc. 184 at 20. The stated basis for the request is that: (1) F-9 "bears deep resentment against the SPLC and thus has a motive to provide the government only the material he thinks inculpates the SPLC rather than the material he thinks exculpates the SPLC or provides context for the material he has cherry-picked for the government to see" *id*.; and (2) in a call in December, 2025, F-9 stated, "there's a shredder sitting under my desk that hasn't been used in five years, but there is also just boxes and boxes of crap from various projects, including the National Alliance, all sorts of stuff that has no real bearing or matter, that I had intended to shred, including all this stuff. I didn't think that ever, any of this stuff would ever become pertinent." *Id.* at 16. First, assuming for the sake of argument that F-9 does bear a deep resentment toward one or both defendants, the Defendant has not made the case for why that means that a preservation order is needed to prevent F-9 from destroying material in his possession. The Defendant's concerns are speculative, particularly in light of the length of time F-9 has possessed the material. Second, F-9 noted that he *had* intended to shred material before he realized that it was "pertinent." There is no evidence that there is an imminent destruction of

material to take place. The Defendant relies upon one criminal case from the Eastern District of California[6] to support its position, noting that in that case there "was a reasonable concern that evidence would not be preserved." *Id.* at 20. The lack of cases dealing with the matter is an indication that it is an extraordinary step for a court to take. The Defendant's motion fails to show any controlling criminal authority for such an extreme request, much less that a "reasonable concern" exists, and thus, the motion should be denied.

CONCLUSION

Based upon the foregoing, the government respectfully requests that this Court deny the Defendant's Motion in all respects.

Respectfully submitted this 17th day of November, 2026.

THOMAS GOVAN
UNITED STATES ATTORNEY

*/s/ Kevin P. Davidson*
Kevin P. Davidson
First Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: kevin.p.davidson@usdoj.gov

[6] Apart from arising in another circuit, the case, *United States v. Corbett*, No. 219CR107KJMEFBP, 2020 WL 6318434, at *1 (E.D. Cal. Oct. 28, 2020), is wholly distinguishable. For one, the order was directed to a law enforcement agency, rather than a third-party business or individual. Second, the order was narrowly tailored to preserve specific video footage of a specific date in the jail unit where the defendant was housed relating to a specific incident. *Id*. This factual situation for even the unusual remedy in that case does not compare to the defendant's unsupported and broad request here.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:26-cr-00139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. and | ) | |
| HEIDI BEIRICH | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2026, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record in this case.

Respectfully submitted,

*/s/ Kevin P. Davidson*
Kevin P. Davidson
First Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: kevin.p.davidson@usdoj.gov