IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:26-CR-139-ECM-KFP |
| | ) | |
| SOUTHERN POVERTY LAW CENTER, INC. and HEIDI BEIRICH | ) | |

**ORDER**

Before the Court is Defendant Southern Poverty Law Center's Motion for a Preservation Order. Doc. 184.[1] The Government opposes the motion. Doc. 204. On November 18, 2026, the Court held a hearing on the motion. For the foregoing reasons, the undersigned finds the motion is due to be denied.

## I. DISCUSSION

"A federal court may issue preservation orders as part of its inherent authority to manage its own proceedings." *Arkin v. Gracey-Danna, Inc.*, 2016 WL 3959611, at *1 (M.D. Fla. July 22, 2016) (citing *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135–36 (Fed. Cl. 2004); *Robinson v. Gielow*, 2015 WL 4459880, *3 (N.D. Fla. July 21, 2015)).[2] "Federal courts typically employ one of two tests in determining whether to grant a request for a preservation order." *Id.* The first, articulated by the Court of Claims and adopted by some district courts, is a "two-prong test that requires the proponent to demonstrate that

[1] The motion also seeks a subpoena duces tecum. The Court has addressed this request in a separate order. *See* Doc 219.

[2] Here, and elsewhere in this Order, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

the order is necessary and not unduly burdensome." *Id.* (citing *Pueblo of Laguna*, 60 Fed. Cl. at 135–36). But "[s]ome federal courts have found the streamlined two-prong standard of the Court of Claims to be inadequate, and instead have adopted a 'balancing test[.]'" *Gielow*, 2015 WL 4459880, at *3 (citation omitted). This second test weighs three factors:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Id.* (quoting *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004) (footnote omitted)).

The SPLC argues that a preservation order is necessary to prevent F-9, a former SPLC informant who is now a cooperating government witness, from destroying materials he collected throughout his time working as an informant for the SPLC. Doc. 184. Those materials include:

- "1,800 pages of notes from [F-9's] time as an informant for the SPLC";
- "a storage unit holding six steel file cabinets, about 37,000 photographs, and 'handwritten notes, files . . . recordings[,]'" along with "stuff that was used for lawsuits by the [Southern Poverty Law] Center[,]" and "30 years of work product largely overlap[ping] with [F-9's] services to the SPLC";
- audio recordings on which, according to the SPLC, the Government said it would rely "to make a charging decision"; and
- "intelligence briefings" prepared by F-9 for presentation to the Government with F-9's own legal theories.

*Id.* at 8–16. The SPLC contends that F-9 is likely to destroy these documents because he is biased against the SPLC and because he once referenced the possibility of shredding his documents. Doc 184 at 20–21.

As an initial matter, the Government correctly notes that there is no precedent in this circuit, and little elsewhere, for issuing a preservation order to a non-party in a criminal case. Doc. 204 at 12–13. In the absence of precedent, the undersigned does not find that this case warrants taking such an extraordinary measure. The SPLC points to one criminal case from the Eastern District of California, *United States v. Corbett*, as an example of a district court issuing the kind of preservation order it seeks. Doc. 184 at 20. But *Corbett* is distinguishable. In that case, the non-party was Sacramento County Jail. *United States v. Corbett*, 2020 WL 6318434, at *1 (E.D. Cal. Oct. 28, 2020). Because there was a "strong likelihood that jail surveillance video is erased on a periodic basis," the Court granted the preservation order. *Id.* at *2.

Those circumstances are not present here. F-9's singular reference to a shredder is not comparable to Sacramento County Jail's routine practice of erasing surveillance footage. According to the discovery, F-9's exact words were, "there's a shredder sitting under my desk that hasn't been used in five years, but there is also just boxes and boxes of crap from various projects, including the National Alliance, all sorts of stuff that has no real bearing or matter, that I had intended to shred, including all this stuff. I didn't think that ever, any of this stuff would ever become pertinent." Doc. 184 at 16; Doc. 204 at 12. While the SPLC takes this to mean F-9 has the present intent to destroy his documents, in context, it is equally possible that he was simply stating what he would have done with

them before he realized their significance. Indeed, the latter is the Government's interpretation. Doc. 204 at 12–13. Moreover, the record indicates that F-9 has been preserving a storehouse of documents for decades. *See* Doc. 184 at 14. In the face of F-9's longstanding habit of preservation, his sole comment about a shredder does not create an imminent risk of document destruction warranting the requested extraordinary relief.

*Corbett* is distinguishable in another respect: in that case, the Court withheld granting a subpoena pending further proceedings. *Corbett*, 2020 WL 6318434, at *2–*3. By contrast, this Court granted the SPLC's requested subpoena. Doc. 219. Thus, even if there were a present risk of destruction, that risk is alleviated by F-9's obligation to turn over documents responsive to the subpoena.

## II. CONCLUSION

For the above reasons, it is ORDERED that the motion (Doc. 184) is DENIED.

DONE this 24th day of November, 2026.

KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE